1  MICHAEL E. GATES, City Attorney (SBN 258446)
2  Office of the City Attorney
   2000 Main Street, P.O. Box 190
3  Huntington Beach, CA 92648
   (714) 536-5555
4  Email:  Michael.Gates@surfcity-hb.org

5  Attorneys for Plaintiffs
6  CITY OF HUNTINGTON BEACH, a California Charter City, and
   Municipal Corporation, HUNTINGTON BEACH CITY COUNCIL,
7  HUNTINGTON BEACH POLICE DEPARTMENT, and the
   HUNTINGTON BEACH POLICE CHIEF
8

9               **UNITED STATES DISTRICT COURT**
10             **CENTRAL DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| CITY OF HUNTINGTON BEACH, a California Charter City, HUNTINGTON BEACH CITY COUNCIL, HUNTINGTON BEACH POLICE DEPARTMENT, and the HUNTINGTON BEACH POLICE CHIEF, in his official capacity as Chief of Police,<br><br>       Plaintiffs,<br><br>       v.<br><br>The STATE OF CALIFORNIA, GAVIN NEWSOM, in his official capacity as Governor of the State of California; ROBERT BONTA in his official capacity as Attorney General of the State of California; and DOES 1-50, inclusive,<br><br>       Defendants. | CASE NO.<br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>1. **VIOLATION OF THE SUPREMECY CLAUSE – ARTICLE VI, CLAUSE 2 OF THE U.S. CONSTITUTION**<br>2. **VIOLATION OF THE NATURALIZATION CLAUSE – ARTICLE I, SECTION 8, CLAUSE 4 OF THE U.S. CONSTITUTION**<br>3. **VIOLATION OF U.S. FEDERAL IMMIGRATION LAWS – 8 U.S.C. §, 1324**<br>4. **VIOLATION OF U.S. FEDERAL IMMIGRATION LAWS – 8 U.S.C. § 1373**<br>5. **VIOLATION OF U.S. FEDERAL IMMIGRATION LAWS – 18 U.S.C. §§ 4, 371, 372**<br>6. **VIOLATION OF CALIFORNIA PENAL CODE §§ 31, 32**<br>7. **VIOLATION OF CALIFORNIA CONSTITUTION – ARTICLE XX, SECTION 3**<br><br>**DEMAND FOR JURY TRIAL** |

1

## **COMPLAINT**

CITY OF HUNTINGTON BEACH, a California Charter City, and Municipal Corporation, the HUNTINGTON BEACH CITY COUNCIL, the HUNTINGTON BEACH POLICE DEPARTMENT, and the HUNTINGTON BEACH POLICE CHIEF, in his official capacity as Chief of Police are all collectively hereinafter referred to together as the "City" or together as "Plaintiffs."

The City brings this lawsuit seeking Declaratory and Injunctive Relief ("Complaint") against the STATE OF CALIFORNIA, GAVIN NEWSOM, in his official capacity as Governor of the State of California; ROBERT BONTA in his official capacity as Attorney General of the State of California; and DOES 1-50, inclusive (together as "Defendants"), for various violations of law and actual and threatened State enforcement actions against the City in violation of ARTICLE VI, CLAUSE 2 OF THE U.S. CONSTITUTION, ARTICLE I, SECTION 8, CLAUSE 4 OF THE U.S. CONSTITUTION, U.S. Federal Immigration Laws under 8 U.S.C. §§ 1324, 1325, & 1373, under 18 U.S.C. §§ 4, 371, and 372, and causing the City further thereby to violate California Penal Code §§ 31, 32, for Aiding and Abetting and Accessory After the Fact in the Commission of Federal crimes, and violations of City Officials' Oath of Office pursuant to ARTICLE XX, SECTION 3 OF THE CALIFORNIA CONSTITUTION.

By this Complaint, the City seeks Judicial Declaration invalidating, and an Injunction Order enjoining, California's "Sanctuary State Law," which includes, among other operative provisions, California Government Code §§ 7282.5, 7284.4, and 7284.6, against the City, its Police Department, and all City Officials. The City avers the following upon personal knowledge, information,

and belief, and based upon the investigation of counsel as to all other facts alleged in this Complaint.

## **INTRODUCTION**

As a matter of law, the State's "Sanctuary State Law" is unconstitutional and violates other Federal laws; as a matter of enforcement policy, it is a clear and present danger to the health, safety and welfare of the City of Huntington Beach.  According to the California Department of Justice, violent crime has risen in California by nearly 20% since 2018 (3.3% in 2023, and 15.1% from 2018 to 2023)[1], and aggravated assaults, motor vehicle theft, robbery, and arson throughout the State have increased since 2018.

The Nation has seen violent crime committed by illegal immigrants including MS-13[2] and Tren de Aragua gang members including widely reported rapes, murders, assaults, and other crimes.[3]  In addition, the reported violent crimes by illegal immigrants includes hostile take-overs by force of apartment buildings and other American establishments seen in Aurora, Colorado[4] and El Paso, Texas.[5]  According to the U.S.

---

[1]https://data-openjustice.doj.ca.gov/sites/default/files/2024-07/Crime%20In%20CA%202023f.pdf

[2]https://judiciary.house.gov/media/in-the-news/house-judiciary-report-faults-biden-admin-release-alleged-ms-13-member-now

[3]https://kfoxtv.com/news/instagram/report-tren-de-aragua-member-arrested-for-sex-trafficking-migrant-at-gateway-hotel-la-barbie-el-paso-texas-gang-estefania-primera-border-patrol-dps-border-migrants;                and https://www.foxnews.com/us/colorado-video-shows-tren-de-aragua-gang-beating-apartment-complex-worker-extortion-bid-company-says

[4]https://kdvr.com/news/local/ice-16-detained-in-aurora-are-suspected-tren-de-aragua-associates

[5]https://kvia.com/news/border/2024/09/10/inside-a-downtown-el-paso-hotel-that-is-reportedly-housing-tren-de-aragua-gang-members/

Department of Homeland Security, California leads the nation with the highest illegal immigrant population of any other state – with 2,600,000 in 2022. *See* Bryan Baker and Robert Warren, Office of Homeland Security Statistics, *Estimates of the Unauthorized Immigrant Population Residing in the United States: January 2018–January 2022* (April 2024).[6]

Data shows that the flow of mass illegal immigration *creates* human trafficking, including increasing a market in the United States for human trafficking – with "[t]he number of persons prosecuted for human trafficking more than doubled from 2012 to 2022.[7] In a recent report, the U.S. Congress noted that nearly 60,000 victims of human trafficking are trafficked into the U.S. annually.[8]

Human trafficking, which also results in sex trafficking, hurts women and children the most[9] and over 320,000 immigrant children have gone missing in the United States. According to the Federal Government, those lost children are now completely unaccounted for and

/ / /

/ / /

---

[6]https://ohss.dhs.gov/sites/default/files/2024-06/2024_0418_ohss_estimates-of-the-unauthorized-immigrant-population-residing-in-the-united-states-january-2018%25E2%2580%2593january-2022.pdf

[7]https://bjs.ojp.gov/library/publications/human-trafficking-data-collection-activities-2024#:~:text=The%20number%20of%20persons%20prosecuted,to%201%2C118%20persons%20in%202022; and https://kfoxtv.com/news/instagram/report-tren-de-aragua-member-arrested-for-sex-trafficking-migrant-at-gateway-hotel-la-barbie-el-paso-texas-gang-estefania-primera-border-patrol-dps-border-migrants

[8]https://www.congress.gov/118/meeting/house/116344/documents/HHRG-118-JU08-20230913-SD003.pdf

[9]https://nypost.com/2021/04/17/how-bidens-border-policy-will-increase-child-sex-trafficking-to-us

unable to be protected.[10]  Lest it be forgotten, entering the United States illegally in the first place is a Federal crime. 8 U.S.C.§ 1325.

Protecting the City's 200,000 residents from crime and lawlessness is of the greatest import to, and of the highest order for, Huntington Beach's City leaders and its Police Department.  Huntington Beach is the 23rd largest of 482 cities in the State of California.

The State's relatively new "Sanctuary State Law" directly conflicts with U.S. Federal immigration laws, including but not limited to 8 U.S.C. §§ 1324 and 1373, and 18 U.S.C. §§ 4, 371, and 372.

California's Sanctuary State Law not only limits the ability of City officials, including Huntington Beach Police personnel, to engage in fullest of effective law enforcement practices, but it directs City officials, including Huntington Beach Police personnel, *to **violate** U.S. Federal immigration laws*, including and among others, 8 U.S.C. §§ 1324 and 1373, and 18 U.S.C. §§ 4, 371, and 372.  In fact, the conflict of laws created by the State presents an untenable "Hobson's Choice" for the City of Huntington Beach, e.g., comply with the State's new Sanctuary State Law and violate U.S. Federal immigration laws, or comply with the Federal immigration laws, and violate the Sanctuary State Law.  This conflict must be reconciled by this Court.

At the passage of California's Sanctuary State Law in 2017, NPR reported that the law "bans state and local agencies… from enforcing 'holds' on people in custody.  It blocks the deputization of police as immigration agents and bars state and local law enforcement agencies from inquiring into an individual's immigration status…   It also prohibits new or expanded contracts with Federal agencies to use

---

[10]https://nypost.com/2024/08/21/us-news/biden-harris-admin-loses-track-of-320000-migrant-children

California law enforcement facilities as detention centers, although it does not force the termination of existing contracts. . . ."[11]   POLITICO reported that this new law limits "local law enforcement officials' ability to cooperate with Federal immigration authorities. . . ."[12]

Huntington Beach is a City in the County of Orange.  As will be presented in greater detail, *infra*, Sheriff Don Barnes reported that the Orange County Sheriff's Department (hereinafter "OCSD") is prohibited by State law to notify Immigration Control and Enforcement of the release of inmates with ICE detainers.  In 2018, 1,106 inmates in Orange County who had ICE detainers but did not meet eligibility for notifying ICE were released into the community.  173 out of the 1,106 inmates were rearrested "in Orange County for committing 58 different types of crimes, including attempted murder, assault and battery, child molestation, and robbery."  In 2023, there were 547 inmates who had ICE detainers released from Orange County Jail.  About 81 of those inmates eligible for notification and transfer to ICE's custody were not transferred but were released into the community.  A total of 40 individuals were rearrested for committing new crimes in Orange County.  Being prevented from coordinating with Federal agencies by the Sanctuary State Law prevents effective law enforcement, puts the community at risk, and as the data shows, leads to more crimes.

