1  MICHAEL J. Vigliotta, City Attorney (SBN 207630)
2  Office of the City Attorney
   2000 Main Street, P.O. Box 190
3  Huntington Beach, CA 92648
   (714) 536-5555
4  MVigliotta@surfcity-hb.org
5
   James K. Rogers
6  America First Legal Foundation
   611 Pennsylvania Ave., SE #231
7  Washington, D.C. 20003
   (202) 964-3721
8  James.Rogers@aflegal.org
9
   Attorneys for Plaintiffs
10 CITY OF HUNTINGTON BEACH, a California Charter City, and Mu-
11 nicipal Corporation, HUNTINGTON BEACH CITY COUNCIL, HUN-
   TINGTON BEACH POLICE DEPARTMENT, and the HUNTINGTON
12 BEACH POLICE CHIEF
13

14 **UNITED STATES DISTRICT COURT**
   **CENTRAL DISTRICT OF CALIFORNIA**
15

16 CITY        OF      HUNTINGTON        CASE NO. 8:25-cv-00026-SSS-PD
17 BEACH,    a   California   Charter    **FIRST AMENDED COMPLAINT FOR**
   City,   HUNTINGTON      BEACH        **DECLARATORY AND INJUNCTIVE**
18 CITY COUNCIL, HUNTINGTON             **RELIEF**
19 BEACH POLICE DEPARTMENT,
   and the HUNTINGTON BEACH             1. **VIOLATION OF THE SUPREMECY**
20 POLICE CHIEF, in his official           **CLAUSE – ARTICLE VI, CLAUSE 2**
21 capacity as Chief of Police,            **OF THE U.S. CONSTITUTION**
                                        2. **VIOLATION OF THE NATURALI-**
22                                          **ZATION CLAUSE – ARTICLE I,**
            Plaintiffs,                     **SECTION 8, CLAUSE 4 OF THE U.S.**
23                                          **CONSTITUTION**
            v.                          3. **VIOLATION OF U.S. FEDERAL**
24                                         **IMMIGRATION LAWS – 8 U.S.C. §**
25                                         **1324**
   The STATE OF CALIFORNIA,            4. **VIOLATION OF U.S. FEDERAL**
26 GAVIN NEWSOM, in his official          **IMMIGRATION LAWS – 8 U.S.C. §**
27 capacity as Governor of the State      **1373**
   of California; ROBERT BONTA in      5. **VIOLATION OF U.S. FEDERAL**
28                                         **IMMIGRATION LAWS – 18 U.S.C. §§**

                                  1

his official capacity as Attorney General of the State of California; and

DOES 1-50, inclusive,

Defendants.

4, 371, 372, and 1512
6. **VIOLATION OF CALIFORNIA PENAL CODE §§ 31, 32**
7. **VIOLATION OF CALIFORNIA CONSTITUTION – ARTICLE XX, SECTION 3**
8. **VIOLATION OF 42 U.S.C. § 1983**
9. **NON-STATUTORY CAUSE OF ACTION FOR VIOLATION OF FEDERAL LAW**

**DEMAND FOR JURY TRIAL**

## COMPLAINT

The CITY OF HUNTINGTON BEACH, a California Charter City, and Municipal Corporation, the HUNTINGTON BEACH CITY COUNCIL, the HUNTINGTON BEACH POLICE DEPARTMENT, and the HUNTINGTON BEACH POLICE CHIEF, in his official capacity as Chief of Police are all collectively hereinafter referred to together as the "City" or together as "Plaintiffs."

The City brings this lawsuit seeking Declaratory and Injunctive Relief ("Complaint") against the STATE OF CALIFORNIA, GAVIN NEWSOM, in his official capacity as Governor of the State of California; ROBERT BONTA in his official capacity as Attorney General of the State of California; and DOES 1-50, inclusive (together as "Defendants"), for various violations of law and actual and threatened State enforcement actions against the City in violation of ARTICLE VI, CLAUSE 2 OF THE U.S. CONSTITUTION, ARTICLE I, SECTION 8, CLAUSE 4 OF THE U.S. CONSTITUTION, U.S. Federal Immigration Laws under 8 U.S.C. §§ 1324, 1325, & 1373, Federal Criminal Laws under 18 U.S.C. §§ 4, 371, 372, and 1512, and Federal Civil Rights Laws under 42 U.S.C. § 1983, and causing the City further thereby to violate California Penal Code §§ 31, 32, for Aiding and Abetting and Accessory After the Fact in the Commission of Federal

crimes, and violations of City Officials' Oath of Office pursuant to ARTICLE XX, SECTION 3 OF THE CALIFORNIA CONSTITUTION.

By this Complaint, the City seeks a Judicial Declaration invalidating, and an Injunction Order enjoining, California's "Sanctuary State Law," which includes, among other operative provisions, California Government Code §§ 7282, 7282.5, 7283-7283.2, 7284-7284.12, and 7285-7285.3 against the City, its Police Department, and all City Officials and employees.  The City avers the following upon personal knowledge, information, and belief, and based upon the investigation of counsel as to all other facts alleged in this Complaint.

## INTRODUCTION

As a matter of law, the State's "Sanctuary State Law" is unconstitutional and violates Federal law; as a matter of enforcement policy, it is a clear and present danger to the health, safety and wlfare of the City of Huntington Beach. According to the California Department of Justice, violent crime has risen in California by over 15% between 2018 and 2023[1], and aggravated assaults, motor vehicle theft, robbery, and arson throughout the State have increased since 2018.

The Nation has seen violent crime committed by illegal immigrants including MS-13[2] and Tren de Aragua gang members including widely reported rapes, murders, assaults, and other crimes.[3]  In addition, the

---

[1] CALIFORNIA DEP'T OF JUSTICE, CRIME IN CALIFORNIA at 1 (2023), https://perma.cc/L24D-DHFV.

[2] STAFF OF H. COMM. ON THE JUDICIARY AND THE SUBCOMMITTEE ON IMMIGRATION INTEGRITY, SECURITY, AND ENFORCEMENT, 118TH CONG., THE MURDER OF KAYLA HAMILTON: A CASE FOR IMMIGRATION ENFORCEMENT AND BORDER SECURITY (May 23, 2023), https://perma.cc/QSN7-U55L.

[3] KFOX-TV, *Report: Tren De Aragua member arrested for sex trafficking migrant. At Gateway Hotel*  (Oct. 9, 2024), https://perma.cc/SAF8-LM3N;

3

reported violent crimes by illegal immigrants includes hostile take-overs by force of apartment buildings and other American establishments seen in Aurora, Colorado[4] and El Paso, Texas.[5]  According to the U.S. Department of Homeland Security, California leads the nation with the highest illegal immigrant population of any other state – with 2,600,000 in 2022.[6]

Data shows that the flow of mass illegal immigration *creates* human trafficking, including increasing a market in the United States for human trafficking – with "[t]he number of persons prosecuted for human trafficking more than doubled from 2012 to 2022."[7]

Human trafficking, which also results in sex trafficking, hurts women and children the most[8] and over 320,000 immigrant children have gone missing in the United States.  According to the Federal Government, those lost children are now completely unaccounted for and un-

---

Christina Coulter, *Colorado video shows Tren de Aragua gang beating apartment complex worker in extortion bid, company says*, Fox News (Oct. 16, 2024), https://perma.cc/HF2N-E3M9.

[4] Samantha Jarpe, *ICE: 16 detained in Aurora are suspected Tren de Aragua associates*, KDVR (Dec. 18, 2024), https://perma.cc/W6ZF-FYYP .

[5] Kerry Mannix, *Inside a Downtown El Paso hotel that is reportedly housing Tren de Aragua gang members*, KVIA.com (Sep. 10, 2024), https://perma.cc/5FR2-VZ23.

[6] Baker, B. & Warren, R., *Estimates of the Unauthorized Immigrant Population Residing in the United States: January 2018 to January 2022* at 5, U.S. Dep't of Homeland Sec. (Apr. 18, 2024), https://perma.cc/75S4-Z84K.

[7] Bureau of Justice Statistics, Human Trafficking Data Collection Activities, 2024, NCJ 309422 (Oct. 2024), https://perma.cc/5WJ9-TD8R.

[8] Heather Robinson, *How Biden's border policies will increase sex trafficking of children to US*, New York Post (Apr. 17, 2021), https://perma.cc/7TLP-MH5Q.

able to be protected.[9]  Lest it be forgotten, entering the United States illegally in the first place is a Federal crime. 8 U.S.C. §§ 1325 and 1326.

Protecting the City's 200,000 residents from crime and lawlessness is of the greatest import to, and of the highest order for, Huntington Beach's City leaders and its Police Department. Huntington Beach is the 23rd largest of 482 cities in the State of California.

The State's relatively new "Sanctuary State Law" directly conflicts with U.S. Federal immigration, criminal, and civil rights laws, including but not limited to 8 U.S.C. §§ 1324, 1373, and 1644; 18 U.S.C. §§ 4, 371, 372, and 1512; and 42 U.S.C. § 1983.

California's Sanctuary State Law not only limits the ability of City officials, including Huntington Beach Police personnel, to engage fully in effective law enforcement practices, but it directs City officials, including Huntington Beach Police personnel, *to **violate** U.S. Federal law*, including and among others, 8 U.S.C. §§ 1324, 1373, and 1644, and 18 U.S.C. §§ 4, 371, 372, and 1512.  In fact, the conflict of laws created by the State presents an untenable "Catch-22" for the City of Huntington Beach, e.g., comply with the State's new Sanctuary State Law and violate U.S. Federal immigration laws, or comply with the Federal immigration laws, and violate the Sanctuary State Law. This conflict must be reconciled by this Court.

At the passage of California's Sanctuary State Law in 2017, NPR reported that the law "bans state and local agencies… from enforcing 'holds' on people in custody. It blocks the deputization of police as immigration agents and bars state and local law enforcement agencies from

---

[9] Jennie Tauer, *Biden-Harris admin loses track of 320,000 migrant children – with untold numbers at risk of sex trafficking and forced labor,* NEW YORK POST (Aug. 21, 2024), https://perma.cc/UES9-S289.

inquiring into an individual's immigration status....    It also prohibits new or expanded contracts with Federal agencies to use California law enforcement facilities as detention centers, although it does not force the termination of existing contracts. . . ."[10]  Politico reported that this new law limits "local law enforcement officials' ability to cooperate with federal immigration authorities. . . ."[11]

Huntington Beach is a City in the County of Orange. As will be presented in greater detail, *infra*, Sheriff Don Barnes reported that the Orange County Sheriff's Department (hereinafter "OCSD") is prohibited by State law from notifying U.S. Immigration and Customs Enforcement (ICE) of the release of inmates with ICE detainers. In 2018, 1,106 inmates in Orange County who had ICE detainers but did not meet eligibility for notifying ICE were released into the community.  Out of those 1,106 inmates, 173 were rearrested "in Orange County for committing 58 different types of crimes, including attempted murder, assault and battery, child molestation, and robbery."  In 2023, 547 inmates with ICE detainers were released from Orange County Jail. About 81 of those inmates eligible for notification and transfer to ICE's custody were not transferred but were released into the community. A total of 40 individuals were rearrested for committing new crimes in Orange County. Being prevented from coordinating with Federal agencies by the Sanctuary State Law prevents effective law enforcement, puts the community at risk, and as the data shows, leads to more crimes.

---

[10] Ben Adler, *California Governor Signs 'Sanctuary State' Bill*, NPR (Oct. 5, 2017), https://perma.cc/5YEE-2XF6.

[11] David Siders, *Brown signs 'sanctuary state' bill in California*, POLITICO (Oct. 5, 2017), https://perma.cc/4LXS-4FP5.

In addition to commanding the City to violate U.S. Federal immigration laws, the State's Sanctuary State Law forces City officials, including Huntington Beach Police personnel, to violate California Penal Code §§ 31 and 32 for "aiding and abetting" and "accessory after the fact" in harboring, concealing, or protecting the perpetrator who committed a Federal crime. Moreover, the Sanctuary State Law forces City officials, including Huntington Beach Police personnel, to harbor, conceal, or "shield from detection" known unauthorized aliens in their custody. The Sanctuary State Law commands City officials, including Huntington Beach Police personnel, to turn a blind eye to the smuggling of aliens, many of whom end up becoming victims of human trafficking.

