Thomas A. Saenz (Cal. Bar No. 159430)
Ernest I. Herrera (Cal. Bar No. 335032)
Eduardo Casas (Cal. Bar No. 346859)
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND
634 South Spring Street, 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
Facsimile: (213) 629-0266
Email: tsaenz@maldef.org
        eherrera@maldef.org
        ecasas@maldef.org

*Attorneys for [Proposed] Defendant-Intervenor*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| CITY OF HUNTINGTON BEACH, a California Charter City, HUNTINGTON BEACH CITY COUNCIL, HUNTINGTON BEACH POLICE DEPARTMENT, and the HUNTINGTON BEACH POLICE CHIEF, in his official capacity as Chief of Police, <br><br> Plaintiffs, <br><br> v. <br><br> The STATE OF CALIFORNIA, GAVIN NEWSOM, in his official capacity as Governor of the State of California; ROBERT BONTA in his official capacity as Attorney General of the State of California; and DOES 1-50, inclusive, <br><br> Defendants. | Case No: 8:25-cv-00026-SSS-PD <br><br> **[PROPOSED] DEFENDANT-INTERVENOR'S NOTICE OF MOTION AND OPPOSED MOTION TO INTERVENE** <br><br> Hon. Sunshine S. Sykes <br><br> Action Filed: January 7, 2025 <br> Trial Date: None Set |

## NOTICE OF OPPOSED MOTION

Proposed Defendant-Intervenor, National Day Laborer Organizing Network, respectfully requests that the Court grant it leave to intervene as a defendant in this action as of right under Federal Rule of Civil Procedure 24(a)(2) or, in the alternative, grant it permissive intervention under Federal Rule of Civil Procedure 24(b)(1)(B).

This motion is made following the conference of counsel pursuant to L.R. 7-3. On February 21, 2025, Movant's counsel conferred telephonically with counsel for Defendants. The conference was attended by Ernest Herrera and Eduardo Casas on behalf of Movant, and by Gabrielle Boutin on behalf of Defendants. On February 26, 2025, Movant's Counsel conferred virtually with counsel for Plaintiffs. The conference was attended by Ernest Herrera and Eduardo Casas on behalf of Movant, and by James Rogers on behalf of Plaintiffs. Both conferences lasted about thirty minutes and related to the same issue of whether Movant's interests are adequately represented by Defendants. This issue remains unresolved, and Movant moves for permission to intervene. Plaintiffs City of Huntington Beach, et al., and Defendants State of California, et al., oppose this motion. *See* Casas Decl. ¶¶ 4—5.

In support of this Opposed Motion, Proposed Defendant-Intervenor relies on and incorporates herein its Memorandum of Law in Support and its accompanying declarations as well as Movant's Proposed Answer and Counter-Claims to the Complaint, attached as Exhibit 1 to this Motion.

Dated: April 17, 2025                    Respectfully submitted,

                                         */s/ Eduardo Casas*
                                         Thomas A. Saenz (Cal. Bar No. 159430)
                                         Ernest I. Herrera (Cal. Bar No. 335032)
                                         Eduardo Casas (Cal. Bar No. 346859)
                                         MEXICAN AMERICAN LEGAL DEFENSE
                                         AND EDUCATIONAL FUND

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING..........3

DESCRIPTION OF MOVANT ...............................................................................4

ARGUMENT ...........................................................................................................5

I.    MOVANT IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT. ........5

   A   Movant's Motion to Intervene Is Timely. ......................................................6

   B   Movant Seek to Vindicate Protectable Interests. ...........................................8

   C   Movant's Interests Will Be Impaired If Intervention Is Denied. ...................10

   D   The Existing Defendants May Not Adequately Represent Movant's
      Interests……………………………………………………………………..12

     i. The Constituency Assumption Does Not Apply Because NDLON's Interests
       Are More Narrow Than Those of the Public at Large..............................14

     ii. Movant Can Overcome the Ultimate Objective Presumption.......................15

II.  MOVANT IS ENTITLED TO PERMISSIVE INTERVENTION. .................... 17

CONCLUSION.......................................................................................................19

# <u>TABLE OF AUTHORITIES</u>

Cases
        Page(s)

*Akina v. Hawaii*,
  835 F.3d 1003 (9th Cir. 2016) ...............................................................10

*Allied Concrete & Supply Co. v. Baker*,
  904 F.3d 1053, 1068 (9th Cir. 2018) ..............................................12, 13

*Arakaki v. Cayetano*,
  324 F.3d 1078 (9th Cir. 2003) ........................................................10, 14

*Barke v. Banks*,
  2020 WL 2315857 (C.D. Cal. May 7, 2020) ......................................15

*Cal. Dump Truck Owners Ass'n v. Nichols*,
  275 F.R.D. 303 (E.D. Cal. 2011) .........................................................16

*California ex rel. Lockyer v. United States*,
  450 F.3d 436 (9th Cir. 2006) ......................................................2, 8, 9

*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*,
  152 F.3d 1184 (9th Cir.1998) ..............................................................14

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
  647 F.3d 893 (9th Cir. 2011) ......................................................6, 8, 10

