MICHAEL J. Vigliotta
City Attorney (SBN 207630)
Office of the City Attorney
2000 Main Street, P.O. Box 190
Huntington Beach, CA 92648
(714) 536-5555
MVigliotta@surfcity-hb.org

Attorneys for Plaintiffs

James K. Rogers
Ryan T. Giannetti
America First Legal Foundation
611 Pennsylvania Ave., SE #231
Washington, D.C. 20003
(202) 964-3721
James.Rogers@aflegal.org
Ryan.Giannetti@aflegal.org

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

CITY OF HUNTINGTON BEACH, a California Charter City, HUNTINGTON BEACH CITY COUNCIL, HUNTINGTON BEACH POLICE DEPARTMENT, the HUNTINGTON BEACH POLICE CHIEF, in his official capacity as Chief of Police; and CHAD BIANCO in his official capacity as Sheriff, Coroner, and Public Administrator of Riverside County,

        Plaintiffs,

        v.

The STATE OF CALIFORNIA, GAVIN NEWSOM, in his official capacity as Governor of the State of California; ROBERT BONTA in his official capacity as Attorney General of the State of California; and DOES 1-50, inclusive,

        Defendants.

CASE NO. 8:25-cv-00026-SSS-PD

**OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS**

1

# Table of Contents

**I.   The Plaintiffs have robustly and adequately alleged standing to assert the federal claims in the First through Fifth and Eighth through Tenth causes of action. ............................................................ 3**

**A.   South Lake Tahoe Does Not Apply ............................................ 3**

1.   Congress has conferred explicit, substantive rights, and standing to enforce those rights, on local government entities. .......................... 3

2.   South Lake Tahoe does not apply because this is fundamentally a defensive, pre-enforcement challenge by the Plaintiffs. ....................... 6

**B.   South Lake Tahoe Was Wrongly Decided ................................ 9**

**II.   The Law Enforcement Plaintiffs have standing. ................. 10**

**III.   The Court Has Subject Matter Jurisdiction To Address The Sixth And Seventh Causes Of Action. ................................................ 15**

**A.   This Court has supplemental jurisdiction over the Sixth and Seventh causes of action. ..................................................... 16**

**B.   This Court also has federal question jurisdiction under 28 U.S.C. § 1331 because the State law claims arise under the Constitution and laws of the United States. ................................. 16**

**IV.   The State of California does not have immunity from all claims ................................................................................................. 19**

**V.   If the Court is inclined to grant the Defendants' motion to dismiss, it should grant the Plaintiffs leave to amend the Second Amended Complaint. ............................................................................. 19**

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Rogers v. Brockette*, 588 F.2d 1057 (5th Cir. 1979) ..................................9

*Arizona v. United States*, 567 U.S. 387 (2012) ...................................2, 18

*Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122 (9th Cir. 2018)..........20

*Bd. of Educ. of Cent. Sch. Dist. No. 1 v. Allen*, 392 U.S. 236 (1968) ........8

*Branson School Dist. RE-82 v. Romer*, 161 F.3d 619 (10th Cir. 1998) ....9

*City of S. Lake Tahoe*, 625 F.2d 239 ............................................. 8, 13, 14

*City of San Juan Capistrano v. California Pub. Utils. Comm'n*, 937
    F.3d 1278 (9th Cir. 2019) ................................................................10

*City of South Lake Tahoe v. California Tahoe Regional Planning
    Agency ("South Lake Tahoe")*, 625 F.2d 231 (9th Cir. 1980).............3

*Cole-Tindall v. City of Burien*, 768 F. Supp. 3d 1178 (W.D. Wash. 2024)13

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)............................19

*Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) .....20

*Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998) ............................4, 5

*Grable & Sons Metal Prods., Inc. v. Darue Eng'ng & Mfg.*, 545 U.S. 308
    (2005) ...........................................................................................16, 17

*Hafer v. Melo*, 502 U.S. 21 (1991) ...........................................................15

*Hoohuli v. Ariyoshi*, 741 F.2d 1169 (9th Cir. 1984)................................19

*Indian Oasis-Baboquivari Unified Sch. Dist. No. 40 of Pima Cnty., Ariz. v. Kirk*, 91 F.3d 1240 (9th Cir. 1996) .......................................10

*Indians v. City of Ponca City*, 952 F.2d 1183 (10th Cir. 1991)................9

*Housing Auth. of the Kaw Tribe of Indians v. City of Ponca City*, 952 F.2d 1183 (10th Cir. 1991).........................................................9

*Palomar Pomerado Health System v. Belshe*, 180 F.3d 1104 (9th Cir. 1999).....................................................................9, 9, 18

*South Lake Tahoe*, 625 F.2d 233 ..............................................18

*Spokeo, Inc. v. Robins*, 578 U.S. 1540 (2016) ................................4

*State of Washington v. Adams County Sheriff's Office*, 2025 No. 2:25-cv-00099 (E.D. Wash., filed 2025)......................................6

*Steffel v. Thompson*, 415 U.S. 452 (1974) ...................................14

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014).......................7

*United States v. United Healthcare Ins. Co.*, 848 F.3d 1161 (9th Cir. 2016)...........................................................20

*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013)................17

**State Constitutional Provisions**

Cal. Article I................................................................11

Cal. Article III a............................................................4

Cal. Article III s.........................................................5, 13

iv

**Federal Statutes**

8 U.S.C.

§ 1 .................................................................................................10
§ 4 .................................................................................................10
§ 371 .............................................................................................10
§ 372 .............................................................................................10
§ 1324 .......................................................................10, 12, 17, 20
§ 1325 ...........................................................................................17
§ 1326 ...........................................................................................17
§ 1373 ...................................................................4, 12, 19, 19
§ 1512 ...........................................................................................10
§ 1644 ..................................................................................4, 19

