Jonathon P. Hauenschild*
(SBN 249615)
**FEDERATION FOR AMERICAN IMMIGRATION REFORM**
25 Massachusetts Ave., NW, Suite 330
Washington, DC 20001
(202) 328-7004
jhauenschild@irli.org

Attorney for *Amicus Curiae*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| City of Huntington Beach, *et al*.<br><br>　　　　　Plaintiff(s),<br>　vs.<br>State of California, *et al.*,<br><br>　　　　　Defendant(s). | Case No.: 8:25-cv-00026<br><br>**Proposed *Amicus Curiae* Brief of Federation for American Immigration Reform**<br><br>Judge Sunshine Suzanne Sykes |

## STATEMENT OF INTEREST[1]

*Amicus* curiae Federation for American Immigration Reform (FAIR) is a nonprofit corporation and membership organization that was founded in 1979 and has its principal place of business in Washington, D.C. FAIR's mission is to inform the public about the effects of both unlawful and lawful immigration, and to defend American citizens, American workers, and the nation's environment by limiting

---

[1] No counsel for a party in this case authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation of this brief. No person other than *amicus curiae*, its members, or its counsel made a monetary contribution to the preparation or submission of this brief.

- 1 -

overall immigration, enhancing border security, and ending illegal immigration. In short, FAIR seeks to protect all Americans against the substantial harms of mass migration by attaining strongly-enforced, patriotic immigration reform. To that end, FAIR has been involved in more 100 legal cases since 1980, either as a party or as *amicus curiae*, in which it has consistently defended American interests against illegal immigration into the United States.

The decision in this case will likely have an impact on the ability of federal immigration officers to identify and deal efficiently, fairly, and safely with an illegal alien population estimated to exceed 18 million people in the United States. *Amicus* FAIR has direct and vital interests in defending the executive branch's authority to address the current illegal alien crisis and State and local officials' ability to cooperate with federal immigration authorities.

## SUMMARY OF ARGUMENT

The California Values Act (CVA) places Plaintiffs in an impossible position: either comply with federal law and violate California State law or comply with State law and violate federal law. Since provisions of the CVA provide for civil or criminal consequences for their violation, and these provisions command the violation of federal immigration law that likewise provides for criminal consequences for its violation, the Plaintiffs face the real possibility of facing either state or federal penalties. This dilemma of choosing which law to obey, where either choice leads to potential criminal consequences, constitutes concrete harm sufficient to establish standing.

In short, because the CVA places the Plaintiffs in the impossible position of incurring criminal liability whatever they do, the Plaintiffs possess standing and this Court should deny the Defendant's Motion to Dismiss.

# ARGUMENT

## I. Plaintiffs' dilemma is a sufficient injury-in-fact to establish standing.

In 2017, California enacted The California Values Act ("CVA") through Senate Bill 54, which prohibits state and local law enforcement agencies from cooperating with federal immigration authorities. *See* 2017 Cal. Stat. 495, codified at CAL. GOV'T. CODE §§ 7284, *et seq*. For example, CVA prohibits state and local law enforcement agencies from "detaining an individual on the basis of a hold request," "providing information regarding a person's release date or responding to requests for notification by providing release dates or other information," "making or intentionally participating in arrests based on civil immigration warrants," or "assisting immigration authorities in the activities in Section 1357(a)(3) of Title 8 of the United States Code." CVA at § 3, CAL. GOV'T. CODE § 7284.6(a)(1).

What are generally referred to as the "anti-harboring" provisions of the Immigration and Nationality Act ("INA")—located at Title II, Chapter 8, § 274 and codified at 8 U.S.C. § 1324—read in pertinent part:

**Bringing in and Harboring Certain Aliens**

**(a) Criminal penalties.—**

(1) (A) Any person who—
(iii) knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation; . . .

(v) (I) engages in any conspiracy to commit any of the preceding acts, or (II) aids or abets the commission of any of the preceding acts, shall be punished as provided in subparagraph (B).

(B) A person who violates subparagraph (A) shall, for each alien in respect to whom such a violation occurs—
(ii) in the case of a violation of subparagraph (A)(ii), (iii), (iv), or (v)(II), be fined under title 18, United States Code, imprisoned not more than 5

years, or both.

The INA defines "person" when used in Title II as "an individual or an organization." 8 U.S.C. § 1101(b)(3). "The term 'organization' means, but is not limited to, an organization, corporation, company, partnership, association, trust, foundation or fund; and includes a group of persons, whether or not incorporated, permanently or temporarily associated together with joint action on any subject or subjects." 8 U.S.C. § 1101(a)(28). Thus, § 1324 applies to municipal corporations and unincorporated areas alike, which, under the INA's sweeping definition, are organizations, and thus persons.