In addition to commanding the City to violate U.S. Federal immigration laws, the State's Sanctuary State Law forces City officials, including Huntington Beach Police personnel, to violate California Penal

---

[11]https://www.npr.org/sections/thetwo-way/2017/10/05/555920658/california-governor-signs-sanctuary-state-bill

[12] https://www.politico.com/story/2017/10/05/california-sanctuary-city-jerry-brown-signs-243503

Code §§ 31 and 32 for "aiding and abetting" and "accessory after the fact" in harboring, concealing, or protecting the perpetrator who committed a Federal crime.  Moreover, the Sanctuary State Law forces City officials, including Huntington Beach Police personnel, to harbor, conceal, or "shield from detection" known unauthorized aliens in their custody.  The Sanctuary State Law commands City officials, including Huntington Beach Police personnel, to turn a blind eye to alien smuggling, which in many cases, the individuals who were smuggled into the country would become victims of human trafficking.

The State cannot force the City to violate U.S. Federal immigration laws that both the Ninth Circuit Court of Appeal and the United States Supreme Court have held preempted under the Supremacy Clause.

To put a fine point, as a Charter City, Huntington Beach's Police Department does not belong to the State.  Rather, the Huntington Beach Police Department belongs to the City – and as such, the Police Department should be free from State interference and control.  The City and its Police Department should be, therefore, entirely at liberty to employ *every* lawful means to combat crime and promote public safety for the City's 200,000 residents.

While the Federal Government cannot *commandeer* State and/or local resources to effectuate its operations or achieve its goals, *local agencies, like Huntington Beach, should be at liberty to **voluntarily cooperate with the Federal Government in its operations*** in order to combat local crime and promote local public safety.[13]  As it is now,

---

[13] *See Cal. ex. Rel. Becerra v. Sessions*, 284 F. Supp.3d 1015, 1035 (Cal. N.D. 2018) ("No cited authority holds that the scope of state sovereignty includes the power to forbid state or local employees from voluntarily complying with a federal program.").

California's Sanctuary State Law prevents such voluntary cooperation thereby preventing the City from employing every lawful means available to combat crime in Huntington Beach and forces City officials to violate U.S. Federal immigration laws.  That the State can stand as a barrier in between the City and the Federal Government not only shocks the conscience, but it is also unconstitutional.

The "Supremacy Clause" of the U.S. Constitution demands that the California Sanctuary State Law yield to the Federal Government and not act as a barrier for the enforcement of U.S. Federal immigration laws. By enacting its Sanctuary State Law, the State of California exceeded its authority and is unconstitutionally interfering with U.S. Federal immigration laws and the City's Charter Home Rule authority.

With no other remedy available at law, the City seeks Judicial Declaration invalidating, and an Injunction Order enjoining, the State's enforcement of operative portions of California's "Sanctuary State Law," which includes, among others, California Government Code §§ 7282.5, 7284.4, and 7284.6, against the City Plaintiffs.

## **PARTIES**

1.    Plaintiff CITY OF HUNTINGTON BEACH is and at all relevant times was a Municipal Corporation and Charter City[14] organized by the people of the City and existing under a freeholder's charter and exercising "Home Rule" powers over its Municipal Affairs, including without limitation local law enforcement as authorized by Article XI, Section 5 of the California Constitution.

2.    Plaintiff HUNTINGTON BEACH CITY COUNCIL ("City Council" or "Council Members") is and at all relevant times the elected

---

[14]  Online:  Charter, City of Huntington Beach: https://library.qcode.us/lib/ huntington_ beach_ca/pub/municipal_code/item/charter-preamble

body of seven members, elected by the People of the City pursuant to the Charter of the City of Huntington Beach.  *See* Section 300, City Charter[15].

3.      Plaintiff HUNTINGTON BEACH POLICE DEPARTMENT ("HBPD") is and at all relevant times the official local municipal law enforcement department of the City of Huntington Beach, organized as a Charter City pursuant to, and authorized as provided in Article XI, including §§ 3 and 5, of the California Constitution.

4.      Plaintiff HUNTINGTON BEACH POLICE CHIEF ("HBPD Chief") is the City Council duly appointed Chief of the Huntington Beach Police Department.

5.      Defendant STATE OF CALIFORNIA is the State of California.

6.      Defendant GAVIN NEWSOM ("Governor") is and at all relevant times was the Governor of the State of California.  He is being sued in his official capacity.

7.      Defendant ROBERT BONTA ("Attorney General") is and at all relevant times was the Attorney General of the State of California. He is being sued in his official capacity.

## POTENTIAL PARTIES

8.      The City is ignorant of the true names and capacities of those Defendants sued herein as DOES 1 through 50, inclusive, and therefore sue those Defendants by such fictitious names.  City will amend this Complaint to allege the true names and capacities of these fictitiously named Defendants when the same have been ascertained.

_____

[15] https://ecode360.com/43806864#43806864

9.     There are several individuals and/or entities whose true names and capacities are currently not known to the City.  Evidence may come forth that others are legally responsible and liable to the City to the extent of the liability of the named Defendants.  The City will seek leave of the Court to amend this Complaint to reflect the names and capacities should they become known.  The City reserves the right to amend this claim pursuant to Fed. R. Civ. P. 15(a) and Fed. R. Civ. P. 21 with leave of the Court to add potential additional defendants and additional allegations and claims.

## JURISDICTION AND VENUE

10.     This case presents Federal questions arising under the Constitution of the United States and seeks relief for the deprivation of Federal rights under color of state law.  This Court accordingly has subject-matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1343.

11.     This Court has authority to award Plaintiffs declaratory relief pursuant to 28 U.S.C. § 2201, and injunctive relief under 28 U.S.C. §§ 1343 and 2202, and Rule 65 of the Federal Rules of Civil Procedure.

12.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## ALLEGATIONS

### A.    Charter City Authority

13.     The City of Huntington Beach is a Municipal Corporation formed by the people of the City of Huntington Beach as a "Charter City" pursuant to California Constitution Article XI §§ 3 and 5.

14.      To compare, "general law" cities are "political subdivisions" of the State and law generally holds that such cities must follow the dictates of the State to execute functions of the State.  Accordingly,

1    "political subdivision" is defined to mean "a geographic area of
2    representation . . . including, but not limited to, a city, a school district, a
3    community college district, or other district organized pursuant to state
4    law." Cal. Elect. Code § 14051(a).

5        15.   **Charter Cities** on the other hand, being formed by the
6    people of their city under the California Constitution (and *not* State law),
7    are *not political subdivisions of the State*. To that end, both the
8    California Constitution and case law hold that Charter Cities possess
9    independent authority over Municipal Affairs – so "independent" as to be
10   free from State Legislative interference and control. *See* Cal. Const. art.
11   XI, § 5(a) (which expressly states, "**City charters adopted pursuant to**
12   **this Constitution shall supersede any existing charter, and with**
13   **respect to municipal affairs shall supersede all laws inconsistent**
14   **therewith**." (emphasis added)).

15       16.   As the Court of Appeal recently stated, Charter Cities, like
16   Huntington Beach, "are distinct individual entities and are not connected
17   political subdivisions of the state." *Haytasingh v. City of San Diego*, 66
18   Cal.App.5th 429, 459 (2021). The Court of Appeal explained that "'It is
19   the free consent of the persons composing them that brings into existence
20   municipal corporations, and they are used for the promotion of their own
21   local and private advantage and convenience… *Cities, therefore, are*
22   *distinct individual entities, and are not connected political subdivisions*
23   *of the state*. **As a matter of fact, municipalities, and particularly**
24   **charter cities, are in a sense independent political organizations**
25   **and do not pretend to exercise any functions of the state. They**
26   **exist in the main for the purposes of local government**.'" *Id.,*
27   (emphasis added) (quoting *Otis v. City of Los Angeles*, 52 Cal.App.2d 605,
28   611-12 (1942)).

17.    In 2020, the State Court of Appeal recognized that Charter Cities, far from being creatures of the State, enjoy constitutionally recognized autonomy (Cal. Const. art. XI) and municipal authority over certain areas of governance that is "supreme and beyond the reach of legislative enactment." *City of Redondo Beach v. Padilla*, 46 Cal.App.5th. 902, 910 (2020) (relying on Cal. Const. art. XI).

18.    After the California Constitution of 1879 was adopted, the Supreme Court of California declared it was "manifestly the intent" of the drafters "to emancipate municipal governments from the authority and control formerly exercised over them by the Legislature." *Johnson v. Bradley*, 4 Cal.4th 389, 395 (1992) (quoting *People v. Hoge*, 55 Cal. 612, 618 (1880)).

19.    Article XI, section 5 of the California Constitution provides in full:

> (a) It shall be competent in any city charter to provide that the city governed thereunder may make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws. City charters adopted pursuant to this Constitution shall supersede any existing charter, and with respect to municipal affairs shall supersede all laws inconsistent therewith.

> (b) It shall be competent in all city charters to provide, in addition to those provisions allowable by this Constitution, and by the laws of the State for: (1) **the constitution, regulation, and government of the city police force** (2) subgovernment in all or part of a city (3) conduct of city elections and (4) plenary authority is hereby granted, subject only to the restrictions of this article, to provide therein or by

amendment thereto, the manner in which, the method by which, the times at which, and the terms for which the several municipal officers and employees whose compensation is paid by the city shall be elected or appointed, and for their removal, and for their compensation, and for the number of deputies, clerks and other employees that each shall have, and for the compensation, method of appointment, qualifications, tenure of office and removal of such deputies, clerks and other employees.

Cal. Const. art. XI, § 5 (emphasis added).