The State cannot force the City to violate U.S. Federal immigration laws that both the Ninth Circuit Court of Appeals and the United States Supreme Court have held preempt related State laws under the Supremacy Clause.

To put a fine point, as a Charter City, Huntington Beach's Police Department does not belong to the State. Rather, the Huntington Beach Police Department belongs to the City – and as such, the Police Department should be free from State interference and control. The City and its Police Department should be, therefore, entirely at liberty to employ *every* lawful means to combat crime and promote public safety for the City's 200,000 residents.

While the Federal Government cannot *commandeer* State and/or local resources to effectuate its operations or achieve its goals, *local agencies, like Huntington Beach, should be at liberty to **voluntarily** cooperate with the Federal Government in its operations* in order to combat

local crime and promote local public safety.[12]  As it is now, California's Sanctuary State Law prevents such voluntary cooperation thereby preventing the City from employing every lawful means available to combat crime in Huntington Beach and forces City officials to violate U.S. Federal immigration laws. That the State can stand as a barrier between the City and the Federal Government not only shocks the conscience, but it is also unconstitutional.

The Supremacy Clause of the U.S. Constitution demands that the California Sanctuary State Law yield to the Federal Government and not act as a barrier to the enforcement of U.S. Federal immigration laws.  By enacting its Sanctuary State Law, the State of California exceeded its authority and is unconstitutionally interfering with U.S. Federal law and the City's Charter Home Rule authority.

With no other remedy available at law, the City seeks a Judicial Declaration invalidating, and an Injunction Order enjoining, the State's enforcement of operative portions of California's "Sanctuary State Law," which includes, among others, California Government Code §§ 7282, 7282.5, 7283-7283.2, 7284-7284.12, and 7285-7285.3, against the City Plaintiffs and the City's officials and employees.

**PARTIES**

1.     Plaintiff CITY OF HUNTINGTON BEACH is, and at all relevant times was, a Municipal Corporation and Charter City[13] organized by the people of the City and existing under a freeholder's charter and

---

[12] *See Cal. ex. Rel. Becerra v. Sessions*, 284 F. Supp.3d 1015, 1035 (N.D. Cal.  2018) ("No cited authority holds that the scope of state sovereignty includes the power to forbid state or local employees from voluntarily complying with a federal program.").

[13] CITY OF HUNTINGTON BEACH, CAL., TITLE CHA CHARTER, PREAMBLE (Oct. 15, 2024), https://perma.cc/XX97-BXPA.

exercising "Home Rule" powers over its Municipal Affairs, including without limitation local law enforcement as authorized by Article XI, Section 5 of the California Constitution.

2.     Plaintiff HUNTINGTON BEACH CITY COUNCIL ("City Council" or "Council Members") is, and at all relevant times was, the elected body of seven members, elected by the People of the City pursuant to the Charter of the City of Huntington Beach. *See* Section 300, City Charter[14].

3.     Plaintiff HUNTINGTON BEACH POLICE DEPARTMENT ("HBPD") is, and at all relevant times was, the official local municipal law enforcement department of the City of Huntington Beach, organized as a Charter City pursuant to, and authorized as provided in Article XI, including §§ 3 and 5, of the California Constitution.

4.     Plaintiff HUNTINGTON BEACH POLICE CHIEF ("HBPD Chief") is the Chief of the Huntington Beach Police Department. He was duly appointed by the City Council.

5.     Defendant STATE OF CALIFORNIA is the State of California.

6.     Defendant GAVIN NEWSOM ("Governor") is and at all relevant times was the Governor of the State of California. He is being sued in his official capacity.

7.     Defendant ROBERT BONTA ("Attorney General") is and at all relevant times was the Attorney General of the State of California. He is being sued in his official capacity.

---

[14] *Id.* at CHARTER ART. III § 300 (Oct. 15, 2024), https://perma.cc/VQK6-J5QL.

## POTENTIAL PARTIES

8.      The City is ignorant of the true names and capacities of those Defendants sued herein as DOES 1 through 50, inclusive, and therefore sue those Defendants by such fictitious names. The City will amend this Complaint to allege the true names and capacities of these fictitiously named Defendants when the same have been ascertained.

9.      There are several individuals and/or entities whose true names and capacities are currently not known to the City. Evidence may come forth that others are legally responsible and liable to the City to the extent of the liability of the named Defendants. The City will seek leave of the Court to amend this Complaint to reflect the names and capacities should they become known. The City reserves the right to amend this claim pursuant to Fed. R. Civ. P. 15(a) and Fed. R. Civ. P. 21 with leave of the Court to add potential additional defendants and additional allegations and claims.

## JURISDICTION AND VENUE

10.      This case presents Federal questions arising under the Constitution of the United States and seeks relief for the deprivation of Federal rights under color of state law.  This Court accordingly has subject-matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1343.

11.      This Court has authority to award Plaintiffs declaratory relief pursuant to 28 U.S.C. § 2201, and injunctive relief under 28 U.S.C. §§ 1343 and 2202, Rule 65 of the Federal Rules of Civil Procedure, and under *Ex parte Young*, 209 U.S. 123 (1908).

12.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

**ALLEGATIONS**

    **A.**    **Charter City Authority**

    13.    The City of Huntington Beach is a Municipal Corporation formed by the people of the City of Huntington Beach as a "Charter City" pursuant to California Constitution Article XI §§ 3 and 5.

    14.    To compare, "general law" cities are "political subdivisions" of the State and the law generally holds that such cities must follow the dictates of the State to execute functions of the State. Accordingly, "political subdivision" is defined to mean "a geographic area of representation . . . including, but not limited to, a city, a school district, a community college district, or other district organized pursuant to state law." Cal. Elect. Code § 14051(a).

    15.    *Charter Cities* on the other hand, being formed by the people of their city under the California Constitution (and *not* State law), are *not political subdivisions of the State*. To that end, both the California Constitution and case law hold that Charter Cities possess independent authority over Municipal Affairs – so "independent" as to be free from State Legislative interference and control. *See* Cal. Const. art. XI, § 5(a) (which expressly states, "***City charters adopted pursuant to this Constitution shall supersede any existing charter, and with respect to municipal affairs shall supersede all laws inconsistent therewith***." (emphasis added)).

    16.    As the Court of Appeal recently stated, Charter Cities, like Huntington Beach, "are distinct individual entities, and are not connected political subdivisions of the state." *Haytasingh v. City of San Diego*, 66 Cal.App.5th 429, 459 (2021). The Court of Appeal explained that "'[i]t is the free consent of the persons composing them that brings into existence municipal corporations, and they are used for the promotion of their own

1  local and private advantage and convenience… *Cities, therefore, are dis-*
2  *tinct individual entities, and are not connected political subdivisions of*
3  *the state.* **As a matter of fact, municipalities, and particularly**
4  **charter cities, are in a sense independent political organizations**
5  **and do not pretend to exercise any functions of the state. They ex-**
6  **ist in the main for the purposes of local government.**'" *Id.,* (empha-
7  sis added) (quoting *Otis v. City of Los Angeles*, 52 Cal.App.2d 605, 611-12
8  (1942)).

9      17.   In 2020, the State Court of Appeal recognized that Charter
10  Cities, far from being creatures of the State, enjoy constitutionally rec-
11  ognized autonomy (Cal. Const. art. XI) and municipal authority over cer-
12  tain areas of governance that is "supreme and beyond the reach of legis-
13  lative enactment." *City of Redondo Beach v. Padilla*, 46 Cal.App.5th. 902,
14  910 (2020) (relying on Cal. Const. art. XI).

15      18.   After the California Constitution of 1879 was adopted, the
16  Supreme Court of California declared it was "manifestly the intent" of
17  the drafters "to emancipate municipal governments from the authority
18  and control formerly exercised over them by the Legislature." *Johnson v.*
19  *Bradley*, 4 Cal.4th 389, 395 (1992) (quoting *People v. Hoge*, 55 Cal. 612,
20  618 (1880)).

21      19.   Article XI, section 5 of the California Constitution provides in
22  full:

23          (a) It shall be competent in any city charter to provide
24          that the city governed thereunder may make and en-
25          force all ordinances and regulations in respect to munic-
        ipal affairs, subject only to restrictions and limitations
26          provided in their several charters and in respect to other
27          matters they shall be subject to general laws. City char-
28          ters adopted pursuant to this Constitution shall super-

sede any existing charter, and with respect to municipal affairs shall supersede all laws inconsistent therewith.

(b) It shall be competent in all city charters to provide, in addition to those provisions allowable by this Constitution, and by the laws of the State for: (1) **the constitution, regulation, and government of the city police force** (2) subgovernment in all or part of a city (3) conduct of city elections and (4) plenary authority is hereby granted, subject only to the restrictions of this article, to provide therein or by amendment thereto, the manner in which, the method by which, the times at which, and the terms for which the several municipal officers and employees whose compensation is paid by the city shall be elected or appointed, and for their removal, and for their compensation, and for the number of deputies, clerks and other employees that each shall have, and for the compensation, method of appointment, qualifications, tenure of office and removal of such deputies, clerks and other employees.

Cal. Const. art. XI, § 5 (emphasis added).

20.    The California Supreme Court has explained that § 5(a) of Article XI of the California Constitution provides that a Charter City shall not be governed by State law in respect to "Municipal Affairs." Rather, "so far as 'Municipal Affairs' are concerned," Charter Cities' laws are "supreme and beyond the reach of [State] legislative enactment." *California Fed. Savings & Loan Assn. v. City of Los Angeles* 35 Cal.3d 1, 12 (1991).

21.    One of the "core" categories of Municipal Affairs that is specifically described in Article XI, § 5(b) is "the constitution, regulation and government of the city police force." Cal. Const. art. XI, § 5(b)(1).

22.    The "Home Rule" provision of the California Constitution authorizes a Charter City to exercise plenary authority over Municipal Af-

fairs, free from any constraint imposed by the general law and subject only to constitutional limitations. *See* Cal. Const. art. XI, § 5(a); *Ex Parte Braun*, 141 Cal. 204, 209 (1903); *Bishop v. City of San Jose*, 1 Cal. 3d 56, 61 (1969); *Comm. of Seven Thousand v. Super. Ct.* (*City of Irvine*), 45 Cal.3d 491 (1988).

23.    As a Charter City, the City of Huntington Beach has supreme authority over its city police force. Cal. Const. art. XI, § 5(b).

24.    As a Charter City particularly, the City's Police Department does not belong to the State, rather, it belongs to the City – and as such, is free from State interference and control. The City's Police Department engages in local arrests and investigations as Municipal Affairs.

25.    The independence and Home Rule authority the California Constitution provides to Huntington Beach means that the City and its Police Department are, among many other things, at liberty to conduct effective law enforcement practices, including fighting violent crime by all means available, and "free" to comply with Federal laws in addition to its local laws; "free" from State interference.

26.    The City of Huntington Beach has a duty to protect the health, safety, and welfare of its residents. Part of that duty is to ensure that police officers have the ability to investigate crimes before they occur, and arrest and detain individuals who committed those crimes, including incidents involving unauthorized aliens. Part of that duty necessarily involves coordinating with other agencies, whether County, State, or Federal for full enforcement of the laws.

27.    Article XX, § 3 of the California Constitution provides the Oath of Office that certain City officials, including elected officials and police officers, are required to take in order to be fully vested with authority for the office they are to assume. Cal. Const. art. XX, § 3.

28.    The Constitutionally required Oath of Office states "I, ............, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the Constitution of the State of California against all enemies, foreign and domestic; that I will bear true faith and allegiance to the Constitution of the United States and the Constitution of the State of California; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties upon which I am about to enter."

29.    The Sanctuary State Law forces the City's officials, including Huntington Beach Police personnel, to violate U.S. Federal law, in violation of the California Constitution's Oath of Office.