*Donnelly v. Glickman*,
  159 F.3d 405 (9th Cir. 1998) ........................................................8, 18

*Forest Conservation Council v. U.S. Forest Serv.*,
  66 F.3d 1489 (9th Cir. 1995) ...............................................................15

*Fresno Cnty. v. Andrus*,
  622 F.2d 436 (9th Cir. 1980) ..........................................................9, 10

*GHP Mgmt. Corp. v. City of Los Angeles*,
  339 F.R.D. 621, 624 (C.D. Cal. 2021)..........................................15, 16

*Johnson v. S.F. Unified Sch. Dist.*,
  500 F.2d 349 (9th Cir. 1974) .................................................................9

*Melendres v. Arpaio*,
  989 F. Supp. 2d 822 (D. Ariz. 2013) ...................................................11

*People of State of Cal. v. Tahoe Reg'l Planning Agency*,
  792 F.2d 775, 778 (9th Cir. 1986) .......................................................12

*Smith v. L.A. Unified Sch. Dist*,
  830 F.3d 843 (9th Cir. 2016) ......................................................6, 7, 10

*Nw. Forest Res. Council v. Glickman*,
  82 F.3d 825 (9th Cir. 1996) ...................................................................8

*Smith v. Marsh*,
  194 F.3d 1045 (9th Cir. 1999) ...................................................................6
*Sw. Ctr. for Biological Diversity v. Berg*,
  268 F.3d 810 (9th Cir. 2001) ..........................................................5, 6, 16
*United States v. Alisal Water Corp.*
  370 F.3d 915 (9th Cir. 2011) ....................................................................6
*United States v. California*,
  288 F.3d 391 (9th Cir. 2002) ....................................................................4
*United States v. City of Los Angeles*,
  288 F.3d 391 (9th Cir. 2002) ....................................................................6
*United States v. Oregon,*
  745 F.2d 550 (9th Cir. 1984) ....................................................................7
*United States v. Sprint Commc'ns, Inc.*,
  539 U.S. 461 (2003)..............................................................................5, 8
*Wilderness Soc. v. U.S. Forest Serv*,
  630 F.3d 1173 (9th Cir. 2011) ...........................................................6, 8, 9

**Statutes**

Ariz. Rev. Stat. Ann. § 13-4295.01, *et seq.* ....................................................11

Cal. Gov. Code §§ 7282.5, *et seq.* ............................................................1, 3

Pasadena Municipal Code, *et seq.* ..............................................................11

**Rules**

Fed. R. Civ. P. 24....................................................2, 5, 6, 10, 11, 17, 18

**Other Authorities**

7C Charles Alan Wright & Arther R. Miller, Federal Practice and Procedure
§ 1904 (3d ed. 2007)………………………………………….......................10, 18

## MEMORANDUM IN SUPPORT OF OPPOSED MOTION TO INTERVENE

## INTRODUCTION

The National Day Laborer Organizing Network ("NDLON" or "Movant") respectfully moves to intervene as defendant to protect its interests in this case challenging the California Values Act of 2017 ("CVA"), Cal. Gov't Code §§ 7282.5, et seq.

Movant NDLON is a non-profit organization founded in 2001. Its mission is to improve the lives of immigrant day laborers in the United States through nationwide advocacy and organizing efforts in coordination with 49 member organizations in 19 states. *See* Newman Decl. ¶ 4.

Plaintiffs City of Huntington Beach, et al. (collectively, "Plaintiffs") seek to overturn the CVA to collaborate with federal agencies in the enforcement of federal immigration law beyond what is already allowed under the statute. While Plaintiffs characterize this law as protecting criminals, it actually protects innocent members of immigrant communities from ideologically driven and overzealous enforcement of a wholly federal legislative scheme by state and local law enforcement. Overturning the CVA will detrimentally affect NDLON's work and frustrate its mission as its members and the populations that it works with may be subjected to aggressive immigration enforcement that the state of California has already decided is unnecessary and against the interests of its residents. This would cause some interactions between local law enforcement with day laborers and immigrants to end with deportation. Additionally, without the protections afforded by the CVA, immigrant populations will be significantly less likely to seek the assistance of law enforcement, report crimes, and assist in criminal investigations that actually implicate the public's safety or be deported before they have had an opportunity to

1

apply for status adjustment.[1] The mere act of being undocumented without more is not a federal crime and people frequently adjust their immigration status through lawful means; a person who is ineligible to adjust status today may become eligible a year later. In sum, what Plaintiffs seek would harm far more than just criminals because the statute already allows law enforcement to share the immigration status of certain convicted criminals with federal authorities. Accordingly, Movant seeks intervention as of right under Fed. R. Civ. P. 24(a) or, alternatively, by permission under Fed. R. Civ. P. 24(b).