18 U.S.C.

§ 4 ...........................................................................................11, 20
§ 371 .................................................................................11, 12, 20
§ 372 .......................................................................................11, 20
§ 1512 .....................................................................................11, 20

28 U.S.C.

§ 1331 ...........................................................................................16

42 U.S.C.

§ 1983 ...........................................................................................15

**State Statutes**

California

California Government Code § 7282.......................................1
California Government Code § 7282.5....................................1
California Government Code § 7283.......................................1
California Government Code § 7284.......................................1
California Government Code § 7285.......................................1
California Penal Code § 31 ...................................................16
California Penal Code § 32 ...................................................16

**Federal Rules**

Fed. R. Civ. P.
    Rule 15 ........................................................................................... 19

**Other Authorities**

Executive Order 14,287: Protecting American Communities From
    Criminal Aliens, 90 Fed. Reg. 18,761 (Apr. 28, 2025) ...................... 7

Irie Sentner and Josh Gerstein, *DOJ sends warning to judges and
    lawmakers who stoke Trump's wrath on immigration*, POLITICO
    (May 20, 2025), https://perma.cc/Z8R5-5RCL ................................ 13

Debra Heine, *Police Officers Disciplined in Colorado For sharing Info
    With ICE in Dem Crackdown Against Cooperation With Federal
    Immigration Enforcement*, AMERICAN GREATNESS (Aug. 1, 2025)
    https://perma.cc/XZP6-YRC8 ............................................................ 6

Attorney General Pam Bondi, *Memorandum for All Department
    Employees: Sanctuary Jurisdiction Directives*, DEP'T OF JUSTICE at
    3 (Feb. 5, 2025), https://perma.cc/R8M6-C85U ............................... 12

Emil Bove, *Memorandum for All Department Employees: Interim
    Policy Changes Regarding Charging, Sentencing, and Immigration
    Enforcement*, DEP'T OF JUSTICE at 3 (Jan 21, 2025),
    https://perma.cc/EMD9-DG6X ......................................................... 12

Luke Barr, Alexander Mallin, and Ivan Pereira, *'No one is above the
    law': AG Bondi blasts judges accused of helping undocumented
    immigrants evade arrest*, ABC NEWS (Apr. 25, 2025),
    https://perma.cc/3Z5Q-6BBD ............................................................ 13

## Introduction

This motion to dismiss is nothing short of an audacious attempt to shield California's lawless sanctuary regime from constitutional scrutiny. Defendants ask this Court to close its eyes to a brazen violation of federal supremacy—a state law that shamelessly requires local law enforcement to violate federal criminal statutes and obstruct the lawful enforcement of immigration law. California should be held accountable for its unprecedented assault on the rule of law and constitutional federalism. The motion should be denied because the Plaintiffs have standing, this Court has subject matter jurisdiction, and California is not immune from suit over the claims asserted here.

The California statutes at issue here, California Government Code §§ 7282, 7282.5, 7283-7283.2, 7284-7284.12, and 7285-7285.3 (the "Sanctuary Laws"), represent an extraordinary state intrusion into the federal immigration enforcement sphere, directly conflicting with Congress's comprehensive scheme for immigration regulation and enforcement cooperation. The Sanctuary Laws prohibit state and local law enforcement agencies from using their resources to investigate, interrogate, detain, detect, or arrest persons for immigration enforcement purposes, and restrict communication and cooperation with federal immigration authorities. Even worse, the Sanctuary Laws require the Plaintiffs to shield and harbor aliens, to obstruct federal officials in the discharge of their duties, and to commit various other federal crimes. These restrictions force Plaintiffs to choose between compliance with state law and subjecting themselves to federal criminal prosecution, creating an irreconcilable conflict, causing them harm, and conferring standing.

1    The federal government's exclusive authority over immigration
2    matters is well-established, with the Supreme Court affirming that "[t]he
3    Government of the United States has broad, undoubted power over the
4    subject of immigration and the status of aliens." *Arizona v. United*
5    *States*, 567 U.S. 387, 39 (2012). Federal immigration law expressly
6    contemplates and encourages cooperation between federal and local law
7    enforcement agencies, providing statutory frameworks for information
8    sharing and collaborative enforcement efforts. When California enacted
9    the Sanctuary Laws, it directly interfered with this federal scheme by
10   prohibiting the very cooperation that federal law seeks to facilitate. Even
11   worse, it imposed obligations on law enforcement officers that would
12   require them to violate federal criminal statutes.

13   The Plaintiffs have standing to challenge the sanctuary state law.
14   As local government entities explicitly empowered by federal statute to
15   exchange information with federal immigration authorities and
16   cooperate in the enforcement of federal immigration law, the Plaintiffs
17   fall squarely within the zone of interests that Congress intended to
18   protect. The Sanctuary Laws cause direct, concrete harm to the Plaintiffs
19   by forcing them to violate their federal obligations and compromising
20   their ability to protect public safety in their communities.

21   Because the Plaintiffs have adequately stated claims for relief and
22   possess standing to bring this action, and because this Court has
23   jurisdiction to resolve these important questions, the Motion to Dismiss
24   should be denied.