Here, Plaintiffs are faced with a dilemma about which law to follow, and seek a negative declaration or injunction rather than waiting to be sued or prosecuted. When (as here) a challenged measure puts plaintiffs in a dilemma of taking one of two (or more) actions, with each action having its unique downside, the plaintiffs necessarily face a cognizable fear of injury. Some cases call this a "Hobson's choice," *Meese v. Keene*, 481 U.S. 465, 475 (1987), and others call it "an *in terrorem* choice." *Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83, 95 (1993) (quoting *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 734-35 (Fed. Cir. 1988)). Whatever the name, the point is that either path has a sufficiently negative outcome that Article III is met simply by being placed in the position to have to choose one of the paths. Plaintiffs do not want to violate *any* lawful command, but that requires knowing whether the CVA is preempted by the INA or is otherwise unlawful.

The Supreme Court has made clear that, when considering whether a plaintiff has Article III standing, a federal court must assume *arguendo* the merits of his or her legal claim. See *Warth v. Seldin*, 422 U.S. 490, 501-02 (1975) (assuming factual allegations and legal theory of complaint for purposes of standing analysis). "'[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal.'" *McConnell v. FEC*, 540 U.S. 93, 227 (2003) (quoting

*Warth v. Seldin*, 422 U.S. at 500). "A party need not prove that the action it attacks is unlawful in order to have standing to level that attack . . . . Rather, in determining whether plaintiffs have standing, we must assume that on the merits they would be successful in their claims." *Muir v. Navy Federal Credit Union*, 529 F.3d 1100, 1106 (D.C. Cir. 2008) (alterations omitted). Otherwise, every unsuccessful plaintiff would lose for lack of standing.

Plaintiffs have alleged that the CVA makes them unable to comply with federal anti-harboring provisions. ECF 29 at ¶ 122. Under the CVA, if federal immigration officers ask when an alien in custody will be released, state or local officials, such as those in the City of Huntington Beach, may not tell him. If a federal immigration officer seeks other information about potential illegal immigrants, state or local officials may not provide it. If an immigration officer seeks to place a detention notice on an illegal immigrant, California will not honor it and compels local law enforcement to do the same.

The anti-harboring provisions of federal immigration law prohibit the concealing or shielding of illegal aliens. 8 U.S.C. § 1324. The CVA effectively requires local law enforcement, such as Plaintiffs, to shield or otherwise harbor illegal aliens from federal law enforcement both by prohibiting the communications described as above and by refusing to inform ICE when a criminal alien is going to be released from local custody.

By preventing state and local law enforcement from providing the information or cooperation that ICE requests in the course of enforcing federal immigration laws, the CVA compels local law enforcement to "conceal[], harbor[], or shield[] from detection" aliens in "any place, including any building" (or to attempt to do so) in violation of 8 U.S.C. § 1324(a)(1)(a)(iii). For example, when ICE requests the release date of an alien from a local jail, and local authorities refuse to give that information to it, as mandated by the CVA, the local authorities are thereafter "shielding" the alien's presence, and therefore the alien, "from detection" either in the jail (a

"building") or outside the jail (a "place"), depending on the alien's location at any given moment. Or, if ICE agents arrive at a local jail to assume custody of an alien, and local authorities, as mandated by the CVA, both refuse them entry and do not transfer custody outside of the jail, the local officials are "harbor[ing]" the alien "in . . . a[] building" while the alien remains in the jail, "harbor[ing]" the alien "in . . . a[] place" if they bring the alien outside the jail and there refuse to transfer custody, or concealing the alien "in a[] place" if they deliberately slip the alien out of the jail in a way that evades the agents' notice. Even if local law enforcement claims that receiving a Form I-247A from ICE does not give it the requisite knowledge of an alien's unlawful presence, the form includes a probable cause determination by the U.S. Department of Homeland Security that the alien is removable, thus at the very least making law enforcement's noncompliance in "reckless disregard" of the alien's unlawful presence.

      Accordingly, since both the CVA and the federal anti-harboring statutes threaten criminal penalties, choosing to comply with either law has a sufficiently negative outcome that Article III is met simply by being placed in the position to have to make that choice. For this reason, Plaintiffs face injury sufficient for standing.

# CONCLUSION

For the reasons stated above, this Court should deny the Defendants' Motion to Dismiss.

Submitted this 14th of August, 2025

/s/ Jonathon P. Hauenschild
Jonathon P. Hauenschild*
**FEDERATION FOR AMERICAN IMMIGRATION REFORM**
25 Massachusetts Ave., NW, Suite 330
Washington, DC 20001
(202) 328-7004
jhauenschild@irli.org
Attorney for *Amicus Curiae*