20.    The California Supreme Court has explained that § 5(a) of Article XI of the California Constitution provides that a Charter City shall not be governed by State law in respect to "Municipal Affairs." Rather, "so far as 'Municipal Affairs' are concerned," Charter Cities' laws are "supreme and beyond the reach of [State] legislative enactment." *California Fed. Savings & Loan Assn. v. City of Los Angeles* 35 Cal.3d 1, 12 (1991).

21.    One of the "core" categories of Municipal Affairs that is specifically described in Article XI, § 5(b) is "the constitution, regulation and government of the city police department." Cal. Const. art. XI, § 5(b)(1).

22.    The "Home Rule" provision of the California Constitution authorizes a Charter City to exercise plenary authority over Municipal Affairs, free from any constraint imposed by the general law and subject only to constitutional limitations.  *See* Cal. Const. art. XI, § 5(a); *Ex Parte Braun*, 141 Cal. 204, 209 (1903); *Bishop v. City of San Jose*, 1 Cal. 3d 56, 61 (1969); *Comm. of Seven Thousand v. Super. Ct.* (*City of Irvine*), 45 Cal.3d 491 (1988).

23.   As a Charter City, the City of Huntington Beach has supreme authority over its city police force. Cal. Const. art. XI, § 5(b).

24.   As a Charter City particularly, the City's Police Department does not belong to the State, rather, it belongs to the City – and as such, is free from State interference and control. The City's Police Department engages in local arrests and investigations as Municipal Affairs.

25.   The independence and Home Rule authority the Constitution provides to Huntington Beach means that the City and its Police Department are, among many other things, at liberty to conduct effective law enforcement practices, including fighting violent crime by all means available, and "free" to comply with Federal laws in addition to its local laws; "free" from State interference.

26.   The City of Huntington Beach has a duty to protect the health, safety, and welfare of its residents. Part of that duty is to ensure that the police officers have the ability to investigate crimes before it occurs, and arrest and detain individuals who committed those crimes, including incidents involving unauthorized aliens. Part of that duty necessarily involves coordinating with other agencies, whether County, State, or Federal for full enforcement of the laws.

27.   Article XX, § 3 of the California Constitution provides the Oath of Office that certain City officials, including elected officials and police officers, are required to take in order to be fully vested with authority for the office they are to assume. Cal. Const. art. XX, § 3.

28.   The Constitutionally required Oath of Office states "I, _____, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the Constitution of the State of California against all enemies, foreign and domestic; that I will bear true faith and allegiance to the Constitution of the United States and the

Constitution of the State of California; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties upon which I am about to enter."

29.   The Sanctuary State Law forces the City's officials, including Huntington Beach Police personnel, to violate U.S. Federal immigration laws, in violation of the California Constitution's Oath of Office.

**B.   <u>The Sanctuary State Law</u>**

30.   In 2017, the State of California enacted the "Sanctuary State Law," presented then as the "California Values Act of 2017." The Legislative Bill at the time was commonly known as "Senate Bill 54" or "California's Sanctuary State Law" (hereinafter "Sanctuary State Law").

31.   The Sanctuary State Law is unconstitutional. *See* U.S. Const. art. VI, cl. 2; U.S. Const. art. I, § 8, cl. 4; 8 U.S.C. §§ 1324, 1325, 1373; 18 U.S.C. §§ 4, 371, 372; *see also*, Cal. Const. art. XI, § 5; Cal. Const. art. XX, § 3.

32.   The Sanctuary State Law violates the City's right to fully control its own Police Department and fully and effectively engage in law enforcement. Moreover, neither the State, nor its laws, may prevent the City of Huntington Beach from honoring, following, and/or complying with State and all Federal laws, including Federal laws on immigration, which is the supreme law of the land on immigration.

33.   The Sanctuary State Law violates the City's right to fully control its own Police Department and fully and effectively engage in law enforcement. Specifically, California Government Code §§ 7282.5, 7284.4, 7284.6, 7285.1, and 7285.2 prohibit local law enforcement officers to cooperate with the Federal Government in criminal immigration investigation.

34.    The Sanctuary State Law bars local jurisdiction from complying with 8 U.S.C. § 1324 or participate in a joint task force that may involve immigration enforcement.  *See* Cal. Gov. Code §§ 7282.5, 7282.4 7284.6, 7285.1, 7285.2.

35.    California Government Code §§ 7282.4 and 7282.5 restrict cooperation between local law enforcement agencies and the Federal Government.

36.    The Sanctuary State Law allows for smugglers to transport individuals into the United States in violation of 8 U.S.C. § 1324 for financial gain.

37.    The Sanctuary State Law places aliens at risk of harm or being trafficked because California Law Enforcement Agencies cannot engage in the enforcement of 8 U.S.C. § 1324.

38.    The Sanctuary State Law prohibits local law enforcement agencies from asking employers about a person's immigration status under 8 U.S.C. § 1324(a)(3).  *See* Cal. Gov. Code § 7284.6(a)(1)(A).

39.    In recent years, Defendant Governor Gavin Newsom has taken a series of substantial steps to incentivize the inflow of illegal immigration into California, and to protect and harbor illegal immigrants, with the implementing of policies and laws to hire illegal immigrants in jobs in State government.[16]

40.    Defendant Governor Gavin Newsom also has a new program to give illegal immigrants taxpayer funded downpayments of $150,000 to buy homes.[17]  Defendant Newsom is doing more than simply turning a

_____

[16]https://reformcalifornia.org/news/reform-california-slams-bill-to-hire-illegal-immigrants-in-ca-state-government

[17]https://www.hoover.org/research/californias-one-party-state-and-housing-subsidies-undocumented-migrants

blind eye, he is aggressively pursuing policies with taxpayer funds to incentivize illegal immigrants to relocate to his Sanctuary State.

41.    In 2024, Defendant Governor Gavin Newsom launched a program for California to spend $2.3 million of taxpayer money to support the relocating and settling of illegal immigrants in rural areas of the State.[18]  Defendant Newsom is aggressively pursuing policies to commit taxpayer funds to protecting illegal immigrants.

42.    In August of 2024, Defendant Governor Gavin Newsom launched another program to offer illegal immigrants home mortgage aid to buy homes.[19]  Defendant Newsom is doing more than simply sitting on the sidelines, he is aggressively pursuing policies with taxpayer funds to incentivize illegal immigrants to relocate to his Sanctuary State.

43.    Most recently, Defendant Governor Gavin Newsom established a $25 million taxpayer funded legal defense fund for illegal immigrants to fight the Federal government's announced crackdown on illegal immigration, which seeks to combat the violent crimes committed against U.S. citizens.[20]

44.    In response to the November 5th election of Donald J. Trump as President of the United States, and with his nomination of Tom Homan as "Border Czar," Defendant Governor Gavin Newsom convened

[18]https://business.ca.gov/supporting-californias-rural-communities-2-3-million-in-grants-to-further-expand-immigrant-integration-in-rural-regions

[19]https://www.latimes.com/california/story/2024-08-29/california-lawmakers-approve-home-mortgage-aid-to-undocumented-immigrants

[20]https://www.nationalreview.com/news/california-governor-newsom-requests-25-million-from-legislature-for-anti-trump-litigation-fund

the State Legislature in a Special Session to develop an "Immigrant Support Plan" designed to counter "Trump deportations."[21]

45.    It was widely reported that "Gavin Newsom's administration is drafting a potential plan to help undocumented immigrants who may be threatened by incoming President Donald Trump's mass deportation threats." *Id.*

46.    According to POLITICO, a draft of Defendant Gavin Newsom's plan entitled "Immigrant Support Network Concept" proposes the "creation of an Immigrant Support Network comprised of regional 'hubs' to connect at-risk individuals, their families, and communities with community systems — such as legal services, schools, labor unions, **local governments**, etc." *Id.* (emphasis added).  Clearly, Defendant Gavin Newsom plans to further commandeer local governments to act in violation of U.S. Federal immigration laws in the near future.

47.    In addition, on December 17, 2024, Defendant Attorney General Robert Bonta issued a Press Release advising illegal immigrants the ways in which his office, and the State, were going to assist in shielding illegal immigrants – "threats of mass detention, arrests, and deportation"[22] – from detection and detention by the Federal Government.  In that Press Release, Robert Bonta directly advised that "You have the right to apply for and secure housing without sharing your immigration status," and "You have the right to an attorney."

48.    In that same Press Release, Defendant Robert Bonta stated, "State and local law enforcement cannot ask for your immigration

---

[21]https://www.politico.com/news/2024/12/24/newsom-california-immigrants-trump-00195984

[22]https://oag.ca.gov/news/press-releases/attorney-general-bonta-reminds-california-immigrants-their-rights-and

status" and "State and local law enforcement cannot share your personal information" and "State and local law enforcement cannot assist ICE with immigration enforcement." Not only is what appears in the statement a violation of U.S. Federal immigration law, but his statement also indicates a systematic program by the State to shield illegal immigrants in response to "the President-elect making clear his intent to move forward an inhumane and destructive immigration agenda once he takes office." Defendant Robert Bonta's statements make clear that his systematic program to protect illegal immigrants conflicts with the U.S. Federal immigration laws and Federal Government operations.

### C.    Federal Authorities

#### 1.    U.S. Immigration Laws

49.    Article I, Section 8, Clause 4 of the U.S. Constitution provides Congress with the "power… To establish a uniform Rule of Naturalization… throughout the United States." U.S. Const. art. I, § 8, cl. 4.

50.    In addition to conferring Congress with power to determine when foreign nationals may obtain U.S. citizenship, the Naturalization Clause is sometimes viewed as contributing to Congress's power over immigration, including its power to set rules for when aliens may enter or remain in the United States.

51.    In *Arizona v. United States*, 567 U.S. 387 (2012), the Supreme Court declared that the Federal Government's "broad, undoubted power" over immigration was partially based "on the national government's constitutional power to 'establish a uniform Rule of Naturalization,' and its inherent power as sovereign to control and conduct relations with foreign nations." *Id*. at 394–95 (quoting U.S. Const. art. I, § 8, cl. 4).