### B.    The Sanctuary State Law

30.    In 2017, the State of California enacted the "Sanctuary State Law," presented then as the "California Values Act of 2017." The Legislative Bill at the time was commonly known as "Senate Bill 54" or "California's Sanctuary State Law" (hereinafter "Sanctuary State Law").

31.    The Sanctuary State Law is unconstitutional. *See* U.S. Const. art. VI, cl. 2; U.S. Const. art. I, § 8, cl. 4; 8 U.S.C. §§ 1324, 1325, 1373; 18 U.S.C. §§ 4, 371, 372, and 1512; *see also,* Cal. Const. art. XI, § 5; Cal. Const. art. XX, § 3.

32.    The Sanctuary State Law violates the City's right to fully control its own Police Department and fully and effectively engage in law enforcement. Moreover, neither the State, nor its laws, may prevent the City of Huntington Beach from honoring, following, and/or complying with State and all Federal laws, including Federal laws on immigration, which is the supreme law of the land on immigration.

33.    The Sanctuary State Law violates the City's right to fully control its own Police Department and fully and effectively engage in law

enforcement. Specifically, California Government Code §§ 7282.5, 7284.4, 7284.6, 7285.1, and 7285.2 prohibit local law enforcement officers from cooperating with the Federal Government in criminal immigration investigation.

34.    The Sanctuary State Law bars local jurisdictions from complying with 8 U.S.C. § 1324 or participating in a joint task force that may involve immigration enforcement. *See* Cal. Gov. Code §§ 7282.5, 7282.4 7284.6, 7285.1, 7285.2.

35.    California Government Code §§ 7282.4 and 7282.5 restrict cooperation between local law enforcement agencies and the Federal Government, which is a violation of 8 U.S.C. §§ 1373 and 1644, which expressly preempt State and local laws and confer on local government officials the absolute right to communicate with DHS about "the citizenship or immigration status, lawful or unlawful, of any individual."

36.    The Sanctuary State Law allows for smugglers to transport individuals into the United States in violation of 8 U.S.C. § 1324 for financial gain.

37.    The Sanctuary State Law places aliens at risk of harm, including by being trafficked because California Law Enforcement Agencies cannot engage in the enforcement of 8 U.S.C. § 1324.

38.    The Sanctuary State Law prohibits local law enforcement agencies from asking employers about a person's immigration status under 8 U.S.C. § 1324(a)(3). *See* Cal. Gov. Code § 7284.6(a)(1)(A).

39.    In recent years, Defendant Governor Gavin Newsom has taken a series of substantial steps to incentivize the inflow of illegal immigration into California, and to protect and harbor illegal immigrants, in-

cluding by implementing policies and laws to hire illegal immigrants in jobs in State government.[15]

40.    Defendant Governor Gavin Newsom also has a new program to give illegal immigrants taxpayer funded downpayments of $150,000 to buy homes.[16]  Defendant Newsom is doing more than simply turning a blind eye, he is aggressively pursuing policies with taxpayer funds to incentivize illegal immigrants to relocate to his Sanctuary State.

41.    In 2024, Defendant Governor Gavin Newsom launched a program for California to spend $2.3 million of taxpayer money to support relocating and settling illegal immigrants to rural areas of the State.[17] Defendant Newsom is aggressively pursuing policies to commit taxpayer funds to protecting illegal immigrants.

42.    In August of 2024, Defendant Governor Gavin Newsom launched another program to offer illegal immigrants home mortgage aid to buy homes.[18]  Defendant Newsom is doing more than simply sitting on the sidelines, he is aggressively pursuing policies with taxpayer funds to incentivize illegal immigrants to relocate to his Sanctuary State.

_____

[15] REFORM CALIFORNIA, *California to Give Illegal Immigrants Jobs in State Government*, (June 3, 2024) https://perma.cc/MDB9-DVCL.

[16] Lee Ohanian, *California's One-Party State and Housing Subsidies for Undocumented Migrants*, HOOVER INSTITUTION (Sept. 4, 2024), https://perma.cc/7EAX-V93A.

[17] Willie Rudman, *Supporting California's Rural Communities: $2.3 Million in Grants to Further Expand Immigrant Integration in Rural Regions*, CALIFORNIA BUSINESS AND ECONOMIC DEVELOPMENT (June 28, 2024), https://perma.cc/N2ET-8GPB.

[18] Karen Garcia, *California lawmakers approve bill to extend home mortgage aid to undocumented immigrants*, LOS ANGELES TIMES (Aug. 29, 2024), https://perma.cc/Y5MB-8P4M.

43.    Most recently, Defendant Governor Gavin Newsom established a $25 million taxpayer-funded legal defense fund for illegal immigrants to fight the Federal government's announced crackdown on illegal immigration, which seeks to combat the violent crimes committed against U.S. citizens.[19] Governor Newson also established a fund of $25 million of taxpayer money to fight the Trump Administration's efforts to enforce Federal immigration law.[20]

44.    In response to the November 5th election of Donald J. Trump as President of the United States, and with his nomination of Tom Homan as "Border Czar," Defendant Governor Gavin Newsom convened the State Legislature in a Special Session to develop an "Immigrant Support Plan" designed to counter "Trump deportations."[21]

45.    It was widely reported that "Gavin Newsom's administration is drafting a potential plan to help undocumented immigrants who may be threatened by . . . President Donald Trump's mass deportation threats." *Id.*

46.    According to Politico, a draft of Defendant Gavin Newsom's plan entitled "Immigrant Support Network Concept" proposes the "creation of an Immigrant Support Network comprised of regional 'hubs' to connect at-risk individuals, their families, and communities with com-

---

[19] Ryan Mills, *California Governor Newsom Requests $25 Million from Legislature for Anti-Trump Litigation Fund*, NATIONAL REVIEW (Dec. 3, 2024), https://perma.cc/A76Q-REJV; Taryn Luna, *Newsom approves millions for immigrant aid and lawsuits against Trump*, LA TIMES (Feb. 3, 2025), https://perma.cc/8JQS-GHHE.

[20] *Id.*

[21] Lindsey Holden, *Newsom's team mulls immigrant support plan to counter Trump deportations*, POLITICO (Dec. 24, 2024), https://perma.cc/8NJW-S2FE.

munity systems — such as legal services, schools, labor unions, **local governments**, etc." *Id.* (emphasis added). Clearly, Defendant Gavin Newsom plans to further commandeer local governments to act in violation of U.S. Federal immigration laws in the near future.

47.    In addition, on December 17, 2024, Defendant Attorney General Robert Bonta issued a Press Release advising illegal immigrants of the ways in which his office, and the State, were going to assist in shielding illegal immigrants from "threats of mass detention, arrests, and deportation"[22] and thus from detection and detention by the Federal Government. In that Press Release, Robert Bonta directly advised that "[y]ou have the right to apply for and secure housing without sharing your immigration status," and "[y]ou have the right to an attorney."

48.    In that same Press Release, Defendant Robert Bonta stated, "State and local law enforcement cannot ask for your immigration status" and "State and local law enforcement cannot share your personal information" and "State and local law enforcement cannot assist ICE with immigration enforcement."  Not only do the promises  in the statement constitute violations of U.S. Federal immigration law, but his statement also reveals a systematic program by the State to shield illegal immigrants in response to "the President-elect making clear his intent to move forward an inhumane and destructive immigration agenda once he takes office."  Defendant Robert Bonta's statements make clear that his systematic program to protect illegal immigrants conflicts with the U.S. Federal immigration laws and Federal Government operations.

---

[22] CALIFORNIA ATTORNEY GENERAL'S OFFICE, Press Release, *Attorney General Bonta Reminds California Immigrants of Their Rights and Protections Under the Law* (Dec. 17, 2024), https://perma.cc/74PF-N6WR.

## C. **Federal Authorities**

### 1. **U.S. Immigration Laws**

49.    "The federal power to determine immigration policy is well settled." *Arizona v. United States*, 567 U.S. 387, 395 (2012).

50.    Article I, Section 8, Clause 4 of the U.S. Constitution provides Congress with the "power… To establish an uniform Rule of Naturalization… throughout the United States." U.S. Const. art. I, § 8, cl. 4.

51.    In addition to conferring on Congress the power to determine when foreign nationals may obtain U.S. citizenship, the Naturalization Clause is sometimes viewed as contributing to Congress's power over immigration, including its power to set rules for when aliens may enter or remain in the United States.

52.    In *Arizona*, the Supreme Court confirmed that the Federal Government's "broad, undoubted power" over immigration was partially based "on the national government's constitutional power to 'establish an uniform Rule of Naturalization,' and its inherent power as sovereign to control and conduct relations with foreign nations." 567 U.S. at 394–95 (quoting U.S. Const. art. I, § 8, cl. 4).

53.    In *Harisiades v. Shaughnessy*, 342 U.S. 580 (1952), the Supreme Court observed that "[t]he power of Congress to exclude, admit, or deport aliens flows from sovereignty itself and from the power 'To establish an uniform Rule of Naturalization.'" *Id.* at 599 (quoting U.S. Const. art. I, § 8, cl. 4); *see also INS v. Chadha*, 462 U.S. 919, 940 (1983) ("The plenary authority of Congress over aliens under Art. I, § 8, cl. 4 is not open to question"); *Toll v. Moreno*, 458 U.S. 1, 10 (1982) ("Federal authority to regulate the status of aliens derives from various sources, including the Federal Government's power '[to] establish [a] uniform Rule of Naturalization'…") (quoting U.S. Const. art. I, § 8, cl. 4); *Mathews v.*

20

*Diaz*, 426 U.S. 67, 79–80 (1976) ("In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens.").

54.    Apart from the Naturalization Clause, the Supreme Court has cited Congress's foreign commerce power as a basis for its immigration power. *See Toll*, 458 U.S. at 10 (observing that Congress's immigration power also derives from "its power '[t]o regulate Commerce with foreign Nations,' and its broad authority over foreign affairs") (citing U.S. Const. art. I, § 8, cl. 3); *United States ex rel. Turner v. Williams*, 194 U.S. 279, 290 (1904) (recognizing that an immigration statute was based in part "on the power to regulate commerce with foreign nations, which includes the entrance of ships, the importation of goods, and the bringing of persons into the ports of the United States"); *Edye v. Robertson*, 112 U.S. 580, 600 (1884) ("It is enough to say that, Congress having the power to pass a law regulating immigration as a part of the commerce of this country with foreign nations, we see nothing in the statute by which it has here exercised that power forbidden by any other part of the Constitution.").

55.    Furthermore, the federal government's power over immigration comes from its "inherent power as sovereign to control and conduct relations with foreign nations." *Arizona*, 567 U.S. at 394 (citation omitted).

56.    Conversely, "[u]nder the Constitution the states are granted *no such powers*; they can neither add to nor take from the conditions lawfully imposed by Congress upon admission, naturalization and residence of aliens in the United States or the several states." *DeCanas v. Bica*, 424 U.S. 351, 358 n.6 (1976) (quoting *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, 419 (1948) (emphasis added)).

57.    The Immigration and Nationality Act (INA) specifically per-
mits state and local law enforcement officers to assist federal officials in
enforcing immigration law.[23] No federal law, however, allows state or lo-
cal officials to *subvert* or *ignore* the requirements of the INA. In fact, fed-
eral law imposes significant criminal and civil penalties on those who do
so.

58.    The Sanctuary State Law violates Federal law, including the
INA.

59.    In 1952, Congress enacted the INA.  8 U.S.C. §§ 1101-1537.
Section 274 of the INA, 8 U.S.C. § 1324, was enacted to combat human
smugglers and imposes criminal penalties on anyone who "brings to or
attempts to bring to the United States in any manner whatsoever [an al-
ien] ... at a place other than a designated port of entry"; on anyone who
"transports, or moves or attempts to transport or move ... [an illegal] al-
ien within the United States"; anyone who "conceals, harbors, or shields
from detection" an illegal alien, "or attempts to" do so; or anyone who

---

[23] *See, e.g.*, 8 U.S.C. § 1324(c) (arrests for criminal violation of the INA's
prohibitions against smuggling, transporting, or harboring aliens may be
made not only by federal immigration officers, but also by "all other offic-
ers whose duty it is to enforce criminal laws"); *id.* § 1252c (authorizing
state and local law enforcement to arrest unlawfully present aliens who
have been previously removed and convicted of a felony); *id.* §
1103(a)(10) (empowering DHS to authorize state and local law enforce-
ment officers, when an "actual or imminent mass influx of aliens . . . pre-
sents urgent circumstances requiring an immediate Federal response," to
perform functions of federal immigration officers); and *id.* § 1357(g) (al-
lowing DHS to enter into written agreements with State or local gov-
ernments to assist in "investigation, apprehension, or detention of aliens
in the United States" and also specifically allowing such cooperation
even without written agreements).