Movant also has direct interests in the outcome of this case that are distinct from the general and institutional interests of the State Defendants. Movant has an interest in upholding the CVA because it will affect its members and the populations that it works with far more severely than the population at large. While the CVA does not contain a private right of action, none is necessary for a proposed intervenor to have an enforceable right. *See California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006). The political climate additionally weighs in favor of intervention as the administration of President Donald J. Trump has both criticized the policies at issue while threatening to withhold crucial federal aid following the wildfires that devastated Los Angeles unless the funds are linked to certain policy changes.[2] The 2026 California gubernatorial and attorney general elections further obfuscate whether State Defendants' vigorous defense of the CVA will continue

---

[1] Rafaela Rodrigues et al., *Promoting Access to Justice for Immigrant and Limited English Crime Victims in an Age of Increased Immigration Enforcement: Initial Report from a 2017 National Survey*, National Immigrant Women's Advocacy Project, May 3, 2018, https://niwaplibrary.wcl.american.edu/wp-content/uploads/Immigrant-Access-to-Justice-National-Report.pdf.

[2] Kathryn Watson, *Trump threatens to withhold wildfire aid ahead of Los Angeles visit*, Jan. 24, 2025, CBS News, https://www.cbsnews.com/news/trump-wildfire-aid-los-angeles-gavin-newsom/; Sophia Tareen, *Trump administration sues Chicago in latest crackdown on 'sanctuary' cities*, Associated Press, Feb. 6, 2025, https://apnews.com/article/trump-immigration-chicago-arrests-sanctuary-immigrants-enforcement-df278eba554406c6703bb362d9b09844.

2

MEMORANDUM OF POINTS AND
AUTHORITIES  IN SUPPORT OF
THE NATIONAL DAY LABORER ORGANIZING
NETWORK'S MOTION TO INTERVENE

8:25-cv-00026-SSS-PD

through resolution of this case. If the future California Governor and Attorney General shift in their position on the CVA, Movant, its members, and the populations that Movant serves will be severely and detrimentally affected. Intervention would ensure stability in the representation of Movant's interests through resolution. Moreover, Movant's presentation of evidence and argument will assist the Court in rendering a decision on a complete factual and legal record.

In sum, Movant is particularly suited to represent its own interests in upholding the CVA, the overturning of which would subject Movant's members and the immigrant populations that it serves to harms distinct from those that the State and population at large would suffer. Plaintiffs Huntington Beach, et al., and Defendants State of California, et al., oppose Movant's motion after the parties conferred regarding this motion. *See* Casas Decl. ¶¶ 4–5.

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

Plaintiffs City of Huntington Beach, et al. filed this lawsuit to overturn the California Values Act of 2017. Dkt. No. 1. The CVA bars state and local police from investigating, interrogating, or arresting people for purely immigration enforcement purposes and limits police cooperation with federal immigration officials. *See* Cal. Gov't Code § 7284.6. However, the CVA does allow local law enforcement agencies to notify immigration authorities about an inmate's upcoming release if that person has been convicted of a serious crime or felony like murder, rape, kidnapping, robbery and arson. *See* Cal. Gov't Code § 7282.5. Additionally, nothing in the CVA precludes California law enforcement agencies from asserting their own jurisdiction over criminal law enforcement matters. *See* Cal. Gov't Code § 7284.6(a)(1)(F). The CVA further does not restrict what the federal government can do in California to enforce federal immigration law. *See* Cal. Gov't Code § 7284.6.

The CVA was passed by the California Legislature, "[t]o protect the safety and well-being of all Californians by ensuring that state and local resources are not used

3

to fuel mass deportations, separate families, and ultimately hurt California's economy."[3] The Legislature recognized that, "[a] relationship of trust between California's immigrant residents and our state and local agencies, including police, schools, and hospitals, is essential to carrying out basic state and local functions. That trust is threatened when state and local agencies are involved in immigration enforcement." *Id*. California has previously permitted greater entanglement between local and federal law enforcement agencies for the enforcement of immigration, which led to an estimated cost of $65 million dollars per year for California taxpayers. *See id*. The CVA therefore reflects California's judgment that the costs of allowing local law enforcement to enforce strictly federal immigration law beyond the statute's parameters far exceed any benefits. The Ninth Circuit has already determined that this was a proper exercise of the State's general policing powers under the Tenth Amendment to the United States Constitution where the federal government is not otherwise able to commandeer states for the enforcement of federal legislative schemes. *See United States v. California*, 921 F.3d 865, 873 (9th Cir. 2019).

Plaintiffs filed their complaint on January 7, 2025. State Defendants sought an extension for their responsive pleading, which is currently due on May 1, 2025. The Proposed-Defendant Intervenor filed their motion seeking leave to intervene on April 17, 2025.

## DESCRIPTION OF MOVANT

Movant NDLON is a 501(c)(3) non-profit organization, founded in 2001, dedicated to improving the lives of immigrant day laborers in the United States through nationwide advocacy and organizing efforts. Newman Decl. ¶ 4. NDLON consists of a nationwide coalition of day laborers and the agencies that work with day

---

[3] https://www.iceoutofca.org/uploads/2/5/4/6/25464410/factsheet_california_values_act_sb_54-4.13.17__1_.pdf

4

laborers. *See id.* The aims of the coalition include advocating for laws that improve the lives of day laborers, migrants, and low-wage workers. Nationally, NDLON has 36 member organizations and is affiliated with 35 worker centers. *See id.* NDLON has 17 member organizations in California, some of which are themselves member organizations. *See id.* at ¶ 5.