25
26
27
28

2

**Argument**

**I.    The Plaintiffs have robustly and adequately alleged standing to assert the federal claims in the First through Fifth and Eighth through Tenth causes of action.**

Invoking the doctrine of *City of South Lake Tahoe v. California Tahoe Regional Planning Agency* ("*South Lake Tahoe*"), 625 F.2d 231 (9th Cir. 1980), the Defendants mistakenly argue that Plaintiffs lack standing to assert their First through Fifth and Eighth through Tenth Causes of Action. However, the *South Lake Tahoe* doctrine is inapplicable here. Further, even if *South Lake Tahoe* applied to this matter, it was wrongly decided, which Plaintiffs explain here to preserve the argument for appeal although this Court is not empowered to overrule *South Lake Tahoe*.

### A.    *South Lake Tahoe* Does Not Apply

The Defendants' reliance on the *South Lake Tahoe* doctrine is misplaced for at least two reasons. First, unlike other cases in the *South Lake Tahoe* line of jurisprudence, here the Federal government has explicitly conferred substantive, enforceable rights on the Plaintiff government entities and officials. Second, *South Lake Tahoe* does not apply because this is fundamentally a defensive, pre-enforcement challenge by the Plaintiffs.

### 1.    Congress has conferred explicit, substantive rights, and standing to enforce those rights, on local government entities.

The *South Lake Tahoe* doctrine does not apply because the Plaintiffs here, unlike prior plaintiffs, invoke a substantive statutory right conferred explicitly on *political subdivisions* by Congress. Across multiple statutes, Federal law confers standing for Plaintiffs to challenge State law. For example, in a paragraph titled "Additional Authority of

3

Government Entities" (clearly conveying Congressional intent to create substantive, independent authority for government entities to whom the statute applies), 8 U.S.C. § 1373(b) provides that:

> Notwithstanding any other provision of Federal, State, or local law, no person or agency may prohibit, or in any way restrict, a Federal, State, or *local government entity* from doing any of the following with respect to information regarding the immigration status, lawful or unlawful, or any individual:
>
> (1) Sending such information to, or requesting or receiving such information from, the Immigration and Naturalization Service.
> (2) Maintaining such information.
> (3) Exchanging such information with any other Federal, State, or local government entity.

(emphasis added). Similarly, under 8 U.S.C. § 1644: "Notwithstanding any other provision of Federal, State, or local law, no State or *local government entity* may be prohibited, or in any way restricted, from sending to or receiving from the Immigration and Naturalization Service information regarding the immigration status, lawful or unlawful, of an alien in the United States." (emphasis added). In other words, these are not solely constitutional claims, or even Supremacy Clause claims, against California – they are, independently, claims arising under federal statutory law conferring explicit rights on state subdivisions under Congress's authority to regulate both immigration *and* this Court's jurisdiction.

There is no doubt that Congress can establish the jurisdiction of this Court, any more than that Congress can confer an enforceable right. *Cf. Spokeo, Inc. v. Robins*, 578 U.S. 1540, 1550 (2016) ("[T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact."); *Fed. Election Comm'n v.*

*Akins*, 524 U.S. 11, 20 (1998) (holding that violation of a procedural right granted by statute is adequate for standing).

In *Akins*, the Court found that a plaintiff who "arguably falls within the zone of interests to be protected or regulated by the statute in question" has both Article III and prudential standing. 524 U.S. 11, 20–21. Here, the analysis is the same: the "local government entity" explicitly empowered by statute to exchange information with the Federal Government and to cooperate in the enforcement of federal law is *precisely* the party with interests Congress intended to be protected by statute.

None of the three elements of constitutional standing are in doubt. The Plaintiffs, positioned as they are between the rock of state law and the hard place of federal law, are clearly subject to an injury in fact. Indeed, the Defendants acknowledge as much, arguing only that the Law Enforcement Officials have alleged "an 'official' injury," rather than a personal injury. Defendants do not even bother to waste a word on causation or redressability, because the Plaintiffs' injuries are clearly caused by California's unlawful Sanctuary Laws and will be promptly redressed once enforcement of those Laws is enjoined. The only meaningful question about standing is the application of *South Lake Tahoe*.

The Supreme Court has repeatedly affirmed that, assuming the three elements of Article III standing are met, Congress has "the constitutional power to authorize federal courts to adjudicate this lawsuit." *Akins*, 524 U.S. at 20 (cleaned up). Here, by conferring substantive rights on local government entities to cooperate with Federal immigration authorities, Congress has conferred on this Court the power

to adjudicate disputes regarding those rights. The *South Lake Tahoe* doctrine is, therefore, inapplicable to this dispute.

### 2. *South Lake Tahoe* does not apply because this is fundamentally a defensive, pre-enforcement challenge by the Plaintiffs.

Unlike other cases in the *South Lake Tahoe* line, this is not a mere appeal against unlawful activity or a quest to satisfy "personal constitutional predilections." This case presents a genuine dilemma between criminally enforceable, diametrically opposed State and Federal laws, with the Plaintiffs caught in between. In other words, the Plaintiffs seek to shield the City and Law Enforcement Officials from unlawful reprisals by California and its officials—reprisals those officials have repeatedly promised to pursue.