52.    In *Harisiades v. Shaughnessy*, 342 U.S. 580 (1952), the Supreme Court observed that "[t]he power of Congress to exclude, admit, or deport aliens flows from sovereignty itself and from the power 'To establish an uniform Rule of Naturalization.'" *Id*. at 599 (quoting U.S. Const. art. I, § 8, cl. 4); *see also INS v. Chadha*, 462 U.S. 919, 940 (1983) ("The plenary authority of Congress over aliens under Art. I, § 8, cl. 4 is not open to question"); *Toll v. Moreno*, 458 U.S. 1, 10 (1982) ("Federal authority to regulate the status of aliens derives from various sources, including the Federal Government's power '[to] establish [a] uniform Rule of Naturalization'…") (quoting U.S. Const. art. I, § 8, cl. 4); *Mathews v. Diaz*, 426 U.S. 67, 79–80 (1976) ("In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens.").

53.    Apart from the Naturalization Clause, the Supreme Court has cited Congress's foreign commerce power as a basis for its immigration power.  *See Toll*, 458 U.S. at 10 (observing that Congress's immigration power also derives from "its power '[t]o regulate Commerce with foreign Nations,' and its broad authority over foreign affairs") (citing U.S. Const. art. I, § 8, cl. 3); *United States ex rel. Turner v. Williams*, 194 U.S. 279, 290 (1904) (recognizing that an immigration statute was based in part "on the power to regulate commerce with foreign nations, which includes the entrance of ships, the importation of goods, and the bringing of persons into the ports of the United States"); *Edye v. Robertson*, 112 U.S. 580, 600 (1884) ("It is enough to say that, Congress having the power to pass a law regulating immigration as a part of the commerce of this country with foreign nations, we see nothing in the statute by which it has here exercised that power forbidden by any other part of the Constitution.").

54.    In 1986, Congress enacted the Immigration and Naturalization Act (hereinafter "INA").  8 U.S.C. §§ 1101-1537.  Title 8, U.S.C. § 1324, was enacted to combat human smugglers who commit the crime by "bringing people into the United States, or unlawfully transporting and harboring people already in the United States, in deliberate evasion of immigration law."[23]

55.    In part, 8 U.S.C. § 1324 makes it a Federal crime for any person to "knowing that a person is an alien, brings to or attempts to bring to the United States in any manner whatsoever such person at a place other than a designated port of entry or place other than as designated by the Commissioner, regardless of whether such alien has received prior official authorization to come to, enter, or reside in the United States and regardless of any future official action which may be taken with respect to such alien" 8 U.S.C. § 1324(a)(1)(A)(i).

56.    Title 8, U.S.C. § 1324 also makes it a Federal crime for any person to "knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation" 8 U.S.C. § 1324(a)(1)(A)(iii).

57.    And, 8 U.S.C. § 1324 makes it a Federal crime for any person to "knowingly hires for employment at least 10 individuals with actual knowledge that the individuals are aliens described in subparagraph (B)." 8 U.S.C. § 1324(a)(3).

58.    Title 8, U.S.C. § 1373(a) provides, "Notwithstanding any other provision of Federal, State, or local law, a Federal State, or local government entity or official from sending to, or receiving from, the

---

[23] https://crsreports.congress.gov/product/pdf/IF/IF12539

Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual." 8 U.S.C. § 1373(a).

59.    Title 18, U.S.C. § 4 provides, "Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both." 18 U.S.C. § 4.

60.    Title 18, U.S.C. § 371 provides, "If two or more persons conspire to either commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose…each shall be fined under this title or imprisoned not more than five years, or both." 18 U.S.C. § 371.

61.    Title 18, U.S.C. § 372 provides, "If two or more persons…conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States…or impede him in the discharge of his official duties, each of such persons shall be fined under this title or imprisoned not more than six years, or both." 18 U.S.C. § 372.

62.    The 10th Amendment of the U.S. Constitution holds that the Federal Government may not commandeer State or local resources to administer or enforce a Federal regulatory program against the will of the State or local resources.

63.    The 10th Amendment, however, does not allow a State or its officials or its resources to *violate* Federal laws, including U.S. Federal immigration laws.

64. The 10th Amendment also does not allow a State to direct a city or its local officials or its resources to *violate* Federal laws, including U.S. Federal immigration laws.

65. And while the 10th Amendment holds that the Federal Government may not commandeer State and local resources against their will to act at the Federal Government's behest, there is nothing, including the 10th Amendment itself, that *prevents* State or local officials or local resources from *voluntarily cooperating* with the Federal Government in the administration or enforcement of a Federal regulatory program, including U.S. Federal immigration laws. *See Cal. ex. Rel. Becerra v. Sessions*, 284 F. Supp.3d at 1035 ("No cited authority holds that the scope of state sovereignty includes the power to forbid state or local employees from voluntarily complying with a Federal program.").

66. "Anti-commandeering" under the 10th Amendment is not a barrier to a local jurisdiction's voluntary cooperation with the Federal Government in the administration or enforcement of a Federal regulatory program, including U.S. Federal immigration laws. *See City of New York v. United States*, 179 F.3d 29, 35 (2d Cir. 1999) (rejecting the city's argument to turn the 10th Amendment "into a sword allowing states and localities to engage in passive resistance that frustrates Federal programs.").

## 2. Supremacy Clause of the U.S. Constitution

67. Article VI, Clause 2 of the U.S. Constitution is known as the "Supremacy Clause." The Supremacy Clause holds that Federal law prevails over any conflicting state laws, including immigration laws.

68. The Supremacy Clause mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance

23

thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

69.     The Supremacy Clause "prohibit[s] States from interfering with or controlling the operations of the Federal Government." *Geo Group, Inc. v. Newsom*, 50 F.4th 745, 750 (9th Cir. 2022) (quoting *United States v. Washington*, 142 S. Ct. 1976, 1984 (2022)).

70.     The Constitution affords Congress the power to "establish an uniform Rule of Naturalization," and to "dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. Const. art. IV, § 3.  The Constitution also affords the President of the United States the authority to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3.

71.     The Federal Government has the preeminent role to regulate aliens entering the United States and within its borders.  U.S. Const. art. I, § 8, cl. 4; U.S. Const. art. I § 8, cl. 3.

72.     In *U.S. v. King County, et al.*, 2024 U.S. App. LEXIS 30299 (9th Cir. Nov. 29, 2024), the Ninth Circuit wrote "In recognition of the Federal government's independence from state control, the intergovernmental immunity doctrine prohibits states from 'interfering with or controlling the operations of the Federal Government.'" *Id.* at *27.[24]

73.     Recent California legislation that sought to interfere with the Federal Government's immigration enforcement efforts was struck down as unconstitutional "Whether analyzed under intergovernmental

---

[24] https://cdn.ca9.uscourts.gov/datastore/opinions/2024/11/29/23-35362.pdf

immunity or preemption, California cannot exert this level of control over the Federal government's detention operations... AB 32 therefore violates the Supremacy Clause." *Geo Group, Inc.*, 50 F.4th at 751.

74.　　"Any state regulation that purports to override the Federal government's decisions about who will carry out Federal functions runs afoul of the Supremacy Clause." *Geo Group, Inc.*, 50 F.4th at 750. By purporting to prevent the City of Huntington Beach from voluntarily cooperating with the Federal Government, and by purporting to prevent the City of Huntington Beach from complying with Federal immigration laws under 8 U.S.C § 1324, California's Sanctuary State Law runs afoul of the Supremacy Clause.

75.　　A state enactment is unconstitutional if it is an "'obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Toll*, 458 U.S. at 36 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

76.　　The United States Government has broad authority to establish immigration laws, which cannot be hindered or obstructed by state law. *Arizona v. United States*, 567 U.S. at 394-95. "Effective immigration law enforcement requires a cooperative effort between all levels of government." *City of New York v. United States*, 179 F.3d at 32-33.

77.　　"The '[p]ower to regulate immigration is unquestionably exclusively a Federal power.'" *De Canas v. Bica*, 424 U.S. 351, 354 (1976) (superseded by statute as stated in *Me. Forest Prods. Council v. Cormier*, 586 F. Supp. 3d 22, 39 (Dist. Maine 2022)).

78.　　"[T]he Executive has very broad discretion to determine immigration enforcement priorities." *Arizona Dream Act Coal. v. Brewer*, 855 F.3d 957, 967 (9th Cir. 2017). "Congress expressly charged the

Department of Homeland Security with the responsibility of '[e]stablishing national immigration enforcement policies and priorities.'" *Id.* at 967 (quoting 6 U.S.C § 202(5)).  Under President Joe Biden's Administration, the Department of Homeland Security prioritized the arrest and removal of aliens who poses threat to national security, threat to public safety, and threat to border security "or who have unlawfully entered the country only recently."  *United States v. Texas*, 599 U.S. 670, 673 (2023).[25]

79.    The U.S. Supreme Court held that Congress intended to preempt the field of immigration.  *Arizona v. United States*, 567 U.S. at 399.  Field pre-emption is the intent to displace state law that is so pervasive that Congress left no room for the state to supplement it or that a Federal interest is so dominant that it will be assumed that state enforcement is precluded.  *Id.*

80.    In *Valle Del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2019), the Ninth Circuit Court of Appeal held that 8 U.S.C. § 1324 preempted state law and that the Federal scheme "reserves prosecutorial power, and thus discretion, over harboring violations to Federal prosecutors." *Id.* at 1027.

81.    In an opinion by the California Attorney General in 1992 examining a California city's local sanctuary ordinance, the Attorney General stated that sanctuary law is preempted by 8 U.S.C. § 1324.  CA Attorney General Opinions, 75 Ops. Cal. Atty. Gen. 270 (Nov. 19, 1992).[26]  The California Attorney General concluded, "Due to the supremacy clause of the United States Constitution, a city may not

---

[25] https://www.ice.gov/doclib/news/guidelines-civilimmigrationlaw.pdf

[26] https://oag.ca.gov/system/files/opinions/pdfs/92-607.pdf

prohibit its officers and employees from cooperating in their official capacities with Immigration and Naturalization Service investigation, detention, or arrest procedures relating to alleged violations of the civil provisions of the Federal immigration laws." *Id.* at *1.