"encourages or induces an alien" illegally "to come to, enter, or reside in the United States." 8 U.S.C. 1324(a)(1)(A)..

60.    In part, 8 U.S.C. § 1324 makes it a Federal crime for any person who, "knowing that a person is an alien, brings to or attempts to bring to the United States in any manner whatsoever such person at a place other than a designated port of entry or place other than as designated by the Commissioner, regardless of whether such alien has received prior official authorization to come to, enter, or reside in the United States and regardless of any future official action which may be taken with respect to such alien." 8 U.S.C. § 1324(a)(1)(A)(i).

61.    Section 1324 also makes it a Federal crime for any person to "knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation." 8 U.S.C. § 1324(a)(1)(A)(iii).

62.    And, 8 U.S.C. § 1324 makes it a Federal crime for any person to "knowingly hire[] for employment at least 10 individuals with actual knowledge that the individuals are [illegal] aliens." 8 U.S.C. § 1324(a)(3).

63.    Federal law also provides that "[n]otwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, [DHS] information regarding the citizenship or immigration status, lawful or unlawful, of any individual." 8 U.S.C. § 1373(a).

64.    Similarly, 8 U.S.C. § 1644 provides that "[n]otwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending

to or receiving from [DHS] information regarding the immigration status, lawful or unlawful, of an alien in the United States."

65.    Under 18 U.S.C. § 4, "[w]hoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both." 18 U.S.C. § 4.

66.    Under 18 U.S.C. § 371, "[i]f two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose...each shall be fined under this title or imprisoned not more than five years, or both." 18 U.S.C. § 371.

67.    Under 18 U.S.C. § 372, "[i]f two or more persons...conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States...or impede him in the discharge of his official duties, each of such persons shall be fined under this title or imprisoned not more than six years, or both." 18 U.S.C. § 372.

68.    Additionally, it is a crime carrying a penalty of up to 20 years' imprisonment for anyone who "knowingly ... engages in misleading conduct toward another person, with intent to ... cause or induce any person to ... be absent from an official proceeding to which such person has been summoned by legal process" or to "hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of ... parole[] or release pending judicial proceedings." 18 U.S.C. § 1512(b)(2)(D) and (b)(3).

24

69.    The Tenth Amendment of the U.S. Constitution holds that the Federal Government may not commandeer State or local resources to administer or enforce a Federal regulatory program against the will of the State or local resources.

70.    The Tenth Amendment, however, does not allow a State or its officials or its resources to *violate* Federal laws, including U.S. Federal immigration laws.

71.    The Tenth Amendment also does not allow a State to direct a city or its local officials or its resources to *violate* Federal laws, including U.S. Federal immigration laws.

72.    And while the Tenth Amendment holds that the Federal Government may not commandeer State and local resources against their will to act at the Federal Government's behest, there is nothing, including the Tenth Amendment itself, that *prevents* State or local officials or local resources from *voluntarily cooperating* with the Federal Government in the administration or enforcement of a Federal regulatory program, including U.S. Federal immigration laws. *See Cal. ex. Rel. Becerra v. Sessions*, 284 F. Supp.3d at 1035 ("No cited authority holds that the scope of state sovereignty includes the power to forbid state or local employees from voluntarily complying with a Federal program.").

73.    "Anti-commandeering" under the 10th Amendment is not a barrier to a local jurisdiction's voluntary cooperation with the Federal Government in the administration or enforcement of a Federal regulatory program, including U.S. Federal immigration laws.  *See City of New York v. United States*, 179 F.3d 29, 35 (2d Cir. 1999) (rejecting the city's argument to turn the 10th Amendment "into a sword allowing states and localities to engage in passive resistance that frustrates Federal programs.").

## 2.   Supremacy Clause of the U.S. Constitution

74.     Article VI, Clause 2 of the U.S. Constitution is known as the "Supremacy Clause."   The Supremacy Clause holds that Federal law prevails over any conflicting state laws, including immigration laws.

75.     The Supremacy Clause mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

76.     The Supremacy Clause "prohibit[s] States from interfering with or controlling the operations of the Federal Government." *Geo Group, Inc. v. Newsom*, 50 F.4th 745, 750 (9th Cir. 2022) (quoting *United States v. Washington*, 142 S. Ct. 1976, 1984 (2022)).

77.     The Constitution affords Congress the power to "establish an uniform Rule of Naturalization," and to "dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. Const. art. IV, § 3. The Constitution also affords the President of the United States the authority to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. Additionally, the Federal Government has "inherent power as sovereign to control and conduct relations with foreign nations." *Arizona*, 567 U.S. at 395.

78.     The Federal Government has the preeminent role of regulating aliens entering the United States and within its borders.  U.S. Const. art. I, § 8, cl. 4; U.S. Const. art. I § 8, cl. 3.

79.     In *U.S. v. King County, Washington,*, the Ninth Circuit wrote "In recognition of the Federal government's independence from state control, the intergovernmental immunity doctrine prohibits states from 'interfering with or controlling the operations of the Federal Government.'"

122 F.4th 740, 756 (9th Cir. 2024) (citation omitted).Recent California legislation that sought to interfere with the Federal Government's immigration enforcement efforts was struck down as unconstitutional. "Whether analyzed under intergovernmental immunity or preemption, California cannot exert this level of control over the Federal government's detention operations. AB 32 therefore violates the Supremacy Clause." *Geo Group, Inc.*, 50 F.4th at 751.

80.    "Any state regulation that purports to override the Federal government's decisions about who will carry out Federal functions runs afoul of the Supremacy Clause." *Geo Group*, *Inc.*, 50 F.4th at 750.  By purporting to prevent the City of Huntington Beach from voluntarily cooperating with the Federal Government, and by purporting to prevent the City of Huntington Beach from complying with Federal immigration laws under 8 U.S.C §§ 1324, 1373, and 1644, California's Sanctuary State Law runs afoul of the Supremacy Clause.

81.    A state enactment is unconstitutional if it is an "'obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"  *Toll*, 458 U.S. at 36 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

82.    The United States Government has broad authority to establish immigration laws, which cannot be hindered or obstructed by state law.  *Arizona*, 567 U.S. at 394-95. "Effective immigration law enforcement requires a cooperative effort between all levels of government." *City of New York v. United States*, 179 F.3d at 32-33.

83.    "Power to regulate immigration is unquestionably exclusively a Federal power.'"  *DeCanas*, 424 U.S. at 354 (superseded on other grounds by statute as stated in *Kansas v. Garcia*, 589 U.S. 191, 195 (2020)).

84.    "[T]he Executive [has] very broad discretion to determine [immigration] enforcement priorities." *Arizona Dream Act Coal. v. Brewer*, 855 F.3d 957, 967 (9th Cir. 2017). "Congress expressly charged the Department of Homeland Security with the responsibility of '[e]stablishing national immigration enforcement policies and priorities.'" *Id.* at 967 (quoting 6 U.S.C § 202(5)).  Under President Joe Biden's Administration, the Department of Homeland Security prioritized the arrest and removal of aliens who pose threats to national security, threat to public safety, and threat to border security "or who have unlawfully entered the country only recently." *United States v. Texas*, 599 U.S. 670, 673 (2023).[24]

85.    The U.S. Supreme Court held that Congress intended to preempt the field of immigration.  *Arizona*, 567 U.S. at 399. Field preemption is the intent to displace state law that is so pervasive that Congress left no room for the state to supplement it or that a Federal interest is so dominant that it will be assumed that state enforcement is precluded. *Id.*

86.    In *Valle Del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2019), the Ninth Circuit held that 8 U.S.C. § 1324 preempted state law and that the Federal scheme "reserves prosecutorial power, and thus discretion, over harboring violations to Federal prosecutors." *Id.* at 1027.

87.    There are explicit preemption clauses in 8 U.S.C. §§ 1373 and 1644, stating that "[n]otwithstanding any other provision of Federal, State, or local law," States may not prohibit local government authorities from communicating with DHS "regarding the citizenship or immigration status, lawful or unlawful, of any individual."

---

[24] *See also*, Alejandro N. Mayorkas, *Guidelines for the Enforcement of Civil Immigration Law* (Sept. 30, 2021), https://perma.cc/H9TU-Y3M5.

88.    In an opinion by the California Attorney General in 1992 examining a California city's local sanctuary ordinance, the Attorney General stated that such sanctuary laws are preempted by 8 U.S.C. § 1324. CA Attorney General Opinions, 75 Ops. Cal. Atty. Gen. 270 (Nov. 19, 1992).[25]  The California Attorney General concluded, "Due to the supremacy clause of the United States Constitution, a city may not prohibit its officers and employees from cooperating in their official capacities with Immigration and Naturalization Service investigation, detention, or arrest procedures relating to alleged violations of the civil provisions of the federal immigration laws." *Id.* at *1.

89.    The Attorney General further stated that "[w]hen a peace officer lawfully comes across information in the course of investigating a crime which reasonably leads to the belief that the person arrested is illegally present in this country, neither the state nor Federal Constitution prevents the officer from advising the INS of such information." *Id.* (citing *Gates v. Superior Court*, 193 Cal.App.3d 205, 219 (1987)).

90.    The California Attorney General concluded that the sanctuary city ordinance conflicted with Federal law because it would "undermine the deterrent effect of the criminal or civil penalties contained in the [Immigration and Naturalization] Act."  CA Attorney General Opinions, 75 Ops. Cal. Atty. Gen. at *2; *see Gates v. Superior Court*, 193 Cal.App.3d at 219 ("Where otherwise warranted investigation by local officers leads to evidence of a Federal civil or criminal violation, the local authority has the right to exchange information with Federal authorities; to deny such an exchange is not reasonable and rewards those Fed-

---

[25] 75 Ops. Cal. Att'y Gen. 270 (Nov. 19, 1992), https://perma.cc/MFH9-46F6.

eral violators fortunate enough to be arrested by local, rather than Federal, officials.").

91.    The California Attorney General also stated, "The Immigration and Naturalization Act is the law of this land and it is the 'act of responsible citizenship' and the 'duty' and the right of every citizen to assist in prosecuting and securing punishment for its breach by giving whatever information he or she may have in that regard to aid those who enforce it." CA Attorney General Opinions, 75 Ops. Cal. Atty. Gen. at *2 (quoting 67 Ops. Cal. Atty. Gen. 331, *12-13 (July 24, 1984).[26]

92.    Additionally, the California Attorney General concluded in a 1984 opinion that, while local authorities are under no legally enforceable duty to report to the INS information about persons who entered the country in violation of 8 U.S.C § 1324, they may do so "as a matter of comity and good citizenship." *See* 67 Ops. Cal. Atty. Gen. at *3.[27]

93.    The California Attorney General further stated that "Congress surely did not intend that state and local governments would undermine the deterrent effect of the criminal or civil penalties contained in the [Immigration Control Act]. By giving the impression that illegal aliens may obtain refuge from such penalties in a particular locale, the ordinance creates localized immigration policy and dissipates enforcement of Federal laws." CA Attorney General Opinions, 75 Ops. Cal. Atty. Gen. at *5.

94.    The California Attorney General determined that a sanctuary city ordinance "concerns a subject matter, immigration, wherein Federal power to regulate is exclusive."  CA Attorney General Opinions, 75 Ops.

---

[26] *Id.* at 264.

[27] 67 Ops. Cal. Att'y. Gen. 333 (1984), https://perma.cc/B552-3J94.