NDLON has about 3,600 day-laborer members throughout California. The Pasadena Community Job Center is an NDLON organizational member with individual members who are themselves also NDLON members. El Centro Cultural De Mexico is another organizational NDLON member that operates in Orange County. *See id.*

In coordination with its organizational and individual members, NDLON provides safe and organized spaces where day laborers (jornaleros in Spanish) may seek work, learn about their rights, and connect with resources. Workers can receive help with labor and immigration issues, such as understanding their rights if confronted by ICE or addressing instances of wage theft. Other member organizations foster leadership, encouraging workers to lead efforts for better conditions and community empowerment. Workers also receive guidance on how to respond to workplace discrimination or injury. In times of natural disasters like wildfires or floods, day laborer centers often organize brigades for cleanup and recovery. *See id.* at ¶ 6.

## ARGUMENT

## I.    MOVANT IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT.

A party may intervene as of right under Federal Rule of Civil Procedure 24(a)(2) when: (1) the application to intervene is timely; (2) the applicant has "a 'significantly protectable' interest relating to the property or transaction that is the subject of the action"; (3) the applicant is so situated that the disposition of the action

5

might impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest is not adequately represented by the existing parties to the lawsuit. *See United States v. Sprint Commc'ns, Inc.*, 855 F.3d 985, 990–91 (9th Cir. 2017); *Berg*, 268 F.3d 810, 817 (9th Cir. 2001).

"In evaluating whether Rule 24(a)(2)'s requirements are met, [courts in the Ninth Circuit] normally follow practical and equitable considerations and construe the Rule broadly in favor of proposed intervenors." *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (internal quotation marks omitted) (citing *United States v. City of Los Angeles*, 288 F.3d 391, 397–98 (9th Cir. 2002) *and Berg*, 268 F.3d at 818)); *see also Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 900 (9th Cir. 2011) ("We stress that intervention of right does not require an absolute certainty that a party's interests will be impaired or that existing parties will not adequately represent its interests."). This liberal policy in favor of intervention "'serves both efficient resolution of issues and broadened access to the courts.'" *Wilderness Soc.*, 630 F.3d at 1179 (quoting *City of Los Angeles*, 288 F.3d at 397–98). Moreover, courts accept as true all well-pleaded, non-conclusory allegations in a motion to intervene, a proposed answer in intervention, and declarations supporting the motion. *See Berg*, 268 F.3d at 820.

For the following reasons, Movant satisfies the test for intervention as a matter of right under Fed. R. Civ. P. 24(a)(2).

## A. Movant's Motion to Intervene Is Timely.

Courts in the Ninth Circuit determine the timeliness of a motion to intervene by looking to the totality of the circumstances, "with a focus on three primary factors: '(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay.'" *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2011)). "In analyzing these factors,

6

however, courts should bear in mind that '[t]he crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties.'" *Smith*, 830 F.3d at 854 (quoting *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999)).

In light of the totality of the circumstances and the factors identified by the Ninth Circuit, Movant's Motion to Intervene is timely. First, Movant seeks to intervene at the earliest possible stage of the proceeding. Plaintiffs filed their Complaint on January 7, 2025. Movant has filed this Motion, Declarations in support of the Motion, a Proposed Order on the Motion, and a Proposed Answer on April 17, 2025. Counsel for Movant conferred with Defendants' counsel on February 21, 2025 and notified them about Movant's intention to file this motion to intervene. Casas Decl. ¶ 4. Counsel for Movant also conferred with Plaintiffs' counsel on February 27, 2025 and notified them of the same. Casas Decl. ¶ 5. Moreover, Plaintiffs seek a Preliminary Injunction, and Movant seeks to intervene in time to contribute to the Court's consideration of that request. Thus, the Court itself has not had an opportunity to assess the claims and interests at issue in this litigation, and Movant seeks to intervene in time for the Court to rule on Plaintiffs' motion. Accordingly, this factor supports a finding that this Motion is timely.

Second, Movant's intervention will not cause prejudice to the existing parties in the case. The Ninth Circuit has held that "the only 'prejudice' that is relevant under this factor is that which flows from a prospective intervenor's failure to intervene after [it] knew, or reasonably should have known, that [its] interests were not being adequately represented—and not from the fact that including another party in the case might make resolution more 'difficult[].'" *Smith*, 830 F.3d at 857 (quoting *United States v. Oregon*, 745 F.2d 550, 552–53 (9th Cir. 1984)). Here, Movant has filed this Motion to Intervene soon after learning that their interests would be affected by this

action and not be adequately represented by the existing parties, and the action is in the earliest stage. Because Movant has not delayed its intervention, neither Plaintiffs nor Defendants will be prejudiced by the timing of Movant's intervention. Therefore, this factor also supports a conclusion that this Motion is timely.

Third, because there has been no delay between Plaintiffs filing their Complaint and Movant moving to intervene, it is not necessary to assess any reason for delay. As discussed above, Movant has not delayed but has filed this Motion to Intervene within three months of Plaintiffs filing their Complaint. Time that has elapsed since the initiation of this litigation has been spent in consultation between Movant and their counsel in preparation of this Motion and supporting documents. Movant has also had to adjust in response to Plaintiffs' amended complaints. This factor also supports a finding that this Motion is timely.