The fear that Plaintiffs could face punitive action no matter what they do is no idle concern, either. Plaintiffs have adequately pled that "California's Governor Newsom and Attorney General Bonta have publicly expressed on multiple occasions their intent to enforce the Sanctuary State Laws." ECF No. 029 ¶ 261. Other states are already taking action against local governments and law enforcement officials, with some even dragging their own counties into court to enforce sanctuary laws. *See, e.g.*, *State of Washington v. Adams County Sheriff's Office*, No. 2:25-cv-00099 (E.D. Wash., filed Mar. 28, 2025) (State of Washington suing local government officials); Debra Heine, *Police Officers Disciplined in Colorado For sharing Info With ICE in Dem Crackdown Against Cooperation With Federal Immigration Enforcement*, AMERICAN GREATNESS (Aug. 1, 2025) https://perma.cc/XZP6-YRC8 (State of Colorado pursued disciplinary measures against local law enforcement officials and their supervisors). There is no reason not to take Governor

Newsom and Attorney General Bonta at their word and believe that they
will follow suit.

On the other hand, the Federal Government has also shown that it
is perfectly willing to assert its constitutional Supremacy in the field of
immigration enforcement. *See, e.g.*, Executive Order 14,287: Protecting
American Communities From Criminal Aliens, 90 Fed. Reg. 18,761 (Apr.
28, 2025) (ordering termination of certain funds and grants to sanctuary
jurisdictions, along with other "necessary legal remedies and
enforcement measures" after listing the many federal criminal laws that
sanctuary jurisdictions violate). In other words, unlike the cases in the
*South Lake Tahoe* line of jurisprudence, adjudication in federal court
may be the *only* remedy that avoids putting localities and local officials
at risk of punitive action by either the State or Federal government.

Of course, even if there were no risk of federal enforcement against
the Plaintiffs, the Defendants have made it perfectly clear that they
intend to enforce the Sanctuary Laws and, thereby, violate both federal
law and Plaintiffs' rights. As explained above, Congress has created
substantive rights for localities to cooperate with federal immigration
officials without fear of retribution by State officials. Our federal courts
have long refused to put parties "to the choice between abandoning
[their] rights or risking prosecution." *MedImmune, Inc. v. Genentech,
Inc.*, 549 118, 129 (2007); *see also Susan B. Anthony List v. Driehaus*, 573
U.S. 149, 158 (2014) ("When an individual is subject to such a threat, an
actual arrest, prosecution, or other enforcement action is not a
prerequisite to challenging the law.").

Indeed, this was the precise issue in one case that *South Lake
Tahoe* sought to distinguish: local officials and municipalities have
standing where they face negative consequences no matter what they do.

*See South Lake Tahoe*, 625 F.2d at 236–38 (distinguishing *Bd. of Educ. of Cent. Sch. Dist. No. 1 v. Allen*, 392 U.S. 236 (1968)). The *South Lake Tahoe* Court noted that the *South Lake Tahoe* plaintiffs had "available a course of action which subjects them to no concrete adverse consequences," i.e., enforce the disputed ordinances. *Id.* at 237. In *Allen*, however, the Supreme Court found that the local officials had standing because either course of action would result in harm: either they enforced the ordinance, thereby redirecting municipal resources in a way they believed unconstitutional (and violating their oaths), or they refused to enforce the ordinance and face removal from office. 392 U.S. at 240.

Of course, the jurisprudence of pre-enforcement challenges has developed considerably since *South Lake Tahoe* was decided in 1980, and that Court's willingness to ignore the injury inherent in subjecting someone "to the choice between abandoning [their] rights or risking prosecution," *MedImmune, Inc. v. Genentech, Inc.*, 549 118, 129 (2007), is no longer tenable. But even if it were, the distinction with *Allen* is greatly increased in the present case, where both State and Federal authorities have not only credibly threatened enforcement of their respective criminal laws, but have already begun taking action to punish lawbreakers. Far more so than in *Allen*, there is no "safe course."

The underlying logic of *South Lake Tahoe*, avoiding thorny questions of federalism, falls apart where the thorny question has *already manifested* as a "Morton's fork" for the local government. Thus, *South Lake Tahoe* does not apply to Plaintiffs, as local officials who face a genuine threat of prosecution or other enforcement action and a charter city that faces a genuine threat of federal or state punitive measures (or both), regardless of how it addresses its dilemma.

8

### B. *South Lake Tahoe* Was Wrongly Decided

Even if the *South Lake Tahoe* line of cases applied here, this case merely underscores that, as it concerns the Supremacy Clause, *South Lake Tahoe* was wrongly decided. The City understands that this Court lacks authority to overrule *South Lake Tahoe* but preserves here its arguments that *South Lake Tahoe* was wrongly decided in the event that the issue goes up on appeal.

*South Lake Tahoe* is fundamentally judge-made law, recognized exclusively in the Ninth Circuit. *See, e.g.*, *Palomar Pomerado Health System v. Belshe*, 180 F.3d 1104, 1110 (9th Cir. 1999) (Hawkins, J., concurring) ("Certainly the Ninth Circuit is alone in having barred Supremacy Clause challenges by political subdivisions against their parent states."); *see also id.* (collecting cases from the Fifth, Tenth, and Eleventh Circuits expressly rejecting a per se rule, and cases from the Fourth and Sixth Circuits suggesting opposition to such a rule); *Branson School Dist. RE-82 v. Romer*, 161 F.3d 619, 630 (10th Cir. 1998) ("The only circuit to bar Supremacy Clause challenges by political subdivisions against their parent state has been the Ninth Circuit. . . . [W]e remain persuaded that the better rule is the one supported by *Rogers* [*v. Brockette*, 588 F.2d 1057 (5th Cir. 1979)] and [*Housing Auth. of the*] *Kaw Tribe* [*of Indians v. City of Ponca City*, 952 F.2d 1183 (10th Cir. 1991)]."). Every other Circuit to have considered the matter has held to the better supported rule that local governments have standing to challenge state law on Supremacy Clause grounds. *City of San Juan Capistrano v. California Pub. Utils. Comm'n*, 937 F.3d 1278, 1282 (9th Cir. 2019) (Nelson, J. concurring) ("[T]he Second, Fifth, and Tenth Circuit approaches [permitting Supremacy Clause challenges] remain faithful to

1  the driving force behind our rule—the unique relationship between state

2  subdivisions and their creating states.").