82.    The Attorney General further stated that "[w]hen a peace officer lawfully comes across information in the course of investigating a crime which reasonably leads to the belief that the person arrested is illegally present in this country, neither the state nor Federal Constitution prevents the officer from advising the INS of such information.  *Id.* (citing *Gates v. Superior Court*, 193 Cal.App.3d 205, 219 (1987)).

83.    The California Attorney General concluded that the sanctuary city ordinance conflicts with Federal law because it would "undermine the deterrent effect of the criminal or civil penalties contained in the [Immigration and Naturalization] Act."  CA Attorney General Opinions, 75 Ops. Cal. Atty. Gen. at *2; *see Gates v. Superior Court*, 193 Cal.App.3d at 219 ("Where otherwise warranted investigation by local officers leads to evidence of a Federal civil or criminal violation, the local authority has the right to exchange information with Federal authorities; to deny such an exchange is not reasonable and rewards those Federal violators fortunate enough to be arrested by local, rather than Federal, officials.").

84.    The California Attorney General also stated, "The Immigration and Naturalization Act is the law of this land and it is the 'act of responsible citizenship' and the 'duty' and the right of every citizen to assist in prosecuting and securing punishment for its breach by giving whatever information he or she may have in that regard to aid those who

enforce it." CA Attorney General Opinions, 75 Ops. Cal. Atty. Gen. at *2 (quoting 67 Ops. Cal. Atty. Gen. 331, *12-13 (July 24, 1984).[27]

85.     Additionally, the California Attorney General, concluded in a 1984 opinion that, while local authorities are under no legally enforceable duty to report to the INS information about persons who entered the country in violation of 8 U.S.C § 1324, they may do so "as a matter of comity and good citizenship." *See* 67 Ops. Cal. Atty. Gen. at *3.[28]

86.     The California Attorney General further stated that "Congress surely did not intend that state and local governments would undermine the deterrent effect of the criminal or civil penalties contained in the [Immigration Control Act].  By giving the impression that illegal aliens may obtain refuge from such penalties in a particular locale, the ordinance creates localized immigration policy and dissipates enforcement of Federal laws." CA Attorney General Opinions, 75 Ops. Cal. Atty. Gen. at *5.

87.     The California Attorney General determined that a sanctuary city ordinance "concerns a subject matter, immigration, wherein Federal power to regulate is exclusive."  CA Attorney General Opinions, 75 Ops. Cal. Atty. Gen. at *3 (citing *De Canas v. Bica*, 424 U.S. 351, 354-55 (1975)).  Federal preemption occurs when the local enactment "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. at 67.

88.     The California Attorney General further determined "[T]hat Congress has placed great importance on the immigration detection

---

[27] https://oag.ca.gov/system/files/opinions/pdfs/92-607.pdf

[28] https://oag.ca.gov/system/files/opinions/pdfs/83-902_0.pdf

effort is evidenced by the criminal penalties which have been established for those who assist illegal aliens in escaping detection." CA Attorney General Opinions, 75 Ops. Cal. Atty. Gen. at *5 (citing 8 U.S.C § 1324); *see United States v. Rubio-Gonzales* (5th Cir. 1982) 674 F.2d 1067, 1073; *United States v. Cantu* (5th Cir. 1977) 557 F.2d 1173, 1180; *United States v. Lopez* (2d Cir. 1975) 521 F.2d 437, 444; 67 Ops. Cal. Atty. Gen. at *10, n. 16.

89.    The California Attorney General found the local sanctuary ordinance to be "'an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" CA Attorney General Opinions, 75 Ops. Cal. Atty. Gen. at *6 (quoting *Hines v. Davidowitz*, 312 U.S. at 67). "A *direct* conflict with a Federal or state statute or regulation presents a separate and distinct basis for the preemption of a local ordinance." (CA Attorney General Opinions, 75 Ops. Cal. Atty. Gen. at *6, n. 9 (citations omitted).[29]

90.    The Sanctuary State Law is no different than the city ordinance discussed in the Attorney General's opinion. As the Attorney General has correctly opined that Federal law preempted local sanctuary ordinance, that conclusion also applies to the state sanctuary law. Congress intends to preempt state law over criminal immigration enforcement because it "surely did not intend that state and local governments would undermine the deterrent effect of the criminal or civil penalties contained in the [Immigration Control Act]. By giving the impression that illegal aliens may obtain refuge from such penalties in a particular locale, [Sanctuary State Law] creates localized immigration

---

[29] https://oag.ca.gov/system/files/opinions/pdfs/92-607.pdf

policy and dissipates enforcement of Federal laws." CA Attorney General Opinions, 75 Ops. Cal. Atty. Gen. at *5.[30]

### D.    Obstruction Caused by the Sanctuary State Law

91.    Among many things, the Sanctuary State Law's interference with the City's coordination with the Federal Government in order to "protect" illegal immigrants from the Federal Government's enforcement of the U.S. Federal immigration laws as Defendants Governor Newsom and Attorney General Robert Bonta explain, amounts to "harboring" of illegal aliens by the State of California.

92.    The Ninth Circuit joined the Third, Fourth, and Eleventh Circuit in concluding that the Federal scheme on harboring under 8 U.S.C. § 1324 is comprehensive and field preemptive. *Valle Del Sol Inc.*, 732 F.3d at 1025-26; *see Lozano v. City of Hazleton*, 724 F.3d 297, 315-16 (3rd Cir. 2013) (joining the Eleventh Circuit in finding that state law proscribing harboring or sheltering aliens infringes upon a "comprehensive statutory scheme") (citing *United States v. Alabama*, 691 F.3d 1269, 1285-87 (11th Cir. 2012)); *United States v. South Carolina*, 906 F. Supp. 2d 463, 468 (D.S.C. 2012), aff'd, 720 F.3d 518 (11th Cir. July 23, 2013).

93.    "INA provides a comprehensive framework to penalize the transportation, concealment, and inducement of unlawfully present aliens."  Under this statutory scheme (8 U.S.C. § 1324(a)(1)(A)(ii)-(iv)), the "Federal government has clearly expressed more than a 'peripheral concern' with the entry, movement, and residence of aliens within the United States and the breadth of these laws illustrates an overwhelmingly dominant Federal interest in the field. *Georgia Latina*

---

[30] https://oag.ca.gov/system/files/opinions/pdfs/92-607.pdf

1  *Alliance for Human Rights v. Governor of GA*, 691 F.3d 1250, 1263-64

2  (11th Cir. 2012) (*GLAHR*).

3      94.    The Sanctuary State Law prohibits the cooperation between

4  City officials, including the Huntington Beach Police personnel, and the

5  Federal Government on Federal immigration laws enforcement.

6      95.    Under the Supremacy Clause, any state law "which interferes

7  with or is contrary to Federal law, must yield." *Gade v. National Solid*

8  *Wastes Management Association*, 505 U.S. 88, 108 (1992).

9      96.    Similar to Arizona's statute in *Valle Del Sol*, the Sanctuary

10  State Law is preempted because it prohibits Huntington Beach police

11  officers to notify Federal authorities of any unauthorized aliens in its

12  custody and violates 8 U.S.C. § 1324(a)(1)(iii) when they "knowingly or in

13  reckless disregard" "conceals, harbors, or shields from detection" in its

14  City Jail or "any means of transportation."

15      97.    "Given the Federal primacy in the field of enforcing

16  prohibitions on the transportation, harboring, and inducement of

17  unlawfully present aliens, the prospect of 50 individual attempts to

18  regulate immigration-related matters cautions against permitting states

19  to intrude into this area of dominant Federal concern." *Valle Del Sol*,

20  732 F. 3d at p. 1027 (quoting *GLAHR*, 691 F.3d at 1266).

21      98.    The Sanctuary State Law frustrates the Department of

22  Homeland Security's enforcement priorities to arrest or removal

23  individuals who are a threat to national security, public safety, or

24  recently entered the United States unlawfully.  In fact, the California

25  Attorney General Bonta supports DHS's enforcement priorities to arrest

26  or remove individuals who pose risk to public safety, terrorist, or recently

27  arrived.

28

99.    City officials, including Huntington Beach Police personnel, cannot obey the Sanctuary State Law without violating 8 U.S.C, § 1324(a)(1)(iii) when they have knowledge or in reckless disregard that an individual in their custody is in violation of law and are prohibited from sharing the information with the Federal authorities.

100.    The Orange County Sheriff, Don Barnes, is required to report annually to the Orange County Board of Supervisor on the county's compliance with California Government Code §§ 7283 and 7283.1 ("California's Transparent Review of Unjust Transfers and Holds ("TRUTH") Act).

101.    Sheriff Barnes stated that OCSD is prohibited by State law to notify Immigration Control and Enforcement of the release of inmates with ICE detainers.  In 2018, 1,106 inmates who had ICE detainers but did not meet eligibility for notifying ICE were released into the community.  173 out of the 1,106 inmates were rearrested "in Orange County for committing 58 different types of crimes, including attempted murder, assault and battery, child molestation, and robbery." (Exhibit "A.")

102.    In 2019, OCSD released 1,015 inmates had ICE detainers into the community without notifying ICE of their release because they did not meet state law requirement for notification.  "Of the 1,015 inmates with ICE detainers who were released back into the community, 238 have been rearrested in Orange County for committing new crimes, including assault and battery, rape, and robbery." (Exhibit "B.")

103.    In 2020, OCSD released 168 inmates who had ICE detainers but did not meet the state law's requirement for notifying ICE were released into the community.  Out of the 168 inmates, 36 were rearrested for new crimes in Orange County.  (Exhibit "C.")

104.  In 2021, OCSD released 199 inmates who had ICE detainers. In compliance with state law, 143 of these 199 inmates met the state's requirement for transfer to ICE's custody.  Only 73 out of the 143 individuals were transferred to ICE's custody.  The 70 individuals who were eligible for transfer to ICE, but were not, were released into the community.  A total of 24 out of the 70 individuals were re-arrested for committing new crimes in Orange County.  (Exhibit "D.")

105.  In 2021, there were 56 inmates who had ICE detainers but did not meet state law requirements for notifying ICE of their release. Of the 56 released into the community, three were rearrested for committing new crimes in Orange County.  (Exhibit "D.")