Cal. Atty. Gen. at *3 (citing *De Canas v. Bica*, 424 U.S. 351, 354-55 (1975)).  Federal preemption occurs when the local enactment "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. at 67.

95.    The California Attorney General further determined "[T]hat Congress has placed great importance on the immigration detection effort is evidenced by the criminal penalties which have been established for those who assist illegal aliens in escaping detection." CA Attorney General Opinions, 75 Ops. Cal. Atty. Gen. at *5 (citing 8 U.S.C § 1324); *see United States v. Rubio-Gonzales* (5th Cir. 1982) 674 F.2d 1067, 1073; *United States v. Cantu* (5th Cir. 1977) 557 F.2d 1173, 1180; *United States v. Lopez* (2d Cir. 1975) 521 F.2d 437, 444; 67 Ops. Cal. Atty. Gen. at *10, n. 16.

96.    The California Attorney General found the local sanctuary ordinance to be "'an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" CA Attorney General Opinions, 75 Ops. Cal. Atty. Gen. at *6 (quoting *Hines v. Davidowitz*, 312 U.S. at 67). "A *direct* conflict with a Federal or state statute or regulation presents a separate and distinct basis for the preemption of a local ordinance." (CA Attorney General Opinions, 75 Ops. Cal. Atty. Gen. at *6, n. 9 (citations omitted).[28]

97.    The Sanctuary State Law is no different than the city ordinances discussed in the Attorney General's opinions.  The Attorney General correctly concluded that Federal law preempted the local sanctuary ordinances, and that conclusion also applies to the State Sanctuary Law. Congress intended to preempt state law over criminal immigration en-

---

[28] 75 Ops. Cal. Att'y. Gen. 268, (1992), https://perma.cc/MFH9-46F6.

forcement because it "surely did not intend that state and local governments would undermine the deterrent effect of the criminal or civil penalties contained in the [Immigration Control Act]. By giving the impression that illegal aliens may obtain refuge from such penalties in a particular locale, [the Sanctuary State Law] creates localized immigration policy and dissipates enforcement of Federal laws." CA Attorney General Opinions, 75 Ops. Cal. Atty. Gen. at *5.[29]

### D. Obstruction Caused by the Sanctuary State Law

98.    Among many things, the Sanctuary State Law's interference with the City's coordination with the Federal Government in order to "protect" illegal immigrants from the Federal Government's enforcement of the U.S. Federal immigration laws as Defendants Governor Newsom and Attorney General Robert Bonta explain, amounts to "harboring" of illegal aliens by the State of California.

99.    The Ninth Circuit has joined the Third, Fourth, and Eleventh Circuit in concluding that the Federal scheme on harboring under 8 U.S.C. § 1324 is comprehensive and field preemptive. *Valle Del Sol Inc.*, 732 F.3d at 1025-26; *see Lozano v. City of Hazleton*, 724 F.3d 297, 315-16 (3rd Cir. 2013) (joining the Eleventh Circuit in finding that state law proscribing harboring or sheltering aliens infringes upon a "comprehensive statutory scheme") (citing *United States v. Alabama*, 691 F.3d 1269, 1285-87 (11th Cir. 2012)); *United States v. South Carolina*, 906 F. Supp. 2d 463, 468 (D.S.C. 2012), aff'd, 720 F.3d 518 (11th Cir. July 23, 2013).

100.   The "INA provides a comprehensive framework to penalize the transportation, concealment, and inducement of unlawfully present aliens." Under this statutory scheme (8 U.S.C. § 1324(a)(1)(A)(ii)-(iv)),

---

[29] *Id.* at 267.

32

the "Federal government has clearly expressed more than a 'peripheral concern' with the entry, movement, and residence of aliens within the United States and the breadth of these laws illustrates an overwhelmingly dominant Federal interest in the field. *Georgia Latina Alliance for Human Rights v. Governor of GA*, 691 F.3d 1250, 1263-64 (11th Cir. 2012) (*GLAHR*).

101. The Sanctuary State Law prohibits the cooperation between City officials, including the Huntington Beach Police personnel, and the Federal Government on Federal immigration law enforcement.

102. Under the Supremacy Clause, any state law "which interferes with or is contrary to Federal law, must yield." *Gade v. National Solid Wastes Management Association*, 505 U.S. 88, 108 (1992).

103. Similar to Arizona's statute in *Valle Del Sol*, the Sanctuary State Law is preempted because it prohibits Huntington Beach police officers from notifying Federal authorities of any unauthorized aliens in its custody, which violates 8 U.S.C. §§ 1373 and 1644, and it violates 8 U.S.C. § 1324(a)(1)(iii) by requiring Huntington Beach police officers to "knowing[ly] or in reckless disregard" "conceal[], harbor[], or shield[] from detection" aliens in Huntington Beach's City Jail or "any means of transportation."

104. "Given the Federal primacy in the field of enforcing prohibitions on the transportation, harboring, and inducement of unlawfully present aliens, the prospect of fifty individual attempts to regulate immigration-related matters cautions against permitting states to intrude into this area of dominant Federal concern." *Valle Del Sol*, 732 F. 3d at p. 1027 (quoting *GLAHR*, 691 F.3d at 1266).

105. The Sanctuary State Law frustrates the Department of Homeland Security's enforcement priorities to arrest or remove individu-

als who are a threat to national security, public safety, or recently entered the United States unlawfully.  In fact, California Attorney General Bonta has expressed support for DHS's enforcement priorities to arrest or remove individuals who pose a risk to public safety, are terrorists, or recently arrived.

106. City officials, including Huntington Beach Police personnel, cannot obey the Sanctuary State Law without violating 8 U.S.C, § 1324(a)(1)(iii) when they have knowledge or in reckless disregard that an individual in their custody is in violation of law and are prohibited from sharing the information with the Federal authorities.

107. The Orange County Sheriff, Don Barnes, is required to report annually to the Orange County Board of Supervisors on the county's compliance with California Government Code §§ 7283 and 7283.1 ("California's Transparent Review of Unjust Transfers and Holds ("TRUTH") Act).

108. Sheriff Barnes stated that OCSD is prohibited by State law from notifying ICE of the release of inmates with ICE detainers. In 2018, 1,106 inmates who had ICE detainers but did not meet eligibility for notifying ICE were released into the community.  Of those 1,106 inmates, 173 were rearrested "in Orange County for committing 58 different types of crimes, including attempted murder, assault and battery, child molestation, and robbery." (Exhibit "A.")

109. In 2019, OCSD released 1,015 inmates with ICE detainers into the community without notifying ICE of their release because they did not meet state law requirement for notification.  "Of the 1,015 inmates with ICE detainers who were released back into the community, 238 have been rearrested in Orange County for committing new crimes, including assault and battery, rape, and robbery." (Exhibit "B.")

110.  In 2020, OCSD released 168 inmates who had ICE detainers but did not meet the state law's requirement for notifying ICE were released into the community. Out of the 168 inmates, 36 were rearrested for new crimes in Orange County. (Exhibit "C.")

111.  In 2021, OCSD released 199 inmates who had ICE detainers. In compliance with state law, 143 of these 199 inmates met the state's requirement for transfer to ICE's custody. Only 73 out of the 143 individuals were transferred to ICE's custody. The 70 individuals who were eligible for transfer to ICE, but were not, were released into the community. A total of 24 out of the 70 individuals were re-arrested for committing new crimes in Orange County.  (Exhibit "D.")

112.  In 2021, there were 56 inmates who had ICE detainers but did not meet state law requirements for notifying ICE of their release. Of the 56 released into the community, three were rearrested for committing new crimes in Orange County.  (Exhibit "D.")

113.  In 2022, 272 inmates were released from Orange County jail with ICE detainers. OCSD notified ICE of the inmates who were eligible for transfer to ICE's custody. Of the 155 individuals who met the eligibility, only 17 were transferred to ICE's custody. The other 138 individuals were released into the community. A total of 20 of these individuals were rearrested for committing new crimes in Orange County.  (Exhibit "E.")

114.  In 2022, there were 117 inmates who had ICE detainers, but state law prohibited OCSD from notifying ICE. They were released into the community. A total of 13 were rearrested for new crimes in Orange County.  (Exhibit "E.")

115.  In 2023, 547 inmates with ICE detainers were released from Orange County Jail.  OCSD notified ICE of the inmates who were eligible for transfer to ICE's custody under state law.  About 81 of those in-

Case 8:25-cv-00026-SSS-PD     Document 15     Filed 03/05/25     Page 36 of 64     Page ID
#:169

mates eligible for notification and transfer to ICE's custody were not transferred and were instead released into the community. A total of 40 of those individuals were rearrested for committing new crimes in Orange County. (Exhibit "F.")

116. In 2023, there were 245 inmates with ICE detainers who were not eligible for notifying ICE and were released into the community. Out of them, 27 were rearrested for new crimes in Orange County. These crimes were robbery, carjacking, kidnapping, parole or probation violation, sales or transport of narcotics, domestic violence, assault with a deadly weapon, and felony driving under the influence. (Exhibit "F."[30])

117. Huntington Beach police officers cannot comply with both State and Federal laws while carrying out their duty. For example, for an unauthorized alien arrested for allegedly committing petty theft and placed in city jail, the Sanctuary State Law prohibits Huntington Beach Police officers from sharing information with ICE. Even if ICE requests information about the individual, Huntington Beach cannot provide information about the individual, and thus, the City would be concealing, harboring or shielding from detection an unauthorized alien in its "building" under 8 U.S.C. § 1324(a)(1)(iii). And if ICE arrives at the jail facility, Huntington Beach authority must refuse assumption of custody, as mandated by the Sanctuary State Law. The Sanctuary State Law puts Huntington Beach in violation of 8 U.S.C. § 1324(a)(1)(iii).

---

[30] During his presentation to the Orange County Board of Supervisors, Sheriff Barnes reported that 27 inmates who were released into the community committed new crimes. Sheriff Barnes specified the types of crimes that these 27 individuals committed. However, these crimes were not specified in the staff report (Exhibit "F"). *See* https://ocgov.granicus.com/player/clip/5109?view_id=8&redirect=true

36

118.  Compliance with 8 U.S.C. § 1324(a)(1)(ii) is vital to stopping human smuggling.  The Sanctuary State Law mandates that law enforcement not cooperate with Federal authorities over immigration matters, including joining a task force.

119.  Huntington Beach City officials, including Huntington Beach Police Department personnel, are prohibited from cooperating, detaining, or investigating whether there is a potential for human trafficking.  City officials, including Huntington Beach Police Department personnel, are prohibited from informing the Federal Government about an alien engaged in smuggling individuals into the United States, if that alien is not otherwise engaged in human trafficking for forced labor or sex services.

120.  Under the Sanctuary State Law, Huntington Beach Police Officers are prohibited from asking about the immigration status of aliens working for an employer.  Cal. Gov. Code § 7284.6 (a)(1)(A).

E.   **Harm to the Plaintiffs Caused by the Sanctuary State Law**

121.  The Sanctuary State Law harms the Plaintiffs.

122.  It incentivizes increased illegal immigration and the presence of higher numbers of illegal aliens within the City.

123.  The City of Huntington Beach has proprietary interests that are harmed by the presence of increased numbers of illegal aliens.

124.  For example, the City has proprietary economic interests that are harmed by the increased number of illegal aliens in the City caused by the Sanctuary State Law. These harms include, among other things, 1) decreased revenue caused by illegal alien residents and workers who do not pay taxes; and 2) lower property tax revenue from decreased property values.

125.  Illegal aliens also harm the City's proprietary interests by increasing the City's expenditures for, among other things, the following: 1) criminal enforcement; 2) enforcement of labor and health laws and regulations; and 3) increased expenditure of public funds to provide public services to illegal aliens.

126.  The Sanctuary State Law also harms the City by interfering with its proprietary interest in regulating within its jurisdiction, including by conducting law enforcement activities in conformity with the requirements of Federal law.