In sum, Movant has filed this Motion to Intervene during the earliest stage of the case, Movant's intervention will not prejudice the existing parties, and there has been no delay in Movant attempt to intervene. Therefore, Movant's Motion is timely.

## B.    Movant Seeks to Vindicate Protectable Interests.

A party seeking to intervene has a "significant protectable interest" in an action when: (1) the applicant's asserted interest "is protected under some law"; and (2) "there is a relationship between [the applicant's] legally protected interest and the plaintiff's claims." *Sprint Commc'ns, Inc.*, 855 F.3d at 991 (alteration in original) (quoting *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)) (internal citation and quotation marks omitted); *see also Wilderness Soc.*, 630 F.3d at 1179 (same). But "[w]hether [a prospective intervenor] demonstrates sufficient interest in an action is a 'practical, threshold inquiry,' and '[n]o specific legal or equitable interest need be established.'" *Citizens for Balanced Use*, 647 F.3d at 897 (quoting *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996)) (internal quotation marks omitted). The law under which a proposed intervenor claims an interest need not

8

"give [the] proposed intervenor any enforceable rights [or] seek to protect any of their existing legal rights." *California ex rel. Lockyer*, 450 F.3d at 441. The "interest" test "'is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.'" *Wilderness Soc.*, 630 F.3d at 1179 (quoting *Fresno Cnty. v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980)). Accordingly, the Ninth Circuit has identified as protectable, for example, such interests as "conserving and enjoying the wilderness character" of a region, *Citizens for Balanced Use, 647 F.3d* at 897–98, and parents' "concern . . . for their children's welfare" and "a sound educational system" operated in accordance with law, *Johnson v. S.F. Unified Sch. Dist.*, 500 F.2d 349, 352–53 (9th Cir. 1974). Furthermore, "a prospective intervenor 'has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation.'" *Wilderness Soc.*, 630 F.3d at 1179 (quoting *California ex rel. Lockyer*, 450 F.3d at 441).

Movant has numerous significant protectable interests in this litigation. Overturning the CVA will detrimentally affect NDLON's work and frustrate its mission as its members and the populations that it works with may be subjected to aggressive local enforcement of federal immigration law. This would cause some interactions between local law enforcement and day laborers or immigrant communities to end with deportation or possibly physical and emotional injury resulting from aggressive detention and/or family separation within mixed-status households. Additionally, without the protections afforded by the CVA, immigrant populations in California will be significantly less likely to seek the assistance of law enforcement, report crimes, and assist in criminal investigations that actually implicate the public's safety or be deported before they've had an opportunity to apply for status adjustment. Although the CVA does not create a private right of action, Movant's members and stakeholders benefit from this law because it places

9

significant limits on local law enforcement agencies' ability to subject them to punishment for a legislative scheme entirely within the purview of the federal government.

For example, in *Fresno Cnty. v. Andrus* farmers sought to intervene in litigation concerning a federal statute passed to protect small farmers on lands receiving federally subsidized water where the statute did not otherwise confer any rights on the farmers. 622 F.2d 436 (9th Cir.1980). In allowing the small farmers to intervene, the court noted that the Ninth Circuit "rejected the notion that Rule 24(a)(2) requires a specific legal or equitable interest," and that the small farmers were "precisely those Congress intended to protect" with the statute. *Id*. at 438. Similarly, although the CVA does not confer any rights to individuals, NDLON, its members, and the immigrant communities that it serves are precisely those California intended to protect with the CVA.

In sum, Movant has significant protectable interests in this litigation, and those interests are directly related to Plaintiffs' claims. Therefore, the Court should grant Movant's intervention as of right so that they may protect these interests.

### C. Movant's Interests Will Be Impaired If Intervention Is Denied.

Intervention is proper where prospective intervenors "are so situated that the disposition of the action without [them] may as a practical matter impair or impede their ability to safeguard their protectable interest." *Smith*, 830 F.3d at 862. "The question of whether protectable interests will be impaired by litigation 'must be put in practical terms rather than in legal terms.'" *Akina v. Hawaii*, 835 F.3d 1003, 1011–12 (9th Cir. 2016) (quoting 7C Wright & Miller, *Federal Practice and Procedure* § 1908.2 (3d ed. 2007)). Additionally, intervention as of right "does not require an absolute certainty" as to impairment of a prospective intervenor's interest. *Citizens for Balanced Use*, 647 F.3d at 900. The advisory committee notes to Rule 24(a) are also instructive: "[i]f an absentee would be substantially affected in a practical sense

10

by the determination made in an action, he should, as a general rule, be entitled to intervene." Fed. R. Civ. P. 24  Advisory Comm. Note to 1966 Amend.