3      This unanimity (outside of the Ninth Circuit) may be due, at least

4  in part, to the shaky grounding of *South Lake Tahoe*. As Judge Nelson

5  explained, "the meaning of 'standing' has changed" since the cases that

6  *South Lake Tahoe* relied on were decided. *City of San Juan Capistrano*,

7  937 F.3d at 1282 (Nelson, J. concurring). The *South Lake Tahoe* doctrine

8  was established on shaky ground, and history has since rendered it

9  entirely unsupportable. *See, e.g.*, *Indian Oasis-Baboquivari Unified Sch.*

10  *Dist. No. 40 of Pima Cnty., Ariz. v. Kirk*, 91 F.3d 1240, 1251 (9th Cir.

11  1996) (Reinhardt, J., dissenting) ("The majority does not and cannot

12  explain why school districts should be denied standing to sue their states

13  or how a per se bar on standing can be reconciled with *Lujan* or literally

14  dozens of other modern standing cases.").

## II.    The Law Enforcement Plaintiffs have standing.

16      Even if *South Lake Tahoe* was correctly decided and applied here,

17  the Huntington Beach Police Chief and Riverside County Sheriff Bianco

18  (collectively, the "Law Enforcement Plaintiffs") still have standing to

19  challenge the Sanctuary Laws because those laws require them to

20  engage in conduct that exposes them to *personal* criminal liability. The

21  Defendants are thus incorrect when they argue that the Law

22  Enforcement Officials do not have standing because, in their telling, "the

23  only injuries alleged by the Law Enforcement Officials are, in fact,

24  official and not personal." ECF 34-1 at 14.

25      However, the SAC specifically and plausibly alleges, *see* ECF 29 ¶¶

26  64-67, 70-73, 178-80, and 201-21, that the Sanctuary Laws require the

27  Law Enforcement Plaintiffs to violate the following federal criminal

28  statutes: 8 U.S.C. § 1324, 18 U.S.C. §§ 4, 371, 372, and 1512. The

Sanctuary Laws expose the Law Enforcement Plaintiffs to criminal liability in at least five ways.

*First*, the Sanctuary Laws requires the Law Enforcement Plaintiffs to "conceal[], harbor[], or shield[] from detection" illegal aliens, "or attempt[] to" do so and it requires them to "encourage[] or induce[] an alien" illegally "to . . . reside in the United States." 8 U.S.C. § 1324(a)(1)(A); ECF 29 ¶¶ 64-67, 178-80, 212, 215, 217.

*Second*, it requires the Law Enforcement Plaintiffs to conceal from federal authorities "the actual commission of a felony cognizable by a court of the United States." 18 U.S.C. § 4; ECF 29 ¶¶ 70, 203-4.

*Third*, it requires the Law Enforcement Plaintiffs to "conspire to commit . . . offense[s] against the United States." 18 U.S.C. § 371; ECF 29 ¶¶ 71, 205-6.

*Fourth*, it requires the Law Enforcement Plaintiffs to "conspire . . . to impede" officers of the United States from "the discharge of [their] official duties." 18 U.S.C. § 372; ECF 29 ¶¶ 72, 207-8.

*Fifth*, it requires the Law Enforcement Plaintiffs to "knowingly . . . engage[] in misleading conduct toward another person, with intent to . . . cause or induce any person to . . . be absent from an official proceeding to which such person has been summoned by legal process" or to "hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of . . . parole[] or release pending judicial proceedings." 18 U.S.C. § 1512(b)(2)(D) and (b)(3); ECF 29 ¶¶ 73, 209-10.

Nor is the threat of potential criminal prosecution merely hypothetical. On January 21, Acting Deputy Attorney General Emil Bove issued a department-wide memorandum to the Department of Justice

affirming that "[f]ederal law prohibits state and local actors from resisting, obstructing, and otherwise failing to comply with lawful immigration-related commands and requests pursuant to, for example, the President's extensive Article II authority with respect to foreign affairs and national security, the Immigration and Nationality Act, and the Alien Enemies Act." Emil Bove, *Memorandum for All Department Employees: Interim Policy Changes Regarding Charging, Sentencing, and Immigration Enforcement*, DEP'T OF JUSTICE at 3 (Jan 21, 2025), https://perma.cc/EMD9-DG6X. The memo then specifically instructs that "[t]he U.S. Attorney's Offices and litigating components of the Department of Justice *shall* investigate incidents involving any such misconduct for potential prosecution, including for obstructing federal functions in violation of *18 U.S.C. § 371*, and violations of other statutes, such as *8 U.S.C. §§ 1324,* 1373." *Id.* (emphasis added).