106.  In 2022, 272 inmates were released form Orange County jail had ICE detainers.  OCSD notified ICE of the inmates who were eligible for transfer to ICE's custody.  Of the 155 individuals who met the eligibility, only 17 were transferred to ICE's custody.  The other 138 individuals were released into the community.  A total of 20 individuals were rearrested for committing new crimes in Orange County.  (Exhibit "E.")

107.  In 2022, there were 117 inmates who had ICE detainers, but state law prohibited OCSD from notifying ICE.  They were released into the community.  A total of 13 were rearrested for new crimes in Orange County.  (Exhibit "E.")

108.  In 2023, there were 547 inmates who had ICE detainers released from Orange County Jail.  OCSD notified ICE of the inmates who were eligible for transfer to ICE's custody under state law.  About 81 of those inmates eligible for notification and transfer to ICE's custody were not transferred and released into the community.  A total of 40

individuals were rearrested for committing new crimes in Orange County.  (Exhibit "F.")

109.  In 2023, there were 245 inmates with ICE detainers who were not eligible for notifying ICE and were released into the community.  27 were rearrested for new crimes in Orange County.  These crimes were robbery, carjacking, kidnapping, parole or probation violation, sales or transport of narcotics, domestic violence, assault with a deadly weapon, felony driving under the influence.  (Exhibit "F."[31]

110.  Huntington Beach police officers cannot comply with both State and Federal laws while carrying out their duty.  For example, an unauthorized alien who was arrested for allegedly committing petty theft and placed in city jail, the Sanctuary State Law prohibits Huntington Beach Police officers from sharing with ICE or if ICE requests information about the individual, Huntington Beach cannot provide information about the individual, and thus, concealing, harboring or shielding from detection an unauthorized alien in its "building" under 8 U.S.C. § 1324(a)(1)(iii).  And if ICE arrives at the jail facility, Huntington Beach authority must refuse assumption of custody, as mandated by the Sanctuary State Law.  Huntington Beach is in violation of 8 U.S.C. § 1324(a)(1)(iii).

/ / /

/ / /

/ / /

---

[31]  During his presentation to the Orange County Board of Supervisors, Sheriff Barnes reported that 27 inmates who were released into the community committed new crimes.  Sheriff Barnes specified the types of crimes that these 27 individuals committed.  However, these crimes were not specified in the staff report (Exhibit "F").  *See* https://ocgov.granicus.com/player/clip/5109?view_id=8&redirect=true

111.  Compliance with 8 U.S. Code, Section 1324(a)(1)(ii) is vital to stopping human smuggling.  The Sanctuary State Law mandates that law enforcement does not cooperate with Federal authorities over immigration matters, including joining a task force.

112.  Huntington Beach, City officials, including Huntington Beach Police Department personnel are prohibited from cooperating, detaining, or investigating whether there is a potential for human trafficking.  City officials, including Huntington Beach Police Department personnel, are prohibited from informing the Federal Government that an alien engaged in smuggling individuals into the United States who are not otherwise engaged in human trafficking for forced labor or sex services.

113.  Under the Sanctuary State Law, Huntington Beach Police Officers are prohibited from asking the immigration status of aliens working for an employer.  Cal. Gov. Code § 7284.6 (a)(1)(A).

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE SUPREMECY CLAUSE**
**ARTICLE VI, CLAUSE 2 OF THE U.S. CONSTITUTION**
**Title 8, U.S.C. § 1324**
**(Against All Defendants)**

114.  Plaintiffs hereby incorporate the allegations made in each preceding paragraph of this Complaint as if fully set forth herein.

115.  The Sanctuary State Law is unconstitutional.  *See* U.S. Const. art. VI, cl. 2; U.S. Const. art. I, § 8, cl. 4; 8 U.S.C. §§ 1324, 1325, 1373; 18 U.S.C. §§ 4, 371, 372; *see also* Cal. Const. art. XI, § 5; Cal. Const. art. XX, § 3.

116.  The Supremacy Clause mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance

thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

117.  The Supremacy Clause "prohibit[s] States from interfering with or controlling the operations of the Federal Government." *Geo Group, Inc.,* 50 F.4th at 750 (quoting *United States v. Washington*, 142 S. Ct. at 1984).

118.  The Sanctuary State Law violates the Supremacy Clause precisely because it interferes with, in fact it obstructs, the Federal Government's efforts to coordinate to enforce U.S. Federal immigration laws, including but not limited to 8 U.S.C. § 1324.  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1,7285.2.

119.  Under the Sanctuary State Law, City officials, including Huntington Beach Police personnel, are mandated to "conceal, harbor, or shield from detection" any alien in their custody in violation of 8 U.S.C. § 1324(a)(1)(iii).  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

120.  City officials, including Huntington Beach Police personnel, are unable to fulfill their duty to investigate or detain individuals having committed crimes without violating the Sanctuary State Law.  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.)

121.  The Sanctuary State Law prohibits local law enforcement officers to cooperate with the Federal Government in criminal immigration investigation.  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

122.  The Sanctuary State Law bars local jurisdiction from complying with 8 U.S.C. § 1324 or participate in a joint task force.  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

123.   The Sanctuary State Law restricts cooperation between local law enforcement agencies and the Federal Government.   *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.)

124.   The Sanctuary State Law's interference with the City's coordination with the Federal Government in order to "protect" illegal immigrants from the Federal Government's enforcement of the U.S. Federal immigration laws as Defendants Governor Newsom and Attorney General Robert Bonta stated, amounts to "harboring" of illegal aliens by the State of California.

125.   City officials, including Huntington Beach Police personnel, are unable to stop crime before it occurs.   Instead, they must sit idly by and wait for a human smuggling incident to become a human trafficking situation in order to intervene and comply with California Government Code §§ 7282.5, 7284.4, 7284.6.

126.   The Sanctuary State Law is an obstacle to the City's ability to comply with U.S. Federal immigration laws.   It prevents City officials, including Huntington Beach Police personnel, from full, effective law enforcement and obstructs the City's ability to coordinate and cooperate with Federal law enforcement agencies.   As U.S. Federal immigration law, according to the Supremacy Clause, is supreme, the Sanctuary State Law is an unconstitutional barrier to the City's effective law enforcement efforts.

127.   Plaintiffs have no adequate remedy at law.   Absent relief, Defendants' actions continue to harm and threaten to harm Plaintiffs by impairing enjoyment of this right.

/ / /

/ / /

/ / /

## SECOND CAUSE OF ACTION

## VIOLATION OF THE NATURALIZATION CLAUSE

## ARTICLE I, SECTION 8, CLAUSE 4 OF THE U.S. CONSTITUTION

### Title 8, U.S.C. § 1324

### (Against All Defendants)

128.  Plaintiffs hereby incorporate the allegations made in each preceding paragraph of this Complaint as if fully set forth herein.

129.  The Sanctuary State Law is unconstitutional.  *See* U.S. Const. art. VI, cl. 2; U.S. Const. art. I, § 8, cl. 4; 8 U.S.C. §§ 1324, 1325, 1373; 18 U.S.C. §§ 4, 371, 372; *see also* Cal. Const. art. XI, § 5; Cal. Const. art. XX, § 3.

130.  Article I, Section 8, Clause 4 of the U.S. Constitution provides Congress with the "power… To establish a uniform Rule of Naturalization… throughout the United States." U.S. Const. art. I, § 8, cl. 4.

131.  In addition to conferring Congress with power to determine when foreign nationals may obtain U.S. citizenship, the Naturalization Clause is viewed as contributing to Congress's power over immigration, including its power to set rules for when aliens may enter or remain in the United States.

132.  In *Arizona v. United States*, 567 U.S. at 387, the Supreme Court declared that the Federal Government's "broad, undoubted power" over immigration was partially based "on the national government's constitutional power to 'establish a uniform Rule of Naturalization,' and its inherent power as sovereign to control and conduct relations with foreign nations." *Id*. at 394–95 (quoting U.S. Const. art. I, § 8, cl. 4).

133.  The Sanctuary State Law violates the City's right to fully control its own Police Department and fully and effectively engage in law

enforcement.  Moreover, neither the State, nor its laws, may prevent the City of Huntington Beach from honoring, following, and/or complying with State and all Federal laws, including Federal laws on immigration, which is the supreme law of the land on immigration.

134.  The Sanctuary State Law violates the City's right to fully control its own Police Department and fully and effectively engage in law enforcement.  Specifically, California Government Code §§ 7282.5, 7284.4, 7284.6, 7285.1, and 7285.2 prohibit local law enforcement officers to cooperate with the Federal Government in criminal immigration investigation.

135.  Under the Sanctuary State Law, City officials, including Huntington Beach Police personnel, are mandated to "conceal, harbor, or shield from detection" any alien in their custody in violation of 8 U.S.C.§ 1324(a)(1)(iii). *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

136.  The Sanctuary State Law bars local jurisdiction from complying with 8 U.S.C. § 1324 or participate in a joint task force.  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

137.  California Government Code §§ 7284.4 and 7282.5 restrict cooperation between local law enforcement agencies and the Federal Government.

138.  The Sanctuary State Law allows for smugglers to transport individuals into the United States in violation of 8 U.S.C. § 1324 for financial gain.

139.  The Sanctuary State Law places aliens at risk of harm or being trafficked because California Law Enforcement Agencies cannot engage in the enforcement of 8 U.S.C. § 1324.

140.   The Sanctuary State Law prohibits local law enforcement agencies from asking employers about a person's immigration status under 8 U.S.C. § 1324(a)(3).  Cal. Gov. Code § 7284.6(a)(1)(A).

141.   In recent years, Defendant Governor Gavin Newsom has taken a series of substantial steps to incentivize the inflow of illegal immigration into California, and to protect and harbor illegal immigrants, with the implementing of policies and laws to: hire illegal immigrants in jobs in State government, give illegal immigrants taxpayer funded downpayments of $150,000 to buy homes, spend $2.3 million of taxpayer money to support the relocating and settling of illegal immigrants in rural areas of the State, give illegal immigrants home mortgage aid to buy homes, newly allocating $25 million in taxpayer funded legal defense fund for illegal immigrants to fight the Federal government's announced crackdown on illegal immigration, which seeks to combat the violent crimes committed against U.S. citizens, and the list goes on.