127.  The Sanctuary State Law also harms the City and each of the individually named Plaintiffs by subjecting the City's officers and employees, including the named individual Plaintiffs, to a genuine risk of prosecution under State law for engaging in conduct that is required by, or protected by, Federal law and the U.S. Constitution.

128.  The genuine risk of prosecution under the Sanctuary State Law also harms the City's propriety interests because of the fiscal cost of those prosecutions, which will cause the City to incur significant costs for defending itself and its officers and employees.

129.  The Sanctuary State Law also harms the individual Plaintiffs by infringing their Free Speech rights under the First Amendment to the U.S. Constitution for speech that is specifically protected by 8 U.S.C. §§ 1373 and 1644.

130.  The Sanctuary State Law also harms the individual Plaintiffs by restricting them from engaging in conduct that is protected under federal law, such as under 8 U.S.C. §§ 1373 and 1644.

# FIRST CAUSE OF ACTION

## VIOLATION OF THE SUPREMECY CLAUSE

## ARTICLE VI, CLAUSE 2 OF THE U.S. CONSTITUTION

### 8 U.S.C. §§ 1324, 1373, and 1644

### (Against All Defendants)

131.  Plaintiffs hereby incorporate the allegations made in each preceding paragraph of this Complaint as if fully set forth herein.

132.  The Sanctuary State Law is unconstitutional. *See* U.S. Const. art. VI, cl. 2; U.S. Const. art. I, § 8, cl. 4; U.S. Const. amend. I; 8 U.S.C. §§ 1324, 1325, 1373, and 1644; 18 U.S.C. §§ 4, 371, 372, and 1512; *see also* Cal. Const. art. XI, § 5; Cal. Const. art. XX, § 3.

133.  The Supremacy Clause mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

134.  The Supremacy Clause "prohibit[s] States from interfering with or controlling the operations of the Federal Government." *Geo Group, Inc.,* 50 F.4th at 750 (quoting *United States v. Washington*, 142 S. Ct. at 1984).

135.  The Sanctuary State Law violates the Supremacy Clause precisely because it interferes with, in fact it obstructs, the Federal Government's efforts to coordinate to enforce U.S. Federal immigration laws, including but not limited to 8 U.S.C. §§ 1324, 1373, and 1644.  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1,7285.2.

136.  Under the Sanctuary State Law, City officials, including Huntington Beach Police personnel, are mandated to "conceal, harbor, or shield from detection" any alien in their custody in violation of 8 U.S.C. §

1324(a)(1)(iii).  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

137.  City officials, including Huntington Beach Police personnel, are unable to fulfill their duty to investigate or detain individuals having committed crimes without violating the Sanctuary State Law.  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.)

138.  The Sanctuary State Law prohibits local law enforcement officers from cooperating with the Federal Government in criminal immigration investigation.  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

139.  The Sanctuary State Law bars local jurisdictions from complying with 8 U.S.C. §§ 1324, 1373, and 1644, or participating in a joint task force.  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

140.  The Sanctuary State Law restricts cooperation between local law enforcement agencies and the Federal Government.  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.)

141.  The Sanctuary State Law's interference with the City's coordination with the Federal Government in order to "protect" illegal immigrants from the Federal Government's enforcement of the U.S. Federal immigration laws as Defendants Governor Newsom and Attorney General Robert Bonta stated, amounts to "harboring" of illegal aliens by the State of California.

142.  City officials, including Huntington Beach Police personnel, are unable to stop crime before it occurs. Instead, they must sit idly by and wait for a human smuggling incident to become a human trafficking situation in order to intervene and comply with California Government Code §§ 7282.5, 7284.4, 7284.6.

143.  The Sanctuary State Law is an obstacle to the City's ability to comply with U.S. Federal immigration laws.  It prevents City officials, including Huntington Beach Police personnel, from full, effective law enforcement and obstructs the City's ability to coordinate and cooperate with Federal law enforcement agencies.  As U.S. Federal immigration law, according to the Supremacy Clause, is supreme, the Sanctuary State Law is an unconstitutional barrier to the City's effective law enforcement efforts.

144.  Governor Newsom and Attorney General Bonta have publicly expressed on multiple occasions their intent to enforce the Sanctuary State Laws and they have a direct connection to such enforcement by virtue of the offices that they hold. Governor Newsom's and Attorney General Bonta's violations of the Supremacy Clause are ongoing. Their enforcement of the Sanctuary State Law causes ongoing harm to the Plaintiffs, and prospective injunctive relief will redress that harm.

145.  Plaintiffs have no adequate remedy at law.  Absent relief, Defendants' actions continue to harm and threaten to harm Plaintiffs by impairing enjoyment of this right.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE NATURALIZATION CLAUSE

## ARTICLE I, SECTION 8, CLAUSE 4 OF THE U.S. CONSTITUTION

## 8 U.S.C. § 1324

## (Against All Defendants)

146.  Plaintiffs hereby incorporate the allegations made in each preceding paragraph of this Complaint as if fully set forth herein.

147.  The Sanctuary State Law is unconstitutional.  *See* U.S. Const. art. VI, cl. 2; U.S. Const. art. I, § 8, cl. 4; U.S. Const. amend. I; 8 U.S.C.

§§ 1324, 1325, 1373, and 1644; 18 U.S.C. §§ 4, 371, 372, and 1512; *see also* Cal. Const. art. XI, § 5; Cal. Const. art. XX, § 3.

148.  Article I, Section 8, Clause 4 of the U.S. Constitution provides Congress with the "power... To establish an uniform Rule of Naturalization... throughout the United States." U.S. Const. art. I, § 8, cl. 4.

149.  In addition to conferring Congress with power to determine when foreign nationals may obtain U.S. citizenship, the Naturalization Clause is viewed as contributing to Congress's power over immigration, including its power to set rules for when aliens may enter or remain in the United States.

150.  In *Arizona v. United States*, 567 U.S. at 387, the Supreme Court declared that the Federal Government's "broad, undoubted power" over immigration was partially based "on the national government's constitutional power to 'establish an uniform Rule of Naturalization,' and its inherent power as sovereign to control and conduct relations with foreign nations." *Id.* at 394–95 (quoting U.S. Const. art. I, § 8, cl. 4).

151.  The Sanctuary State Law violates the City's right to fully control its own Police Department and fully and effectively engage in law enforcement. Moreover, neither the State, nor its laws, may prevent the City of Huntington Beach from honoring, following, and/or complying with State and all Federal laws, including Federal laws on immigration, which is the supreme law of the land on immigration.

152.  The Sanctuary State Law violates the City's right to fully control its own Police Department and fully and effectively engage in law enforcement. Specifically, California Government Code §§ 7282.5, 7284.4, 7284.6, 7285.1, and 7285.2 prohibit local law enforcement officers from cooperating with the Federal Government in criminal immigration investigation.

153.  Under the Sanctuary State Law, City officials, including Huntington Beach Police personnel, are mandated to "conceal, harbor, or shield from detection" any alien in their custody in violation of 8 U.S.C.§ 1324(a)(1)(iii). *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

154.  The Sanctuary State Law bars local jurisdiction from complying with 8 U.S.C. §§ 1324, 1373, and 1644 or participating in a joint task force.  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

155.  California Government Code §§ 7284.4 and 7282.5 restrict cooperation between local law enforcement agencies and the Federal Government.

156.  The Sanctuary State Law allows for smugglers to transport individuals into the United States in violation of 8 U.S.C. § 1324 for financial gain.

157.  The Sanctuary State Law places aliens at risk of harm or being trafficked because California Law Enforcement Agencies cannot engage in the enforcement of 8 U.S.C. § 1324.

158.  The Sanctuary State Law prohibits local law enforcement agencies from asking employers about a person's immigration status under 8 U.S.C. § 1324(a)(3). Cal. Gov. Code § 7284.6(a)(1)(A).

159.  In recent years, Defendant Governor Gavin Newsom has taken a series of substantial steps to incentivize the inflow of illegal immigration into California, and to protect and harbor illegal immigrants, including by implementing policies and laws to: hire illegal immigrants in jobs in State government, give illegal immigrants taxpayer funded downpayments of $150,000 to buy homes, spend $2.3 million of taxpayer money to support the relocating and settling of illegal immigrants in rural areas of the State, give illegal immigrants home mortgage aid to buy

homes, newly allocating $25 million in taxpayer-funded legal defense fund for illegal immigrants to fight the Federal government's announced crackdown on illegal immigration, which seeks to combat the violent crimes committed against U.S. citizens, and the list goes on.

160. In addition, on December 17, 2024, Defendant Attorney General Robert Bonta issued a Press Release advising illegal immigrants on the ways in which his office, and the State, were going to assist in shielding illegal immigrants from "threats of mass detention, arrests, and deportation" and thus from detection and detention by the Federal Government. In that press release, Robert Bonta directly advised that "[y]ou have the right to apply for and secure housing without sharing your immigration status," and "[y]ou have the right to an attorney."

161. Defendant Robert Bonta has stated, "State and local law enforcement cannot ask for your immigration status" and "State and local law enforcement cannot share your personal information" and "State and local law enforcement cannot assist ICE with immigration enforcement." Not only do the promises in his statement constitute violations of Federal immigration law, his statement also reveals a systematic program by the State to shield illegal immigrants in response to "the President-elect making clear his intent to move forward an inhumane and destructive immigration agenda once he takes office." Defendant Robert Bonta's statements make clear that his systematic program to protect illegal immigrants conflicts with U.S. Federal immigration laws and Federal Government operations.

162. "Effective immigration law enforcement requires a cooperative effort between all levels of government." *City of New York v. United States*, 179 F.3d at 32-33.

163.  The Sanctuary State Law violates Article I, Section 8, Clause 4 of the U.S. Constitution by actively obstructing the authority of the Federal Government and obstructing the City's ability to employ all laws available, including U.S. Federal immigration laws, to combat crime and ensure public safety by coordinating with the Federal Government to deal with certain individuals committing crimes and who are subject to U.S. Federal immigration laws.

164.  Governor Newsom and Attorney General Bonta have publicly expressed on multiple occasions their intent to enforce the Sanctuary State Laws and they have a direct connection to such enforcement by virtue of the offices that they hold. Governor Newsom's and Attorney General Bonta's violations of the Naturalization Clause are ongoing. Their enforcement of the Sanctuary State Law causes ongoing harm to the Plaintiffs, and prospective injunctive relief will redress that harm.

165.  Plaintiffs have no adequate remedy at law.  Absent relief, Defendants' actions continue to harm and threaten to harm Plaintiffs by impairing enjoyment of this right.

## THIRD CAUSE OF ACTION

### VIOLATION OF U.S. FEDERAL IMMIGRATION LAWS

### 8 U.S.C. § 1324

### (Against All Defendants)

166.  Plaintiffs hereby incorporate the allegations made in each preceding paragraph of this Complaint as if fully set forth herein.

167.  The Sanctuary State Law is unconstitutional.  *See* U.S. Const. art. VI, cl. 2; U.S. Const. art. I, § 8, cl. 4; U.S. Const. amend. I; 8 U.S.C. §§ 1324, 1325, 1373, and 1644; 18 U.S.C. §§ 4, 371, 372, and 1512; *see also* Cal. Const. art. XI, § 5; Cal. Const. art. XX, § 3.

168.  In 1952, Congress enacted the INA.  8 U.S.C. §§ 1101-1537. Section 274 of the INA, 8 U.S.C. § 1324, was enacted to combat human smugglers and imposes criminal penalties on anyone who "brings to or attempts to bring to the United States in any manner whatsoever [an alien] ... at a place other than a designated port of entry"; on anyone who "transports, or moves or attempts to transport or move ... [an illegal] alien within the United States"; anyone who "conceals, harbors, or shields from detection" an illegal alien, "or attempts to" do so; or anyone who "encourages or induces an alien" illegally "to come to, enter, or reside in the United States." 8 U.S.C. 1324(a)(1)(A).

169.  And, 8 U.S.C. § 1324 makes it a Federal crime for any person to "knowingly hire[] for employment at least 10 individuals with actual knowledge that the individuals are aliens described in subparagraph (B)." 8 U.S.C. § 1324(a)(3)(A).