Municipalities hostile to immigrant communities will be emboldened to, in effect, relinquish local law enforcement to federal agencies for the enforcement of federal immigration law where California has decided against this entanglement. Such hostile and aggressive laws have already been passed in states like Texas and Arizona. For example, Arizona Proposition 314 has deputized state law enforcement personnel to enforce federal immigration law despite prior attempts resulting in the racial profiling of Latinos. *See* Ariz. Rev. Stat. Ann. § 13-4295.01, *et seq.*; *see also Melendres v. Arpaio*, 989 F. Supp. 2d 822 (D. Ariz. 2013) (holding that MCSO intentionally discriminated against Latinos by permitting deputies to use race as factor in forming reasonable suspicion that persons violated state laws relating to immigration status in order to stop or detain suspected aliens). These laws not only detrimentally affect immigrants but also citizens and legal permanent residents who may become victims of racial profiling because it is difficult, if not impossible, to independently develop probable cause that someone has violated the federal statutes cited by Plaintiffs unless they actually see someone cross the border while evading inspection. Not all undocumented persons in the United States have violated the federal statutes cited by Plaintiffs, but all immigrants will have their interests impaired by municipalities that choose to aggressively enforce federal immigration law, which they will be able to do if Plaintiffs receive the relief sought. Even if this Court were to limit its holding to charter cities, some of NDLON's members like the Pasadena Community Job Center and the individual NDLON members that operate it would still be adversely affected because they also operate within a charter city. Newman Decl. ¶ 5; *see also* Pasadena Municipal Code.

Plaintiffs' success in this matter will result in the invalidation of the right of Movant's members and the populations that they work with to be free from

aggressive local enforcement of federal immigration law. Absent intervention, Movant will lack the opportunity to protect its substantial personal interests and will be relegated to the sidelines in a case in which their interests will be determined by other parties and the outcome of which will bear more heavily on Movant, its members, and the populations that it serves than it will other California constituents, voters, electoral candidates, and elected officials.

In sum, Movant's protectable interests will be impaired by this litigation proceeding without it, in the event that Plaintiffs' claims are victorious. Therefore, the Court should grant intervention so that Movant may prevent such impairment.

**D.    The Existing Defendants May Not Adequately Represent Movant's Interests.**

State Defendants may not adequately represent NDLON's interests because Movant's interest in promoting the welfare of immigrant populations is far more narrow than the State's interest in defending its authority to determine whether local municipalities may participate in federal legislative schemes. In determining the adequacy of representation, courts in the Ninth Circuit consider three factors: "whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; whether the present party is capable and willing to make such arguments; and whether the intervenor would offer any necessary elements to the proceedings that other parties would neglect." *People of State of Cal. v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th Cir. 1986).

The Ninth Circuit has consistently held this to be a low standard. In *Allied Concrete & Supply Co. v. Baker*, a labor union moved to intervene to uphold a state-wide wage statute that it argued would detrimentally affect its members. 904 F.3d 1053, 1068 (9th Cir. 2018). The *Allied Concrete* court held that because the union had an interest in the right to a prevailing wage, the district court invalidating the law would clearly impair that interest. *See id*. The court further held that the state's

12

representation of its interests could be inadequate because of the union's narrower interests compared to those of the public at large. *See id* at 1068.

The facts here are very similar to those in *Allied Concrete* in that Movant's interest in the preservation of the CVA might well go unrepresented in Defendants' efforts to dispose of the case against them. The State Defendants have institutional interests in balancing the cost to taxpayers of defending the CVA against the institutional harms associated with losing or settling the case. State Defendants may also face strong pressure from groups and constituents that have strong ideological objections to the CVA. Even assuming State Defendants' best intentions, they might hesitate to advance relevant arguments for the CVA because it would expose them to severe public scrutiny and criticism. This is particularly true for the State Defendants here considering the public's negative reaction to the handling of the recent wildfires, which has been exacerbated by the Trump administration's demand that any federal aid be linked to policy changes.[4] This political dynamic occurs as reconstruction of areas destroyed by the fire has ballooned to cost over $250 billion, while the Trump administration continues its hostile treatment of jurisdictions that have passed similar laws to the CVA by threatening to withhold federal funds.[5]

Furthermore, there is a significant risk that State Defendants may not adequately represent Movant's interests in this matter through its resolution given the uncertainty of next year's statewide elections. State Defendants will thus not "undoubtedly make" all of Movant's arguments, nor are Defendants necessarily "capable and willing to make" Movant's arguments considering the political backdrop to this litigation. Additionally, although the State Defendants may be

---

[4] Nathan Layne, *L.A. Mayor, California governor criticized over fires as political clash ensures*, , Reuters, Jan. 9, 2025, https://www.reuters.com/world/us/la-mayor-california-governor-criticized-over-fires-political-clash-ensues-2025-01-10/.

[5] Emily Badger, *Trump Raises New Threat to Sanctuary Cities: Blocking Transportation Dollars*, New York Times, Jan. 31, 2025, https://www.nytimes.com/2025/01/31/upshot/sanctuary-cities-trump-transportation-funds.html.