On February 5, 2025, Attorney General Pam Bondi issued a similar department-wide memo affirming that "[a]ctions that impede federal efforts to enforce immigration law threaten public safety and national security. State and local jurisdictions must comply with applicable immigration-related federal laws. State and local actors may not impede, obstruct, or otherwise fail to comply with lawful immigration-related directives. . . ." Attorney General Pam Bondi, *Memorandum for All Department Employees: Sanctuary Jurisdiction Directives*, DEP'T OF JUSTICE at 3 (Feb. 5, 2025), https://perma.cc/R8M6-C85U. The memo then instructs that "[a]ll litigating components of the Department of Justice and each U.S. Attorney's Office *shall* investigate incidents involving any such misconduct and shall, where supported by the evidence, *prosecute* violations of federal laws such as *18 U.S.C. § 371 and 8 U.S.C. §§ 1324* and 1373." *Id.* (emphasis added).

These threats are not merely hypothetical. The Department of Justice has separately filed criminal charges against three different government officials for helping aliens avoid apprehension or for interfering with ICE officers.[1]

The Defendants' reliance on *South Lake Tahoe* is misplaced in arguing that the Law Enforcement Plaintiffs lack standing. This is because *South Lake Tahoe* forecloses standing for local public officials to challenge a state law only if their *sole* alleged harm is "potential exposure to civil liability" or "violation of the oath [of office] in performance of a statutory duty." *City of S. Lake Tahoe*, 625 F.2d at 237. These kinds of injuries, the Ninth Circuit held, were "'official' rather than 'personal,'" and this did not confer standing. *Id.* at 238.

Because the Law Enforcement Plaintiffs face a credible threat of criminal prosecution, *South Lake Tahoe* does not apply. Their potential injury—personally being sentenced to imprisonment—is not an official injury, but a very personal one. Thus, the holding of *South Lake Tahoe* "that the threat of civil liability is too attenuated and conjectural to supply the [local public officials] with a basis for standing" has no applicability here. *Id.* at 239; *see, e.g.*, *Cole-Tindall v. City of Burien*, 768 F. Supp. 3d 1178, 1183 (W.D. Wash. 2024) (explaining the holding of

---

[1] Irie Sentner and Josh Gerstein, *DOJ sends warning to judges and lawmakers who stoke Trump's wrath on immigration*, Politico (May 20, 2025), https://perma.cc/Z8R5-5RCL ("prosecutors charged . . . New Jersey lawmaker [Rep. LaMonica McIver] with assault after a scuffle outside an immigration detention center"); Luke Barr, Alexander Mallin, and Ivan Pereira, *'No one is above the law': AG Bondi blasts judges accused of helping undocumented immigrants evade arrest*, ABC News (Apr. 25, 2025), https://perma.cc/3Z5Q-6BBD (explaining that "Milwaukee County Circuit Judge Hannah Dugan was arrested Friday by the FBI over allegedly helping an undocumented immigrant evade arrest last week. Her arrest took place hours after federal authorities arrested former New Mexico Judge Joel Cano and his wife Nancy Cano for allegedly housing a Venezuelan national with reported gang ties. . . .").

1  *South Lake Tahoe* and its progeny as holding "that public officials
2  challenging the constitutionality of a law typically do not meet Article III
3  standing requirements where plaintiffs assert standing based on
4  potentially violating their oaths of office and facing *civil liability*"
5  (emphasis added)).

6      *South Lake Tahoe* stated that the possibility of criminal liability in
7  that case did not confer standing because "the councilmembers have not
8  shown any concrete personal injury[,] criminal liability or otherwise[,]
9  that results from the operation of the challenged CTRPA ordinances,"
10 but rather, the possible criminal liability would only attach if the
11 councilmembers made the affirmative decision not to comply with the
12 relevant State statute. *South Lake Tahoe*, 625 F.2d at 238. This
13 statement by the court was dicta, as the ultimate holding rested only on
14 the lack of civil liability. However, even if this part of *South Lake Tahoe*
15 is not dicta, it does not apply here because the Law Enforcement
16 Plaintiffs do not have a choice of complying to avoid criminal liability.
17 Compliance with the relevant State statute *requires* violation of federal
18 criminal law. Complying with the Sanctuary Laws, therefore, creates
19 concrete personal criminal liability, and the Law Enforcement Plaintiffs
20 therefore have standing.

21     The U.S. Supreme Court has specifically held that a plaintiff
22 threatened with criminal prosecution has standing to challenge the
23 relevant statute under which he would be charged. *Steffel v. Thompson*,
24 415 U.S. 452 (1974). The Ninth Circuit held that *Steffel* did not apply in
25 *South Lake Tahoe* because "the exposure in *Steffel* was to a criminal
26 statute; enforcement of the statute here would expose councilmembers
27 only to potential civil liability." *City of S. Lake Tahoe*, 625 F.2d at 239.
28 Because the Law Enforcement Plaintiffs are *not* just exposed to potential

14

civil liability, but also to criminal liability, *South Lake Tahoe* does not apply—*Steffel* does.

Nor is it relevant that the Law Enforcement Plaintiffs bring this suit in their official capacity. Here, that is a distinction without a difference. The Defendants argue that the Law Enforcement Plaintiffs cannot assert personal harm for purposes of showing standing because, in their view, "by definition, the Law Enforcement Officials are asserting official[] interests because they are suing only in their official capacities." ECF 34-1 13-14. However, the case that the Defendants cite in support of their contention is entirely inapposite. That case, *Hafer v. Melo*, 502 U.S. 21, 25 (1991), was about what kind of relief is available under 42 U.S.C. § 1983 against government officials who are *defendants*—specifically, the Supreme Court held that monetary damages are not available in Section 1983 actions in which defendants are named in their official capacities. It was *not* a holding about standing.