142.   In addition, on December 17, 2024, Defendant Attorney General Robert Bonta issued a Press Release advising illegal immigrants the ways in which his office, and the State, were going to assist in shielding illegal immigrants – "threats of mass detention, arrests, and deportation" – from detection and detention by the Federal Government. In that Press Release, Robert Bonta directly advised that "You have the right to apply for and secure housing without sharing your immigration status," and "You have the right to an attorney."

143.   Defendant Robert Bonta has stated, "State and local law enforcement cannot ask for your immigration status" and "State and local law enforcement cannot share your personal information" and "State and local law enforcement cannot assist ICE with immigration

enforcement."  Not only does his statement reflect a violation of Federal immigration law, his statement also indicates a systematic program by the State to shield illegal immigrants in response to "the President-elect making clear his intent to move forward an inhumane and destructive immigration agenda once he takes office."  Defendant Robert Bonta's statements make clear that his systematic program to protect illegal immigrants conflicts with U.S. Federal immigration laws and Federal Government operations.

144.  "Effective immigration law enforcement requires a cooperative effort between all levels of government." *City of New York v. United States*, 179 F.3d at 32-33.

145.  The Sanctuary State Law violates Article I, Section 8, Clause 4 of the U.S. Constitution by actively obstructing the authority of the Federal Government and obstructing the City's ability to employ all laws available, including U.S. Federal immigration laws, to combat crime and ensure public safety by coordinating with the Federal Government to deal with certain individuals committing crime and who are subject to U.S. Federal immigration laws.

146.  Plaintiffs have no adequate remedy at law.  Absent relief, Defendants' actions continue to harm and threaten to harm Plaintiffs by impairing enjoyment of this right.

**THIRD CAUSE OF ACTION**
**VIOLATION OF U.S. FEDERAL IMMIGRATION LAWS**
**TITLE 8, U.S.C. § 1324**
**(Against All Defendants)**

147.  Plaintiffs hereby incorporate the allegations made in each preceding paragraph of this Complaint as if fully set forth herein.

148.  The Sanctuary State Law is unconstitutional.  *See* U.S. Const. art. VI, cl. 2; U.S. Const. art. I, § 8, cl. 4; 8 U.S.C. §§ 1324, 1325, 1373; 18 U.S.C. §§ 4, 371, 372; *see also* Cal. Const. art. XI, § 5; Cal. Const. art. XX, § 3.

149.  In 1986, Congress enacted the Immigration and Naturalization Act. 8 U.S.C. §§ 1101-1537.  Title 8, U.S.C. § 1324 was enacted to combat human smugglers who commit the crime by "bringing people into the United States, or unlawfully transporting and harboring people already in the United States, in deliberate evasion of immigration law."

150.  In part, 8 U.S.C. § 1324 makes it a Federal crime for any person to "knowing that a person is an alien, brings to or attempts to bring to the United States in any manner whatsoever such person at a place other than a designated port of entry or place other than as designated by the Commissioner, regardless of whether such alien has received prior official authorization to come to, enter, or reside in the United States and regardless of any future official action which may be taken with respect to such alien." 8 U.S.C. § 1324(a)(1)(A)(i).

151.  Title 8, U.S.C. § 1324 also makes it a Federal crime for any person to "knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation." 8 U.S.C. § 1324(a)(1)(A)(ii).

152.  And, 8 U.S.C. § 1324 makes it a Federal crime for any person to "knowingly hires for employment at least 10 individuals with actual knowledge that the individuals are aliens described in subparagraph (B)." 8 U.S.C. § 1324(a)(3)(A).

153.  Under the Sanctuary State Law, City officials, including Huntington Beach Police personnel, are mandated to "conceal, harbor, or shield from detection" any alien in their custody in violation of 8 U.S.C. § 1324(a)(1)(iii).  *See* Cal. Gov. Code §§ 7284.4, 7282.5, 7284.6, 7285.1, 7285.2.

154.  City officials, including Huntington Beach Police personnel, are unable to fulfill their duty to investigate or detain individuals having committed crimes without violating the Sanctuary State Law.  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

155.  The Sanctuary State Law prohibits local law enforcement officers to cooperate with the Federal Government in criminal immigration investigation.  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

156.  The Sanctuary State Law bars local jurisdiction from complying with 8 U.S. Code, Section 1324 or participate in a joint task force.  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

157.  The Sanctuary State Law restricts cooperation between local law enforcement agencies and the Federal Government.  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

158.  The Sanctuary State Law's interference with the City's coordination with the Federal Government in order to "protect" illegal immigrants from the Federal Government's enforcement of the U.S. Federal immigration laws as Defendants Governor Newsom and Attorney General Robert Bonta have declared is "harboring" of illegal aliens by the State of California.

159.  City officials, including Huntington Beach Police personnel, are unable to stop crime before it occurs.  Instead, they must sit idly by and wait for a human smuggling incident to become a human trafficking

1  situation in order to intervene and comply with California Government
2  Code §§ 7282.5, 7284.4, 7284.6.

3        160.  The Sanctuary State Law is an obstacle to the City's ability to
4  comply with U.S. Federal immigration laws.  It prevents City officials,
5  including Huntington Beach Police personnel, from full, effective law
6  enforcement and obstructs the City's ability to coordinate and cooperate
7  with Federal law enforcement agencies.  Pursuant to the Supremacy
8  Clause, U.S. Federal immigration law is supreme, and the Sanctuary
9  State Law is an unconstitutional barrier to the City's effective law
10  enforcement efforts.

11       161.  Plaintiffs have no adequate remedy at law.  Absent relief,
12  Defendants' actions continue to harm and threaten to harm Plaintiffs by
13  impairing enjoyment of this right.

14

15              **FOURTH CAUSE OF ACTION**
16       **VIOLATION OF U.S. FEDERAL IMMIGRATION LAWS**
17                 **TITLE 8, U.S.C. § 1373**
18                **(Against All Defendants)**

19       162.  Plaintiffs hereby incorporate the allegations made in each
20  preceding paragraph of this Complaint as if fully set forth herein.

21       163.  The Sanctuary State Law is unconstitutional.  *See* U.S. Const.
22  art. VI, cl. 2; U.S. Const. art. I, § 8, cl. 4; 8 U.S.C. §§ 1324, 1325, 1373; 18
23  U.S.C. §§ 4, 371, 372; *see also* Cal. Const. art. XI, § 5; Cal. Const. art. XX,
24  § 3.

25       164.  Title 8, U.S.C. § 1373(a) provides, "Notwithstanding any other
26  provision of Federal, State, or local law, a Federal State, or local
27  government entity or official from sending to, or receiving from, the

28

Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual."

165.  Under the Sanctuary State Law, City officials, including Huntington Beach Police personnel, are mandated to "conceal, harbor, or shield from detection" any alien in their custody in violation of 8 U.S.C.§ 1324(a)(1)(iii).  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

166.  The Sanctuary State Law prohibits local law enforcement officers to cooperate with the Federal Government in criminal immigration investigation.  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

167.  The Sanctuary State Law's interference with the City's coordination with the Federal Government in order to "protect" illegal immigrants from the Federal Government's enforcement of the Federal immigration laws as Defendants Governor Newsom and Attorney General Robert Bonta have declared is "harboring" of illegal aliens by the State of California.

168.  The Sanctuary State Law is an obstacle to the City's ability to comply with U.S. Federal immigration laws.  It prevents City officials, including Huntington Beach Police personnel, from full, effective law enforcement and obstructs the City's ability to coordinate and cooperate with Federal law enforcement agencies.  Pursuant to the Supremacy Clause, U.S. Federal immigration law is supreme, and the Sanctuary State Law is an unconstitutional barrier to the City's effective law enforcement efforts.

169.  Plaintiffs have no adequate remedy at law.  Absent relief, Defendants' actions continue to harm and threaten to harm Plaintiffs by impairing enjoyment of this right.

1

2

**FIFTH CAUSE OF ACTION**

3

**VIOLATION OF U.S. FEDERAL IMMIGRATION LAWS**

4

**TITLE 18, U.S.C. §§ 4, 371 AND 372**

5

**(Against All Defendants)**

6

170.  Plaintiffs hereby incorporate the allegations made in each

7

preceding paragraph of this Complaint as if fully set forth herein.

8

171.  The Sanctuary State Law is unconstitutional.  *See* U.S. Const.

9

art. VI, cl. 2; U.S. Const. art. I, § 8, cl. 4; 8 U.S.C. §§ 1324, 1325, 1373; 18

10

U.S.C. §§ 4, 371, 372; *see also* Cal. Const. art. XI, § 5; Cal. Const. art. XX,

11

§ 3.

12

172.  Title 18, U.S.C. § 4 provides, "Whoever, having knowledge of

13

the actual commission of a felony cognizable by a court of the United

14

States, conceals and does not as soon as possible make known the same

15

to some judge or other person in civil or military authority under the

16

United States, shall be fined under this title or imprisoned not more

17

than three years, or both." 18 U.S.C. § 4.

18

173.  Title 8, U.S.C. § 371 provides, "If two or more persons

19

conspire to either commit any offense against the United States, or to

20

defraud the United States, or any agency thereof in any manner or for

21

any purpose…each shall be fined under this title or imprisoned not more

22

than five years, or both."  *See United States v. Tuohey*, 867 F.2d 534, 536

23

(9th Cir. 1989) ("conspiracy to defraud the United States is not limited to

24

common-law fraud but reaches 'any conspiracy for the purpose of

25

impairing, obstructing or defeating the lawful function of any

26

department of government.'  [Citation.]").

27

174.  Title 8, U.S.C. § 372 provides, "If two or more

28

persons…conspire to prevent, by force, intimidation, or threat, any

person from accepting or holding any office, trust, or place of confidence under the United States…or impede him in the discharge of his official duties, each of such persons shall be fined under this title or imprisoned not more than six years, or both."