170.  Under the Sanctuary State Law, City officials, including Huntington Beach Police personnel, are mandated to "conceal, harbor, or shield from detection" any alien in their custody in violation of 8 U.S.C. § 1324(a)(1)(iii).  *See* Cal. Gov. Code §§ 7284.4, 7282.5, 7284.6, 7285.1, 7285.2.

171.  City officials, including Huntington Beach Police personnel, are unable to fulfill their duty to investigate or detain individuals having committed crimes without violating the Sanctuary State Law. *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

172.  The Sanctuary State Law prohibits local law enforcement officers from cooperating with the Federal Government in criminal immigration investigations. *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

173.  The Sanctuary State Law bars local jurisdictions from complying with 8 U.S.C. §§ 1324, 1373, and 1644 or participating in a joint task force.  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

174.  The Sanctuary State Law restricts cooperation between local law enforcement agencies and the Federal Government.  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

175.  The Sanctuary State Law's interference with the City's coordination with the Federal Government in order to "protect" illegal immigrants from the Federal Government's enforcement of the U.S. Federal immigration laws, as Defendants Governor Newsom and Attorney General Robert Bonta have declared, is "harboring" of illegal aliens by the State of California.

176.  City officials, including Huntington Beach Police personnel, are unable to stop crime before it occurs. Instead, they must sit idly by and wait for a human smuggling incident to become a human trafficking situation in order to intervene and comply with California Government Code §§ 7282.5, 7284.4, 7284.6.

177.  The Sanctuary State Law is an obstacle to the City's ability to comply with U.S. Federal immigration laws.  It prevents City officials, including Huntington Beach Police personnel, from full, effective law enforcement and obstructs the City's ability to coordinate and cooperate with Federal law enforcement agencies. Pursuant to the Supremacy Clause, U.S. Federal immigration law is supreme, and the Sanctuary State Law is an unconstitutional barrier to the City's effective law enforcement efforts.

178.  Governor Newsom and Attorney General Bonta have publicly expressed on multiple occasions their intent to enforce the Sanctuary State Laws and they have a direct connection to such enforcement by vir-

tue of the offices that they hold. Governor Newsom's and Attorney General Bonta's violations of 8 U.S.C. § 1324 are ongoing. Their enforcement of the Sanctuary State Law causes ongoing harm to the Plaintiffs, and prospective injunctive relief will redress that harm.

179.  Plaintiffs have no adequate remedy at law.  Absent relief, Defendants' actions continue to harm and threaten to harm Plaintiffs by impairing enjoyment of this right.

### FOURTH CAUSE OF ACTION

### VIOLATION OF U.S. FEDERAL IMMIGRATION LAWS

### 8 U.S.C. §§ 1373 and 1644

### (Against All Defendants)

180.  Plaintiffs hereby incorporate the allegations made in each preceding paragraph of this Complaint as if fully set forth herein.

181.  The Sanctuary State Law is unconstitutional.  *See* U.S. Const. art. VI, cl. 2; U.S. Const. art. I, § 8, cl. 4; U.S. Const. amend. I; 8 U.S.C. §§ 1324, 1325, 1373, and 1644; 18 U.S.C. §§ 4, 371, 372, and 1512; *see also* Cal. Const. art. XI, § 5; Cal. Const. art. XX, § 3.

182.  Title 8, U.S.C. § 1373(a) provides, "Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, ... [DHS] information regarding the citizenship or immigration status, lawful or unlawful, of any individual."

183.  Similarly, 8 U.S.C. § 1644 states that "Notwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from ... [DHS] information regarding the immigration status, lawful or unlawful, of an alien in the United States."

48

184.  The Sanctuary State Law "prohibit[s]" and "restrict[s]" the Plaintiffs and the City's employees "from sending to, or receiving from," DHS "information regarding the immigration status" of aliens. 8 U.S.C. § 1373 and 1644. The Sanctuary State Law, therefore, violates federal statutes containing specific preemption clauses.

185.  Under the Sanctuary State Law, City officials, including Huntington Beach Police personnel, are mandated to "conceal, harbor, or shield from detection" any alien in their custody in violation of 8 U.S.C.§ 1324(a)(1)(iii).  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

186.  The Sanctuary State Law prohibits local law enforcement officers from cooperating with the Federal Government in criminal immigration investigation.  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

187.  The Sanctuary State Law's interference with the City's coordination with the Federal Government in order to "protect" illegal immigrants from the Federal Government's enforcement of the Federal immigration laws, as Defendants Governor Newsom and Attorney General Robert Bonta have declared, is "harboring" of illegal aliens by the State of California.

188.  The Sanctuary State Law is an obstacle to the City's ability to comply with U.S. Federal immigration laws.  It prevents City officials, including Huntington Beach Police personnel, from full, effective law enforcement and obstructs the City's ability to coordinate and cooperate with Federal law enforcement agencies. Pursuant to the Supremacy Clause, U.S. Federal immigration law is supreme, and the Sanctuary State Law is an unconstitutional barrier to the City's effective law enforcement efforts.

189.  Governor Newsom and Attorney General Bonta have publicly expressed on multiple occasions their intent to enforce the Sanctuary State Laws and they have a direct connection to such enforcement by virtue of the offices that they hold. Governor Newsom's and Attorney General Bonta's violations of 8 U.S.C. §§ 1373 and 1644 are ongoing. Their enforcement of the Sanctuary State Law causes ongoing harm to the Plaintiffs, and prospective injunctive relief will redress that harm.

190.  Plaintiffs have no adequate remedy at law.  Absent relief, Defendants' actions continue to harm and threaten to harm Plaintiffs by impairing enjoyment of this right.

## FIFTH CAUSE OF ACTION
## VIOLATION OF U.S. FEDERAL CRIMINAL LAWS
### 18 U.S.C. §§ 4, 371, 372, and 1512
### (Against All Defendants)

191.  Plaintiffs hereby incorporate the allegations made in each preceding paragraph of this Complaint as if fully set forth herein.

192.  The Sanctuary State Law is unconstitutional.  *See* U.S. Const. art. VI, cl. 2; U.S. Const. art. I, § 8, cl. 4; U.S. Const. amend. I; 8 U.S.C. §§ 1324, 1325, 1373, and 1644; 18 U.S.C. §§ 4, 371, 372, and 1512; *see also* Cal. Const. art. XI, § 5; Cal. Const. art. XX, § 3.

193.  The Sanctuary State Law requires the Plaintiffs to commit federal crimes under 18 U.S.C. § 4, which provides that "[w]hoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both." 18 U.S.C. § 4.

194.  The Sanctuary State Law requires the plaintiffs to commit federal crimes under 18 U.S.C. § 4 because it forbids the Plaintiffs from disclosing immigration-related felonies committed by aliens to federal authorities. Some examples of such felonies include: 1) improper entry and re-entry into the United States, 8 U.S.C. §§ 1325(a) and 1326; establishing "a commercial enterprise for the purpose of evading any provision of the immigration laws," 8 U.S.C. § 1325(d); and bringing in and harboring aliens, 8 U.S.C. § 1324.

195.  The Sanctuary State Law also requires the Plaintiffs to commit federal crimes under 8 U.S.C. § 371, which provides that "[i]f two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose…each shall be fined under this title or imprisoned not more than five years, or both." *See United States v. Tuohey*, 867 F.2d 534, 536 (9th Cir. 1989) ("conspiracy to defraud the United States is not limited to common-law fraud, but reaches 'any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of government.' (citation omitted)").

196.  As explained in this Complaint, the Sanctuary State Laws require the Plaintiffs and City employees to commit a number of offenses against the United States, including under 8 U.S.C. 1324 and 18 U.S.C. §§ 4, 372, and 1512.

197.  The Sanctuary State Law also requires the Plaintiffs to commit federal crimes under 8 U.S.C. § 372, which provides that "[i]f two or more persons…conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States…or impede him in the discharge of his official

duties, each of such persons shall be fined under this title or imprisoned not more than six years, or both."

198. Federal immigration officials hold offices under the United States. The Sanctuary State Law requires the Plaintiffs and City employees to impede federal immigration officials from discharging their official duties. The Sanctuary State Law, therefore, requires the Plaintiffs and City employees to violate 18 U.S.C. § 372.

199. The Sanctuary State Law also requires the Plaintiffs to commit federal crimes under 18 U.S.C. § 1512(b)(2)(D) and (b)(3)18 U.S.C. § 4, which make it a crime carrying a penalty of up to 20 years' imprisonment for anyone who "knowingly ... engages in misleading conduct toward another person, with intent to ... cause or induce any person to ... be absent from an official proceeding to which such person has been summoned by legal process" or to "hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of ... parole[] or release pending judicial proceedings."

200. The Sanctuary State Law requires the Plaintiffs and City employees to engage in misleading conduct to help aliens absent themselves from administrative immigration court proceedings, which are official proceedings to which aliens are summoned. The Sanctuary State laws also require the Plaintiffs and City employees to hinder, delay, or prevent communications between DHS law enforcement officers and aliens related to the aliens' violations of Federal law. The Sanctuary State Law, therefore, requires the Plaintiffs and City employees to violate 18 U.S.C. § 1512.

201.  Additionally, by enforcing the Sanctuary State Law, Governor Newsom and Attorney General Bonta are violating 18 U.S.C. §§ 4, 371, 372, and 1512.

202.  Under the Sanctuary State Law, City officials, including Huntington Beach Police personnel, are mandated to "conceal, harbor, or shield from detection" any alien in their custody in violation of 8 U.S.C. § 1324(a)(1)(iii).  *See* Cal. Gov. Code §§ 7282.5, 7284.6, 7284.4, 7285.1, 7285.2.

203.  City officials, including Huntington Beach Police personnel, are unable to fulfill their duty to investigate or detain individuals having committed crimes without violating the Sanctuary State Law.  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

204.  The Sanctuary State Law prohibits local law enforcement officers from cooperating with the Federal Government in a criminal immigration investigation.  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

205.  The Sanctuary State Law bars local jurisdictions from complying with 8 U.S. Code, Section 1324 or participate in a joint task force. *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

206.  The Sanctuary State Law restricts cooperation between local law enforcement agencies and the Federal Government.  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

207.  The Sanctuary State Law's interference with the Plaintiffs' coordination with the Federal Government in order to "protect" illegal immigrants from the Federal Government's enforcement of the U.S. Federal immigration laws as Defendants Governor Newsom and Attorney General Robert Bonta have declared is tantamount to "harboring" of illegal aliens by the State of California.

208. City officials, including Huntington Beach Police personnel, are unable to stop crime before it occurs. Instead, they must sit idly by and wait for a human smuggling incident to become a human trafficking situation in order to intervene and comply with California Government Code §§ 7282.5, 7284.4, 7284.6.

209. The Sanctuary State Law is an obstacle to the City's ability to comply with U.S. Federal immigration laws. It prevents City officials, including Huntington Beach Police personnel, from full, effective law enforcement and obstructs the City's ability to coordinate and cooperate with Federal law enforcement agencies. Pursuant to the Supremacy Clause, U.S. Federal immigration law is supreme, and the Sanctuary State Law is an unconstitutional barrier to the City's effective law enforcement efforts.

210. Governor Newsom and Attorney General Bonta have publicly expressed on multiple occasions their intent to enforce the Sanctuary State Laws and they have a direct connection to such enforcement by virtue of the offices that they hold. Governor Newsom's and Attorney General Bonta's violations of 18 U.S.C. §§ 4, 371, 372, and 1512 are ongoing. Their enforcement of the Sanctuary State Law causes ongoing harm to the Plaintiffs, and prospective injunctive relief will redress that harm.

211. Plaintiffs have no adequate remedy at law. Absent relief, Defendants' actions continue to harm and threaten to harm Plaintiffs by impairing enjoyment of this right.

# SIXTH CAUSE OF ACTION

## AIDING AND ABETTING, ACCESSORY AFTER THE FACT
## VIOLATION OF CALIFORNIA PENAL CODE §§ 31, 32
### (Against All Defendants)

212. Plaintiffs hereby incorporate the allegations made in each preceding paragraph of this Complaint as if fully set forth herein.