13

charged with enforcing laws duly enacted by the California Legislature, the State Defendants do not and cannot share Movant's interests in preserving the CVA because the State Defendants are not individuals potentially subject to deportation. State Defendants will not be personally affected by aggressive collaboration between local law enforcement agencies and federal agencies for the enforcement of federal immigration law in a manner that would be permissible if the statute is overturned. Movant will offer argument and evidence to the proceedings that State Defendants might neglect because Movant represents individuals that would be personally and severely affected by the resolution of this matter in Plaintiffs' favor. Because this is a low standard and Movant's interests may significantly diverge from the State Defendant's broader institutional interests, intervention is proper.

### i. The Constituency Assumption Does Not Apply Because NDLON's Interests Are More Narrow Than Those of the Public at Large.

A presumption of adequate representation arises in two circumstances: (1) when the proposed intervenor shares the same "ultimate objective" as one of the parties, and (2) when the proposed intervenor is one of the parties' constituents. *See Arakaki*, 324 F.3d at 1086. However, the burden on proposed intervenors in showing inadequate representation is minimal, and is satisfied where a proposed intervenor demonstrates that representation of their interests "may be" inadequate. *See id.*

When a constituent's interests are "potentially more narrow and parochial than the interests of the public at large," the constituency presumption does not apply. *See California for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998). Courts, including the Ninth Circuit, "have permitted intervention on the government's side in recognition that the intervenors' interests are narrower than that of the government and therefore may not be adequately represented." *GHP Mgmt. Corp. v. City of Los Angeles*, 339 F.R.D. 621, 624 (C.D. Cal. 2021). Inadequate representation is additionally most likely to be found when

14

1  the applicant asserts a personal interest that does not belong to the general public.'"

2  *Forest Conservation Council v. U.S. Forest Serv.,* 66 F.3d 1489, 1499 (9th Cir. 1995)

3  *(*quoting 3B Moore et al.*, Moore's Federal Practice* ¶ 24.07[4] (2d ed. 1995))

4  (Abrogated on other grounds). This reasoning has since been applied in a number of

5  cases where intervenors' interests diverged from those of existing defendants and

6  justified a finding of inadequate representation. *See Barke v. Banks*, No. 8:20-cv-

7  00358-JLS-ADS, 2020 WL 2315857, at *3 (C.D. Cal. May 7, 2020) (discussing

8  cases).

9       The constituency presumption does not apply here because the public at large

10  will not be affected by the overturning of the CVA in the same way as Movant. The

11  vast majority of California's population are citizens, while only about 4.6% of the

12  state's 39 million residents are undocumented.[6] Additionally, polling suggests that

13  the electorate is significantly divided over immigration policy even in states like

14  California.[7] Because State Defendants have institutional interests in balancing the

15  cost to taxpayers of defending the CVA against the institutional harms associated

16  with losing or settling the case, pressure from groups and constituents that have

17  strong ideological objections to the CVA could lead State Defendants to make

18  concessions that materially affect Movant's interests. The constituency presumption

19  therefore does not apply.

20       **ii.    Movant Can Overcome the Ultimate Objective Presumption**

21       Movant does not share the same ultimate objective as state Defendants because

22  Movant has previously advocated for greater protections under the CVA while under

23

24  _____

25  [6] Jeffrey S. Passel and Jens Manuel Krogstad, *What we know about unauthorized immigrants living in the U.S.*, Pew Research Center, July 22, 2024, https://www.pewresearch.org/short-reads/2024/07/22/what-we-know-about-unauthorized-immigrants-living-in-the-us/.

26  [7] Alexander E. Petri, Poll: Immigration debate deeply divides California Democrats, Los Angele

27  Times, Jan. 17, 2024, https://www.latimes.com/politics/story/2024-01-17/poll-what-california-voters-think-about-the-border-and-asylum-changes.

28

MEMORANDUM OF POINTS AND
AUTHORITIES  IN SUPPORT OF                                    8:25-CV-00026-SSS-PD
THE NATIONAL DAY LABORER ORGANIZING
NETWORK'S MOTION TO INTERVENE

threat of veto by Governor Newsom. Newman Decl. ¶ 7. Courts grant intervention where a prospective intervenor and the existing parties "do not have sufficiently congruent interests." *See, e.g., Sw. Ctr. for Biological Diversity*, 268 F.3d at 823; *Cal. Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 307–08 (E.D. Cal. 2011) (granting intervention to a nonprofit to defend a California environmental regulation where the state agency charged with enforcing the regulation was an existing party, in part because the nonprofit, unlike the agency, was "not required to balance any economic impact against its own considerations pertaining to health and environmental protections"). In this district, a court may also consider a nonprofit's reason for existing as well as its history advocating for the law at issue. *See GHP Mgmt. Corp.,* 339 F.R.D. at 624.

In *GHP Mgmt. Corp.,* a coalition of nonprofits dedicated to advancing economic and social justice for renters and historically marginalized communities sought to intervene alongside the City of Los Angeles in defense of a law protecting renters from eviction following the COVID-19 pandemic. The proposed intervenors there alleged that their members and other tenants would be forcibly displaced without the protections of the law at issue. *See id* at 622. The court granted movant's motion to intervene despite having the same ultimate goal in upholding the ordinance as Los Angeles because, "…the Proposed Intervenors' very existence is premised on the notion that governmental policies have failed to secure economic or social justice, including housing stability, for proposed intervenors' members." *Id* at 624. Additionally, the court held that movants met their burden because they had advocated for greater protections in the ordinance than were ultimately included because the city refused to adopt them. *See id*.