And even if the Defendants were correct in their assertion that the Law Enforcement Plaintiffs lack standing because they are only asserting claims in their official capacity, the proper response would not be dismissal, but granting leave to amend to allow the Law Enforcement Plaintiffs to assert claims in their personal capacities as well. Accordingly, if this Court is inclined to dismiss on this basis, the Law Enforcement Plaintiffs ask leave to amend.

## III.  The Court Has Subject Matter Jurisdiction To Address The Sixth And Seventh Causes Of Action.

The Defendants' efforts to dismiss the Sixth and Seventh causes of action fall apart for all the reasons explained in Sections I–II, *supra*, and Section IV, *infra*. Specifically, Defendants argue that this Court lacks subject matter jurisdiction over the Sixth and Seventh causes of action

because the Court lacks supplemental jurisdiction to address State law claims and the State has Eleventh Amendment and State sovereign immunity to State law claims. Both arguments are misguided.

## A. This Court has supplemental jurisdiction over the Sixth and Seventh causes of action.

The Defendants' arguments rely largely on the premise that, without federal causes of action, Plaintiffs cannot rely on supplemental jurisdiction to prosecute their state causes of action in federal court. However, as explained in Sections I and II, *supra*, the Plaintiffs have standing to prosecute their federal causes of action. This Court, therefore, has supplemental jurisdiction over the state causes of action.

## B. This Court also has federal question jurisdiction under 28 U.S.C. § 1331 because the State law claims arise under the Constitution and laws of the United States.

Even if the federal claims were insufficient to confer supplemental jurisdiction over the state claims, this court would still have federal question jurisdiction. Claims that "appear[ ] in state raiment" may nonetheless be litigated under federal question jurisdiction where they "necessarily raise a stated federal issue, [that is] actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'ng & Mfg.*, 545 U.S. 308, 314 (2005). This is precisely such a situation.

The Defendants baldly assert that the Sanctuary Laws, California Penal Code sections 31 and 32, and the California Constitution can be interpreted in this context without reference to federal law, but they offer no explanation for how this could be done. California's criminal aiding and abetting statutes, at California Penal Code §§ 31 and 32, require some underlying criminal action. In this case, the underlying

16

criminal acts include, but are not limited to, violations of *federal* law—8 U.S.C. §§ 1324, 1325, and 1326, among others. Put differently, the parties' rights and obligations under California law cannot be determined without interpreting the applicability of federal immigration law. "Section 1324," for example, is "part of a larger general scheme of criminal sanctions for those who facilitate the unlawful entry, residence, or movement of aliens within the United States," and is only one of many federal laws this Court must interpret and apply to determine the parties' rights and obligations under California Penal Code §§ 31 and 32. *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1024 (9th Cir. 2013). That *is* a "stated federal issue, actually disputed and substantial." *Grable*, 545 U.S. at 314.

Similarly, determining whether the Sanctuary Laws force the Plaintiffs to violate the California Constitution cannot be resolved without determining how the Sanctuary Laws *interact with* (read: conflict with) federal law and the United States Constitution. "The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens," which routinely preempts State laws addressing the topic. *Arizona v. United States*, 567 U.S. 387, 395 (2012). Whether the broad scope of federal immigration law directly preempts the contradictory State Sanctuary Law is an "actually disputed and substantial" question of federal law. *Grable*, 545 U.S. at 314.

Nor could one say that federal jurisdiction in this case would "disturb any congressionally approved balance of federal and state judicial responsibilities," or be inconsistent with "Congress's intended division of labor between state and federal courts," or "affect[ ] the normal currents of litigation." *Grable*, 545 U.S. at 314, 319. To the

17

1 | contrary, this case is about immigration policy, and "federal power to
2 | determine immigration policy is well settled." *Arizona*, 567 U.S. at 395.
3 | Indeed, Congress has *explicitly* authorized local, municipal governments
4 | to act—and, implicitly, to defend their actions—"[n]otwithstanding any
5 | other provision of Federal, State, or local law." In other words, federal
6 | authority over immigration policy is expansive, if not field preclusive,
7 | and expressly approves of the federal interest in preventing states from
8 | applying laws like the Sanctuary City Law.

9 | The Defendants also attempt to pull a "heads I win, tails you lose,"
10 | maneuver by arguing that, if there is a federal issue, then the *South
11 | Lake Tahoe* doctrine applies to strip Plaintiffs of standing. This
12 | argument is misguided, not only because, as explained above, the *South
13 | Lake Tahoe* doctrine does not apply in this case, but also because it
14 | conflates federal *claims* with federal *issues*. *South Lake Tahoe*, by its own
15 | terms, only applies when a municipal or other government subdivision
16 | Plaintiff sues for a *claim* arising under the U.S. Constitution. *See, e.g.*,
17 | *South Lake Tahoe*, 625 F.2d at 233–34 ("Because all of its *claims* are
18 | based on the Constitution, the City's challenge was properly dismissed.")
19 | (emphasis added); *Palomar Pomerado*, 180 F.3d at 1107 ("Palomar
20 | Pomerado's *claims* are based on Fourteenth Amendment and Supremacy
21 | Clause grounds.").

22 | Here, the Sixth and Seventh causes of action—the *claims*—arise
23 | under State laws and the State Constitution; they necessarily require
24 | resolution of important federal issues, so the *civil action* arises under the
25 | Constitution and laws of the United States. Put differently, although this
26 | action necessarily implicates federal questions and is most appropriately
27 | resolved in federal court, the Plaintiffs' Sixth and Seventh causes of

28 |

action are fundamentally grounded in State law, and, thus, are not subject to the *South Lake Tahoe* doctrine.