175. Under the Sanctuary State Law, City officials, including Huntington Beach Police personnel, are mandated to "conceal, harbor, or shield from detection" any alien in their custody in violation of 8 U.S.C. § 1324(a)(1)(iii). *See* Cal. Gov. Code §§ 7282.5, 7284.6, 7284.4, 7285.1, 7285.2.

176. City officials, including Huntington Beach Police personnel, are unable to fulfill their duty to investigate or detain individuals having committed crimes without violating the Sanctuary State Law. *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

177. The Sanctuary State Law prohibits local law enforcement officers to cooperate with the Federal Government in criminal immigration investigation. *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

178. The Sanctuary State Law bars local jurisdiction from complying with 8 U.S. Code, Section 1324 or participate in a joint task force. *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

179. The Sanctuary State Law restricts cooperation between local law enforcement agencies and the Federal Government. *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

180. The Sanctuary State Law's interference with the City's coordination with the Federal Government in order to "protect" illegal immigrants from the Federal Government's enforcement of the U.S. Federal immigration laws as Defendants Governor Newsom and

Attorney General Robert Bonta have declared is tantamount to "harboring" of illegal aliens by the State of California.

181.  City officials, including Huntington Beach Police personnel, are unable to stop crime before it occurs.  Instead, they must sit idly by and wait for a human smuggling incident to become a human trafficking situation in order to intervene and comply with California Government Code §§ 7282.5, 7284.4, 7284.6.

182.  The Sanctuary State Law is an obstacle to the City's ability to comply with U.S. Federal immigration laws.  It prevents City officials, including Huntington Beach Police personnel, from full, effective law enforcement and obstructs the City's ability to coordinate and cooperate with Federal law enforcement agencies.  Pursuant to the Supremacy Clause, U.S. Federal immigration law is supreme, and the Sanctuary State Law is an unconstitutional barrier to the City's effective law enforcement efforts.

183.  Plaintiffs have no adequate remedy at law.  Absent relief, Defendants' actions continue to harm and threaten to harm Plaintiffs by impairing enjoyment of this right.

## SIXTH CAUSE OF ACTION
### AIDING AND ABETTING, ACCESSORY AFTER THE FACT VIOLATION OF CALIFORNIA PENAL CODE §§ 31, 32
### (Against All Defendants)

184.  Plaintiffs hereby incorporate the allegations made in each preceding paragraph of this Complaint as if fully set forth herein.

185.  California Penal Code § 31 provides, "All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and

48

abet in its commission, or, not being present, have advised and encouraged its commission, and all persons counseling, advising, or encouraging children under the age of fourteen years, or persons who are mentally incapacitated, to commit any crime, or who, by fraud, contrivance, or force, occasion the drunkenness of another for the purpose of causing him to commit any crime, or who, by threats, menaces, command, or coercion, compel another to commit any crime, are principals in any crime so committed."

186.   California Penal Code § 32 provides: "Every person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony."

187.   Under the Sanctuary State Law, City officials, including Huntington Beach Police personnel, are mandated to "conceal, harbor, or shield from detection" any alien in their custody in violation of 8 U.S.C. §1324(a)(1)(iii).  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

188.   City officials, including Huntington Beach Police personnel, are unable to fulfill their duty to investigate or detain individuals having committed crimes without violating the Sanctuary State Law.  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

189.   The Sanctuary State Law prohibits local law enforcement officers to cooperate with the Federal Government in criminal immigration investigation.  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

190.  The Sanctuary State Law bars local jurisdiction from complying with 8 U.S.C. § 1324 or participate in a joint task force.  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

191.  The Sanctuary State Law restricts cooperation between local law enforcement agencies and the Federal Government.  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

192.  The Sanctuary State Law's interference with the City's coordination with the Federal Government in order to "protect" illegal immigrants from the Federal Government's enforcement of the U.S. Federal immigration laws as Defendants Governor Newsom and Attorney General Robert Bonta have declared is "harboring" of illegal aliens by the State of California and amounts to a violation of California Penal Code §§ 31 and 32.

193.  The Sanctuary State Law causes City officials, including Huntington Beach Police personnel, to violate California Penal Code §§ 31 and 32 by aiding and abetting the commission of a crime and accessory after the fact in the commission of a crime, i.e., the violation of U.S. Federal immigration laws, including but not limited to 8 U.S.C. §§ 1324 and 1325.

194.  Plaintiffs have no adequate remedy at law.  Absent relief, Defendants' actions continue to harm and threaten to harm Plaintiffs by impairing enjoyment of this right.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## SEVENTH CAUSE OF ACTION
### VIOLATION OF OATH OF OFFICE
### ARTICLE XX, § 3 OF THE CALIFORNIA CONSTITUTION
### (Against All Defendants)

195.  Plaintiffs hereby incorporate the allegations made in each preceding paragraph of this Complaint as if fully set forth herein.

196.  The Sanctuary State Law is unconstitutional.  *See* U.S. Const. art. VI, cl. 2; U.S. Const. art. I, § 8, cl. 4; 8 U.S.C. §§ 1324, 1325, 1373; 18 U.S.C. §§ 4, 371, 372; *see also* Cal. Const. art. XI, § 5; Cal. Const. art. XX, § 3.

197.  Article XX, § 3 of the California Constitution provides the Oath of Office that certain City officials, including elected officials and police officers, are required to take in order to be fully vested with authority for the office they are to assume.  Cal. Const. art. XX, § 3.

198.  The Constitutionally required Oath of Office states "I, _____, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the Constitution of the State of California against all enemies, foreign and domestic; that I will bear true faith and allegiance to the Constitution of the United States and the Constitution of the State of California; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties upon which I am about to enter."

199.  The Sanctuary State Law forces the City's officials, including Huntington Beach Police personnel, to violate their legal obligations and their Oaths of Office to the U.S Constitution, the California Constitution, and U.S. Federal immigration laws in violation of the California Constitution's Oath of Office.

200.   Under the Sanctuary State Law, City officials, including Huntington Beach Police personnel, are mandated to "conceal, harbor, or shield from detection" any alien in their custody in violation of 8 U.S.C. § 1324(a)(1)(iii).   *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

201.   City officials, including Huntington Beach Police personnel, are unable to fulfill their duty to investigate or detain individuals having committed crimes without violating the Sanctuary State Law.   *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

202.   The Sanctuary State Law prohibits local law enforcement officers to cooperate with the Federal Government in criminal immigration investigation.   *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

203.   The Sanctuary State Law bars local jurisdiction from complying with 8 U.S.C. § 1324 or participate in a joint task force.   *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

204.   The Sanctuary State Law restricts cooperation between local law enforcement agencies and the Federal Government.   *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

205.   The Sanctuary State Law's interference with the City's coordination with the Federal Government in order to "protect" illegal immigrants from the Federal Government's enforcement of the U.S. Federal immigration laws causes City officials, including Huntington Beach Police personnel, to violate the terms of their Oath of Office required by the California Constitution, i.e., that they swear to "support and defend the Constitution of the United States and the Constitution of the State of California against all enemies, foreign and domestic; that [they] will bear true faith and allegiance to the Constitution of the

United States and the Constitution of the State of California; that [they] take this obligation freely, without any mental reservation or purpose of evasion; and that [they] will well and faithfully discharge the duties upon which [they] a[re] about to enter," causing violations of U.S. Federal immigration laws, including but not limited to 8 U.S.C. §§ 1324 and 1325.

206.  Plaintiffs have no adequate remedy at law.  Absent relief, Defendants' actions continue to harm and threaten to harm Plaintiffs by impairing enjoyment of this right.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

1.      Preliminary and permanent injunctive relief preventing Defendants from enforcing the Sanctuary State Law (SB 54), or, alternatively, from enforcing the California statutes and constitutional provisions upon which the Sanctuary State Law is based to the extent those statutes and provisions violate the Supremacy Clause, the afore U.S. Federal immigration laws, the afore California Penal Code(s), and other provisions of the U.S. Constitution and California Constitution;

2.      An order and judgment declaring that the Sanctuary State Law (SB 54), or, alternatively, the California statutes and constitutional provisions upon which the Sanctuary State Law is based, violate the Supremacy Clause, the afore U.S. Federal immigration laws, the afore California Penal Code(s), and other provisions of the U.S. Constitution and California Constitution;

3.      An order and judgment declaring that the Sanctuary State Law (SB 54) provides no obstacle to Huntington Beach's cooperation with

the Federal Government and acts to comply with all U.S. Federal immigration laws, or, alternatively, the California statutes and constitutional provisions upon which AB 1955 is based, violate the Supremacy Clause, the afore U.S. Federal immigration laws, the afore California Penal Code(s), and other provisions of the U.S. Constitution and California Constitution;

4.      Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and other applicable laws; and

5.      Such other and further relief as the Court may deem just and proper.

DATED: January 7, 2025          MICHAEL E. GATES, City Attorney


By:    /s/ Michael E. Gates
       Michael E. Gates, City Attorney
       Attorney for Plaintiffs
       CITY OF HUNTINGTON BEACH,
       HUNTINGTON BEACH CITY
       COUNCIL, HUNTINGTON BEACH
       POLICE DEPARTMENT, and the
       HUNTINGTON BEACH POLICE
       CHIEF

1

# **DEMAND FOR JURY TRIAL**

2

3        Plaintiffs, CITY OF HUNTINGTON BEACH, HUNTINGTON

4    BEACH CITY COUNCIL, HUNTINGTON BEACH POLICE

5    DEPARTMENT, and the HUNTINGTON BEACH POLICE CHIEF

6    hereby demand trial by jury in the above-entitled action pursuant to

7    Federal Rules of Civil Procedure 38(b) and Local Rule 38-1.

8

9    DATED:  January 7, 2025          MICHAEL E. GATES, City Attorney

10

11                                  By:    /s/ Michael E. Gates

12                                      Michael E. Gates, City Attorney
                                        Attorney for Plaintiffs
13                                      CITY OF HUNTINGTON BEACH,
                                        HUNTINGTON BEACH CITY
14                                      COUNCIL, HUNTINGTON BEACH
                                        POLICE DEPARTMENT, and the
15                                      HUNTINGTON BEACH POLICE
                                        CHIEF
16

17

18

19

20

21

22

23

24

25

26

27

28