213. California Penal Code § 31 provides, "All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission, and all persons counseling, advising, or encouraging children under the age of fourteen years, or persons who are mentally incapacitated, to commit any crime, or who, by fraud, contrivance, or force, occasion the drunkenness of another for the purpose of causing him to commit any crime, or who, by threats, menaces, command, or coercion, compel another to commit any crime, are principals in any crime so committed."

214. California Penal Code § 32 provides: "Every person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony."

215. Under the Sanctuary State Law, City officials, including Huntington Beach Police personnel, are mandated to "conceal, harbor, or shield from detection" any alien in their custody in violation of 8 U.S.C. §1324(a)(1)(iii). *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

216.  Additionally, the Sanctuary State Law requires the Plaintiffs and City employees to encourage and conceal the commission of felonies by aliens, including under 8 U.S.C. §§ 1325(a), (d) and 1326.

217.  City officials, including Huntington Beach Police personnel, are unable to fulfill their duty to investigate or detain individuals having committed crimes without violating the Sanctuary State Law.  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

218.  The Sanctuary State Law prohibits local law enforcement officers from cooperating with the Federal Government in criminal immigration investigation.  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

219.  The Sanctuary State Law bars local jurisdictions from complying with 8 U.S.C. § 1324 or participate in a joint task force.  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

220.  The Sanctuary State Law restricts cooperation between local law enforcement agencies and the Federal Government.  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

221.  The Sanctuary State Law's interference with the City's coordination with the Federal Government in order to "protect" illegal immigrants from the Federal Government's enforcement of the U.S. Federal immigration laws as Defendants Governor Newsom and Attorney General Robert Bonta have declared is "harboring" of illegal aliens by the State of California and amounts to a violation of California Penal Code §§ 31 and 32.

222. The Sanctuary State Law causes City officials, including Huntington Beach Police personnel, to violate California Penal Code §§ 31 and 32 by aiding and abetting the commission of a crime and accessory after the fact in the commission of a crime, i.e., the violation of U.S.

Federal immigration laws, including but not limited to 8 U.S.C. §§ 1324, 1325, and 1326.

223.  Plaintiffs have no adequate remedy at law.  Absent relief, Defendants' actions continue to harm and threaten to harm Plaintiffs by impairing enjoyment of this right.

## SEVENTH CAUSE OF ACTION
## VIOLATION OF OATH OF OFFICE
## ARTICLE XX, § 3 OF THE CALIFORNIA CONSTITUTION
### (Against All Defendants)

224.  Plaintiffs hereby incorporate the allegations made in each preceding paragraph of this Complaint as if fully set forth herein.

225.  The Sanctuary State Law is unconstitutional.  *See* U.S. Const. art. VI, cl. 2; U.S. Const. art. I, § 8, cl. 4; U.S. Const. amend. I; 8 U.S.C. §§ 1324, 1325, 1373, and 1644; 18 U.S.C. §§ 4, 371, 372, and 1512; *see also* Cal. Const. art. XI, § 5; Cal. Const. art. XX, § 3.

226.  Article XX, § 3 of the California Constitution provides the Oath of Office that certain City officials, including elected officials and police officers, are required to take in order to be fully vested with authority for the office they are to assume.  Cal. Const. art. XX, § 3.

227.  The Constitutionally required Oath of Office states "I, .............., do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the Constitution of the State of California against all enemies, foreign and domestic; that I will bear true faith and allegiance to the Constitution of the United States and the Constitution of the State of California; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties upon which I am about to enter."

228.  The Sanctuary State Law forces the City's officials, including Huntington Beach Police personnel, to violate their legal obligations and their Oaths of Office to the U.S Constitution, the California Constitution, and U.S. Federal immigration laws in violation of the California Constitution's Oath of Office.

229.  Under the Sanctuary State Law, City officials, including Huntington Beach Police personnel, are mandated to "conceal, harbor, or shield from detection" any alien in their custody in violation of 8 U.S.C. § 1324(a)(1)(iii).  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

230.  City officials, including Huntington Beach Police personnel, are unable to fulfill their duty to investigate or detain individuals having committed crimes without violating the Sanctuary State Law.  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

231.  The Sanctuary State Law prohibits local law enforcement officers from cooperating with the Federal Government in criminal immigration investigation.  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

232.  The Sanctuary State Law bars local jurisdictions from complying with 8 U.S.C. § 1324 or participate in a joint task force.  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

233.  The Sanctuary State Law restricts cooperation between local law enforcement agencies and the Federal Government.  *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

234.  The Sanctuary State Law's interference with the City's coordination with the Federal Government in order to "protect" illegal immigrants from the Federal Government's enforcement of the U.S. Federal immigration laws causes City officials, including Huntington Beach Po-

lice personnel, to violate the terms of their Oath of Office required by the California Constitution, i.e., that they swear to "support and defend the Constitution of the United States and the Constitution of the State of California against all enemies, foreign and domestic; that [they] will bear true faith and allegiance to the Constitution of the United States and the Constitution of the State of California; that [they] take this obligation freely, without any mental reservation or purpose of evasion; and that [they] will well and faithfully discharge the duties upon which [they] a[re] about to enter," causing violations of U.S. Federal immigration laws, including but not limited to 8 U.S.C. §§ 1324 and 1325.

235.  Plaintiffs have no adequate remedy at law.  Absent relief, Defendants' actions continue to harm and threaten to harm Plaintiffs by impairing enjoyment of this right.

## EIGHTH CAUSE OF ACTION
### VIOLATION OF CIVIL RIGHTS
### 42 U.S.C. § 1983

**(Against Defendants Governor Newsom and Attorney General Bonta)**

236.  Plaintiffs hereby incorporate the allegations made in each preceding paragraph of this Complaint as if fully set forth herein.

237.  Under 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...."

238.  The Sanctuary State Law compels the speech of the Plaintiffs and the City's employees. *See* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6,

7285.1, 7285.2. This deprives the Plaintiffs of their free speech rights under the First Amendment of the Constitution.

239. The Sanctuary State Law restricts the Plaintiffs and the City's employees, who are "government entit[ies] or official[s]," "from sending to, or receiving from, ... [DHS] information regarding the citizenship or immigration status, lawful or unlawful, of any individual." 8 U.S.C. §§ 1373 and 1644; *see also* Cal. Gov. Code §§ 7282.5, 7284.4, 7284.6, 7285.1, 7285.2.

240. Because Federal law protects the Plaintiffs' right and privilege of communicating with DHS regarding the immigration status of aliens, the Sanctuary State Law deprives the Plaintiffs of their rights and privileges under Sections 1373 and 1644.

241. Governor Newsom and Attorney General Bonta have publicly expressed on multiple occasions their intent to enforce the Sanctuary State Laws and they have a direct connection to such enforcement by virtue of the offices that they hold. Governor Newsom's and Attorney General Bonta's violations of the First Amendment and 8 U.S.C. §§ 1373 and 1644 are ongoing. Their enforcement of the Sanctuary State Law causes ongoing harm to the Plaintiffs by depriving them of their rights and privileges under the U.S. Constitution and Federal law. Prospective injunctive relief will redress that harm.

242. The Plaintiffs have no adequate remedy at law. Absent relief, Defendants' actions continue to harm and threaten to harm Plaintiffs by impairing enjoyment of this right.

# NINTH CAUSE OF ACTION

## NON-STATUTORY CAUSE OF ACTION FOR VIOLATION OF FEDERAL LAW

### (Against Defendants Governor Newsom and Attorney General Bonta)

243.  Plaintiffs hereby incorporate the allegations made in each preceding paragraph of this Complaint as if fully set forth herein.

244.  The *Ex Parte Young* doctrine allows for suits against state officials in their official capacity for prospective injunctive relief to prevent ongoing violations of federal law. *Ex parte Young*, 209 U.S. 123 (1908).

245.  Claims for relief One through Five catalog the numerous ways that Governor Newson and Attorney General Bonta are violating Federal law. The Plaintiffs, therefore, have a cause of action under *Ex Parte Young* against Governor Newsom and Attorney General Bonta.

246.  Governor Newsom and Attorney General Bonta have publicly expressed on multiple occasions their intent to enforce the Sanctuary State Laws and they have a direct connection to such enforcement by virtue of the offices that they hold. Governor Newsom's and Attorney General Bonta's violations of the U.S. Constitution and Federal law. Their enforcement of the Sanctuary State Law causes ongoing harm to the Plaintiffs by depriving them of their rights and privileges under the U.S. Constitution and Federal law. Prospective injunctive relief will redress that harm.

247.  The Plaintiffs have no adequate remedy at law. Absent relief, Defendants' actions continue to harm and threaten to harm Plaintiffs by impairing enjoyment of this right.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

1.    Preliminary and permanent injunctive relief preventing Defendants from enforcing the Sanctuary State Law, or, alternatively, from enforcing the California statutes and constitutional provisions upon which the Sanctuary State Law is based to the extent those statutes and provisions violate the Supremacy Clause, the aforementioned U.S. Federal immigration, criminal, and civil rights laws, the aforementioned California Penal Code(s), and other provisions of the U.S. Constitution and California Constitution;

2.    An order and judgment declaring that the Sanctuary State Law, or, alternatively, the California statutes and constitutional provisions upon which the Sanctuary State Law is based, violate the Supremacy Clause, the aforementioned U.S. Federal immigration, criminal, and civil rights laws, the aforementioned California Penal Code(s), and other provisions of the U.S. Constitution and California Constitution;

3.    An order and judgment declaring that the Sanctuary State Law provides no obstacle to Huntington Beach's cooperation with the Federal Government and acts to comply with all U.S. Federal immigration laws, or, alternatively, the California statutes and constitutional provisions upon which AB 1955 is based, violate the Supremacy Clause, the aforementioned U.S. Federal immigration, criminal, and civil rights laws, the aforementioned California Penal Code(s), and other provisions of the U.S. Constitution and California Constitution;

1         4.       Reasonable attorneys' fees and costs pursuant to 42 U.S.C. §

2    1988 and other applicable laws; and

3         5.       Such other and further relief as the Court may deem just and

4    proper.

5

6    DATED: March 5, 2025        MICHAEL J. Vigliotta, City Attorney

7

8                          By:   <u>/s/ *Michael J. Vigliotta* (with permission)</u>

9                               Michael J. Vigliotta

10                              *City Attorney*

                                City of Huntington Beach

11

12                         By:   <u>   /s/ *James Rogers*         </u>

13                              James K. Rogers

14                              *Senior Counsel*

                                America First Legal Foundation

15

16                              Attorneys for Plaintiffs

17                              CITY OF HUNTINGTON BEACH,
                                HUNTINGTON BEACH CITY COUN-

18                              CIL, HUNTINGTON BEACH POLICE

19                              DEPARTMENT, and the HUNTING-
                                TON BEACH POLICE CHIEF

20

21

22

23

24

25

26

27

28

1  **DEMAND FOR JURY TRIAL**

2

3      Plaintiffs, CITY OF HUNTINGTON BEACH, HUNTINGTON

4  BEACH CITY COUNCIL, HUNTINGTON BEACH POLICE DEPART-

5  MENT, and the HUNTINGTON BEACH POLICE CHIEF hereby de-

6  mand trial by jury in the above-entitled action pursuant to Federal Rules

7  of Civil Procedure 38(b) and Local Rule 38-1.

8

9  DATED: March 5, 2025              MICHAEL J. Vigliotta, City Attorney

10

11                              By:  /s/ *Michael J. Vigliotta* (with permission)

12                                   Michael J. Vigliotta, City Attorney
                                     Attorneys for Plaintiffs

13

14                              By:  /s/ *James Rogers*

15                                   James K. Rogers
                                     *Senior Counsel*

16                                   America First Legal Foundation

17

18                                   CITY OF HUNTINGTON BEACH,

19                                   HUNTINGTON BEACH CITY COUN-

20                                   CIL, HUNTINGTON BEACH POLICE

21                                   DEPARTMENT, and the HUNTING-
                                     TON BEACH POLICE CHIEF

22

23

24

25

26

27

28