The facts here are very similar to those in *GHP Mgmt. Corp*. Like the nonprofits in *GHP Mgmt. Corp.*, Movant is a coalition of nonprofits dedicated to improving the lives of immigrant day laborers in the United States through

16

nationwide advocacy and organizing efforts. Newman Decl. ¶ 4. The aims of the coalition include advocating for laws that improve the lives of day laborers, migrants, and low-wage workers. *See id*. Additionally, NDLON was involved in every aspect of the development of and advocacy for the CVA. Newman Decl. ¶ 7. NDLON drafted the initial language that the bill was based on, argued against amendments to attenuate the CVA, and ultimately accepted lesser protections based on the Governor's threat of veto. *See id*. In sum, the very existence of NDLON is evidence that governmental policy has failed to fully address the needs of Movant and its members while Movant's history in the development of the CVA suggests that Movant and State Defendants do not share the same ultimate objective despite having a similar interest in defending the statute. Movant has met its burden here.

In sum, while the State Defendants and Movant may share the ultimate goal of defending the CVA, institutional considerations weigh in favor of granting intervention because Movant's members will bear the brunt of any overzealous enforcement of federal immigration by local law enforcement. Additionally, neither presumption recognized by the Ninth Circuit precludes Movant's intervention. The Court should therefore grant intervention so that Movant may protect its own interests under state law. For these reasons, Movant seeks to participate in this case as defendant-intervenor and respectfully requests that the Court grant them intervention as a matter of right.

## II.    MOVANT IS ENTITLED TO PERMISSIVE INTERVENTION.

Should the Court determine that Movant is not entitled to intervene as a matter of right, Movant urges the Court to exercise its broad discretion and allow intervention under Federal Rule of Civil Procedure 24(b). Courts in the Ninth Circuit may grant intervention under Rule 24(b) when: (1) a prospective intervenor's claim or defense "shares a common question of law or fact with the main action"; (2) the prospective intervenor's motion "is timely"; and (3) "the court has an independent

17

basis for jurisdiction over the [prospective intervenor's] claims." *Donnelly v. Glickman,* 159 F.3d 405, 412 (9th Cir. 1998). In exercising their discretion, courts also consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). As with intervention as of right under Rule 24(a), permissive intervention under Rule 24(b) is to be granted liberally. *See* 7CWright & Miller, *Federal Practice and Procedure* § 1904 (3d ed. 2007). Movant meets the standard for permissive intervention, and the Court should grant Movant's Motion so that they may protect their substantial interests in this litigation. First, Movant's defenses will share many questions of law and fact with the action as a whole. Movant seeks to maintain the same law that Plaintiffs seek to enjoin and to defend its permissibility, which Plaintiffs attack. In doing so, Movant will draw on the same law and facts as the existing parties in presenting its defenses to the Court, though they will introduce evidence in accordance with their unique position as an organization with members personally affected by aggressive local federal enforcement of immigration law where the State would not suffer such harm. Second, Movant's Motion is timely. As discussed above, Movant seeks to intervene during the earliest possible stage of this litigation. *See supra* § I.A. Third, the Court has an independent basis for jurisdiction. Movant has members that reside in the judicial district in which the Court sits, and thus the Court has personal jurisdiction over them; and to the extent that the Court has subject-matter jurisdiction over Plaintiffs' claims, it will likewise have subject-matter jurisdiction over Movant's defenses, which share many common questions of law and fact with the action as a whole. Lastly, intervention by Movant will not create delay or prejudice the existing parties. As discussed above, Movant has not tarried before seeking intervention in this case, which was only just recently filed, and thus there will be no harm to the existing parties by Movant intervening now. *See supra* § I.A. Adding Movant as defendant-intervenor at this stage of the lawsuit will not

18

needlessly increase cost, delay disposition of the litigation, or prejudice the existing parties.

In light of the foregoing reasons, Movant respectfully asks the Court at a minimum to exercise its broad discretion and grant permissive intervention.

## CONCLUSION

For the foregoing reasons, Movant respectfully requests that this Court grant its motion to intervene, and enter its proposed Answer, which is attached as Exhibit A to this motion.

Dated: April 17, 2025                    Respectfully submitted,


                                         */s/ Eduardo Casas*
                                         Thomas A. Saenz (Cal. Bar No. 159430)
                                         Ernest I. Herrera (Cal. Bar No. 335032)
                                         Eduardo Casas (Cal. Bar No. 346859)
                                         MEXICAN AMERICAN LEGAL DEFENSE
                                         AND EDUCATIONAL FUND
                                         634 South Spring Street, 11th Floor
                                         Los Angeles, CA 90014
                                         Telephone: (213) 629-2512
                                         Facsimile: (213) 629-0266
                                         Email: tsaenz@maldef.org
                                                 eherrera@maldef.org
                                                 ecasas@maldef.org

                                         *Attorneys for [Proposed] Defendant-Intervenor*

19