## IV. The State of California does not have immunity from all (or any) claims.

Eleventh Amendment sovereign immunity may be abrogated by Congress. *Hoohuli v. Ariyoshi*, 741 F.2d 1169, 1173 (9th Cir. 1984), abrogated on other grounds by *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 346 n.4 (2006) ("The eleventh amendment bar may also be overcome by a clear expression of congressional intent to abrogate the immunity granted.") The Defendants claim that Congress has not abrogated sovereign immunity here, yet they ignore the plain language of 8 U.S.C. §§ 1373 and 1644, which preempt and abrogate "any . . . provision of . . . State . . . law" that "prohibit[s], or in any way restrict[s], any government entity or official from sending to, or receiving from, [DHS] information regarding the citizenship or immigration status, lawful or unlawful, of any individual." 8 U.S.C. § 1373(a). This language abrogates California's sovereign immunity here because the Sanctuary Laws do exactly what Sections 1373 and 1644 prohibit.

Further, even if there were some form of immunity applicable in this case, it would only shield the State from suit. Governor Newsome and Attorney General Bonta, who are sued in their official capacities, could not invoke eleventh Amendment or state sovereign immunity under the longstanding doctrine of *Ex Parte Young*, 209 U.S. 123 (1908).

## V. If the Court is inclined to grant the Defendants' motion to dismiss, it should grant the Plaintiffs leave to amend the Second Amended Complaint.

Leave to amend a pleading should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2).

1    The Defendants' Motion to Dismiss was the first attack as to the

2    sufficiency of Plaintiffs' claims, and thus any amendment to the Second

3    Amended Complaint would be the Plaintiffs' "first opportunity to cure

4    those deficiencies." *United States v. United Healthcare Ins. Co.*, 848 F.3d

5    1161, 1183 (9th Cir. 2016). In such situations, the Ninth Circuit has held

6    that Defendants "should be afforded an additional opportunity to present

7    an adequate pleading" and granted leave to amend the complaint. *Id.*; *see*

8    *also Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir.

9    2003) ("Dismissal with prejudice and without leave to amend is not

10   appropriate unless it is clear on de novo review that the complaint could

11   not be saved by amendment.").

12   Amendment in this case would not be futile because the core

13   constitutional and federal statutory violations alleged by Plaintiffs state

14   plausible claims for relief that would survive a motion to dismiss under

15   Rule 12(b)(6). The futility standard requires that an amendment be

16   denied only when "no set of facts can be proved under the amendment to

17   the pleadings that would constitute a valid and sufficient claim or

18   defense." *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir.

19   2018).

20   Here, Plaintiffs have clearly articulated substantial federal

21   questions regarding preemption, the Supremacy Clause, and violations of

22   specific federal criminal statutes, including 8 U.S.C. § 1324 and 18

23   U.S.C. §§ 4, 371, 372, and 1512. The federal government's Statement of

24   Interest filed in this case, ECF 36, and the recent DOJ memorandum

25   explicitly affirming federal authority to investigate and prosecute

26   obstruction of immigration enforcement further strengthen the viability

27   of Plaintiffs' claims and demonstrate that any amendment addressing

28   technical pleading deficiencies would result in legally sufficient claims.

Moreover, the well-established precedent in *Arizona v. United States* and the *Grable* framework for federal question jurisdiction provide solid legal foundations that would allow amended claims to withstand dismissal, making an amendment anything but futile and fully warranting the Court's liberal grant of leave to amend when justice so requires.

Accordingly, if the Court is inclined to dismiss any of the Plaintiffs' claims, the Plaintiffs respectfully request leave to amend and file an amended complaint.

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss must be denied. Plaintiffs have established standing to challenge California's sanctuary state law, which directly harms their ability to fulfill federal obligations and protect their communities, and which exposes them to federal criminal liability. The substantial federal questions raised by this case—including whether state law can force local officials to violate federal immigration statutes and whether California's sanctuary law is preempted by federal immigration law—are precisely the matters that federal courts are designed to resolve.

The conflict between the Sanctuary Laws and federal immigration enforcement represents a clear violation of the Supremacy Clause that demands judicial intervention. If the Court is nevertheless inclined to grant any portion of Defendants' motion, Plaintiffs respectfully request leave to amend their complaint to address any perceived deficiencies. The importance of these federal constitutional questions and the ongoing harm to Plaintiffs warrant full consideration on the merits rather than dismissal on procedural grounds.

DATED:  August 8, 2025                 MICHAEL J. Vigliotta, City Attorney

                          By:    /s/ *Michael J. Vigliotta* (with permission)
                                  Michael J. Vigliotta
                                  *City Attorney*
                                  City of Huntington Beach

                          By:    /s/    *Ryan T. Giannetti*
                                  Ryan T. Giannetti
                                  James K. Rogers
                                  America First Legal Foundation

                                  Attorneys for Plaintiffs
                                  City of Huntington Beach, Huntington
                                  Beach City Council, Huntington Beach
                                  Police Department, the Huntington
                                  Beach Police Chief, and Riverside
                                  County Sheriff Chad Bianco

22

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for the Plaintiffs, certifies that this brief contains 5,834 words, which:

        <u>X</u> complies with the word limit of L.R. 11-6.1.

        __ complies with the word limit set by court order dated___.


DATED:  August 8, 2025    By:    <u>*/s/ Ryan T. Giannetti*</u>
                                  Ryan Giannetti
                                  *Counsel*
                                  America First Legal Foundation